1

2

3

4

5

6

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

9

GEOFFREY GRAY, AARON MILLER,
ADAM BOGLE, ANDRE LYLE,
BENJAMIN WHEELER, BLAINE
SCHIESS, BOBBY DEAN, BRADLEY
SAWAYA, CASEY BURNS, CAITLYN
LOMEN-CARR, CHRISTODOULOS
PANERIS, DANIEL HJELMESETH,
DAVID LAWTON, DEBORAH
FLETCHER, DONNA TEGNELL, DYLAN
BECKNER, ERIC HANSEN, GARY
GORDON, JAMES HOWARD,  JANA
CRAWFORD, JAY SARVER, JEREMY
BIRCHFIELD, JEREMY GREENE, JOE
DEGROAT, JOHN WINSTON, JORDAN
LONGACRE, JOSEPH GREENE, JUSTIN
COCHRAN, KERRY STRAWN, LARRY
FROSTAD, LYNN NOWELS,
MERRIEGRACE LA PIERRE, MICHAEL
BROWN, MICHAEL URIBE, MICHAEL
WATKINS, NATHAN KESLER,
NICHOLAS AUCKLAND, NICOLE
PREZIOSI, PETER DUNCAN, RICHARD
OSTRANDER, ROBERT
WASHABAUGH, RODNEY PELHAM,
RONALD VESSEY, RYAN EUBANK,
SCOTT SCHUTT, SEAN MORGAN,
SHANE TAYLOR, SHASTA ATKINS,
SHERI FERGUSON, SOMMER
BECKNER, STACY KATYRYNIUK,

**CASE NO. 3:23-cv-05418**

**COMPLAINT**

JURY DEMANDED

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

COMPLAINT

1

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

STEPHEN AUSTIN, STEVE TURCOTT,
STEVE WALKER, TERRY DUNN, TODD
HUMPHREYS, TYLER RATKIE,
WENDY PUNCH, WILLIAM DUBOSE,
VICTORIA GARDNER,

                        Plaintiffs,

    v.

WASHINGTON STATE DEPARTMENT
OF TRANSPORTATION, a government
agency, ROGER MILLAR, an individual,
JEFF PELTON, an individual, MARK
NITCHMAN, an individual, KIMBERLY
MONROE FLAIG, an individual.

                        Defendants.

## I.    **INTRODUCTION**

1.    Plaintiffs are 60 State employees who were wrongfully denied accommodations and terminated for non-compliance with a new State requirement for COVID-19 vaccination, in violation of their Constitutional and statutory rights. Plaintiffs come to this Court to be made whole.

## II.    **PARTIES**

2.    Defendant Washington State Department of Transportation (WSDOT) is a governmental agency of the State of Washington.

3.    Defendant Roger Millar is Secretary of Transportation, WSDOT, and is an employer, officer, vice principal and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Millar performed the acts and omissions complained

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

of herein to advance his career and/or for the personal benefit and the benefit of his marital community.

4. Defendant Jeff Pelton is Human Resources Director, WSDOT, and is an employer, officer, vice principal and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Pelton performed the acts and omissions complained of herein to advance his career and/or for the personal benefit and the benefit of his marital community.

5. Defendant Kimberly Monroe Flaig, is Deputy Director of Human Resources, WSDOT, and is an employer, officer, vice principal and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Flaig performed the acts and omissions complained of herein to advance her career and/or for the personal benefit and the benefit of her marital community.

6. Defendant Mark Nitchman is Staff Chief Engineer, WSDOT, Washington State Ferries (WSF) and is an employer, officer, vice principal and/or agent for purposes of Wash. Rev. Code § 49.52.070; upon information and belief, Defendant Nitchman performed the acts and omissions complained of herein to advance his career and/or for the personal benefit and the benefit of his marital community.

7. Plaintiff Geoffrey Gray was a Region Biologist with the Environmental Department, South Central Region HQ at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Gray was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Gray teleworked throughout the pandemic and was able to perform his work 100%

COMPLAINT 3

remotely. Defendants did not perform an interactive dialogue with Mr. Gray and identified no undue hardship the agency would have suffered if an accommodation had been provided. Mr. Gray's supervisor supported accommodating Plaintiff through 100% telework.

8.  Plaintiff Steve Turcott was the Eastern Washington Emergency Manager with Headquarters Maintenance assigned to the three regions in Eastern Washington at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Turcott was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Turcott teleworked throughout the pandemic and was able to perform his work 100% remotely. Mr. Turcott also had demonstrated and documented natural immunity.  Defendants did not perform an interactive dialogue with Mr. Turcott and identified no undue hardship the agency would have suffered if an accommodation had been provided. Following his termination, Mr. Turcott's position was advertised as full-time telework.

9.  Plaintiff Aaron Miller was a Maintenance Technician 2 with the Maintenance Department of North Central Region HQ at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Miller was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Miller worked exclusively outdoors operating a snowplow. Defendants did not perform an interactive dialogue with Mr. Miller and identified no undue hardship the agency would have suffered if an accommodation had been provided.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

10.   Plaintiff Adam Bogle was a Ferry Operator Assistant with the Ferries Department (Keller Ferry Facility) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Bogle was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Bogle worked exclusively outdoors. Defendants did not perform an interactive dialogue with Mr. Bogle and identified no undue hardship the agency would have suffered if an accommodation had been provided.

11.   Plaintiff Andre Lyle was an Oiler with the Ferries Department (M/V Chetzemoka) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Lyle was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Lyle and identified no undue hardship the agency would have suffered if an accommodation had been provided. Mr. Lyle also had demonstrated and documented natural immunity against COVID-19.

12.   Plaintiff Benjamin Wheeler was a Bridge Maintenance Specialist 2 with the Maintenance Department (Everett Bridge Office) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Wheeler was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Wheeler worked primarily outdoors, and occasionally worked remotely even prior to the pandemic. Defendants did not perform an interactive dialogue with Mr. Wheeler and identified no undue hardship the agency would have suffered if an

COMPLAINT                                      5                    **ARNOLD & JACOBOWITZ PLLC**
                                                                   8201 164th Avenue NE, Suite 200
                                                                   Redmond, WA 98052
                                                                   (206) 799-4221

accommodation had been provided. Mr. Wheeler also had demonstrated and documented natural immunity against COVID-19.

13.   Plaintiff Blaine Schiess was a Transportation Engineer II with the Engineering Department (Port Angeles Engineer Office) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Schiess was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Schiess worked primarily outdoors. Defendants did not perform an interactive dialogue with Mr. Schiess and identified no undue hardship the agency would have suffered if an accommodation had been provided.

14.   Plaintiff Bobby Dean was a Highway Maintenance Worker 2 with Maintenance Department (Goldendale Shed) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Dean was granted a medical exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Dean worked exclusively outdoors. Defendants did not perform an interactive dialogue with Mr. Dean and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Dean also had demonstrated and documented natural immunity against COVID-19.

15.   Plaintiff Bradley Sawaya was an Able-bodied Seaman, Bosman with the Ferries Department (M/V Tillikum) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Sawaya was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Sawaya worked outdoors. Defendants did not perform an interactive dialogue

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

with Mr. Sawaya and identified no undue hardship the agency would have suffered if an accommodation had been provided.

16.   Plaintiff Casey Burns was a Bridge Maintenance Specialist 2 with the Maintenance Department (Union Gap) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Burns was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Burns worked exclusively outdoors. Defendants did not perform an interactive dialogue with Mr. Burns and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Burns also had demonstrated and documented natural immunity against COVID-19.

17.   Plaintiff Caitlyn Lomen-Carr was a Highway Maintenance Worker 3 with the Maintenance Department (Colfax Shed) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Lomen-Carr was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Lomen-Carr worked primarily outdoors. Defendants did not perform an interactive dialogue with Ms. Lomen-Carr and identified no undue hardship the agency would have suffered if an accommodation had been provided.

18.   Plaintiff Christodoulos Paneris was a Permanent Oiler with the Ferries Department (M/V Chimacum) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Paneris was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

perform an interactive dialogue with Mr. Paneris and identified no undue hardship the agency would have suffered if an accommodation had been provided.

19.    Plaintiff Daniel Hjelmeseth was a Transportation Engineer 3 with the Design/Construction Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Hjelmeseth was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Hjelmeseth and identified no undue hardship the agency would have suffered if an accommodation had been provided.

20.    Plaintiff David Lawton was a WSF Vessel Captain with the Ferries Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Lawton was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Lawton worked primarily alone. Defendants did not perform an interactive dialogue with Mr. Lawton and identified no undue hardship the agency would have suffered if an accommodation had been provided.

21.    Plaintiff Deborah Fletcher was a Secretary Senior with Engineering Department at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Fletcher was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Ms. Fletcher and identified no undue hardship the agency would

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

have suffered if an accommodation had been provided. Plaintiff Fletcher also had demonstrated and documented natural immunity against COVID-19.

22.    Plaintiff Donna Tegnell was a Chief Mate with the Ferries Department (M/V Tillikum) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Tegnell was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Ms. Tegnell and identified no undue hardship the agency would have suffered if an accommodation had been provided.

23.    Plaintiff Dylan Beckner was a Ferries/Terminal Attendant with the Ferries Department (Bremerton Dock) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Beckner was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Beckner worked primarily outdoors. Defendants did not perform an interactive dialogue with Mr. Beckner and identified no undue hardship the agency would have suffered if an accommodation had been provided.

24.    Plaintiff Eric Hansen was a Vacation Relief Chief Engineer with the Ferries Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Hansen was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Hansen and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Hansen also had demonstrated and documented natural immunity against COVID-19.

COMPLAINT                                          9                    **ARNOLD & JACOBOWITZ PLLC**

25.  Plaintiff Gary Gordon was a Maintenance Technician 2 with the Maintenance Department (South Central Region) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Gordon was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Gordon and identified no undue hardship the agency would have suffered if an accommodation had been provided.

26.  Plaintiff James Howard was a Carpenter Shop Lead Person with the Ferries Department (Marine Division) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Howard was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Howard worked primarily outdoors. Defendants did not perform an interactive dialogue with Mr. Howard and identified no undue hardship the agency would have suffered if an accommodation had been provided.

27.  Plaintiff Jana Crawford was a Stormwater Branch Manager with the Environmental Services Office (Headquarters) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Crawford was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Crawford successfully teleworked prior to the pandemic and was able to perform her work 100% remotely. Defendants filled Ms. Crawford's position with a full-time telework employee who did not even have stormwater experience. Defendants did not perform an interactive dialogue with Ms. Crawford and identified no undue

COMPLAINT                                   10                    **ARNOLD & JACOBOWITZ PLLC**
                                                                 8201 164th Avenue NE, Suite 200
                                                                 Redmond, WA 98052
                                                                 (206) 799-4221

hardship the agency would have suffered if an accommodation had been provided. Plaintiff Crawford also had demonstrated and documented natural immunity against COVID-19.

28. Plaintiff Jay Sarver was an Oiler with the Ferries Department (M/V Salish) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Sarver was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Sarver worked outdoors. Defendants did not perform an interactive dialogue with Mr. Sarver and identified no undue hardship the agency would have suffered if an accommodation had been provided.

29. Plaintiff Jeremy Birchfield was a Ferries Oiler with the Ferries Department (M/V Salish) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Birchfield was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Birchfield and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Birchfield also had demonstrated and documented natural immunity against COVID-19.

30. Plaintiff Jeremy Greene was a Relief Chief Engineer with the Ferries Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Greene was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Greene and identified no undue hardship the agency would

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

have suffered if an accommodation had been provided. Plaintiff Greene also had demonstrated and documented natural immunity against COVID-19.

31.   Plaintiff Joe DeGroat was a Transportation Engineer 3 with the Traffic Division (South Central Region HQ) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. DeGroat was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff DeGroat teleworked throughout the pandemic and was able to perform his work 100% remotely. Defendants did not perform an interactive dialogue with Mr. DeGroat and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff DeGroat also had demonstrated and documented natural immunity against COVID-19.

32.   Plaintiff John Winston was a Marine Pipefitter with the Ferries Department (Eagle Harbor Maintenance Facility) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Winston was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Winston and identified no undue hardship the agency would have suffered if an accommodation had been provided.

33.   Plaintiff Jordan Longacre was a Communications Consultant with the Communications Division at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Longacre was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Longacre teleworked throughout the pandemic and was able to perform his work 100% remotely.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Defendants did not perform an interactive dialogue with Mr. Longacre and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Longacre also had demonstrated and documented natural immunity against COVID-19.

34.    Plaintiff Joseph Greene was an Assistant Engineer with the Ferries Department (Mukilteo Run) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Greene was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Greene and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Greene also had demonstrated and documented natural immunity against COVID-19.

35.    Plaintiff Justin Cochran was a Chief Engineer with the Ferries Department (South Worth Ferry) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Cochran was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Cochran and identified no undue hardship the agency would have suffered if an accommodation had been provided.

36.    Plaintiff Kerry Strawn was a Highway Maintenance Worker 2 with the Maintenance Department (Pasco) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Kerry was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Strawn worked primarily outdoors. Defendants did not perform an interactive dialogue

COMPLAINT                                          13                    **ARNOLD & JACOBOWITZ PLLC**
                                                                          8201 164th Avenue NE, Suite 200
                                                                          Redmond, WA 98052
                                                                          (206) 799-4221

with Mr. Strawn and identified no undue hardship the agency would have suffered if an accommodation had been provided.

37.    Plaintiff Larry Frostad was an East Region Traffic Design & Operations Engineer with Spokane Region Office at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Frostad was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Frostad and identified no undue hardship the agency would have suffered if an accommodation had been provided.

38.    Plaintiff Lynn Nowels was a Fiscal Specialist Supervisor with the Maintenance Department at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Nowels was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Ms. Nowels and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Nowels also had demonstrated and documented natural immunity against COVID-19.

39.    Plaintiff Merriegrace LaPierre was a Terminal Attendant with the Ferries Department (Anacortes) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. LaPierre was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff worked primarily outdoors. Defendants did not perform an interactive dialogue with Ms. LaPierre and identified no undue hardship the agency would have suffered if an accommodation had been provided.

COMPLAINT                                      14               **ARNOLD & JACOBOWITZ PLLC**
                                                                8201 164th Avenue NE, Suite 200
                                                                Redmond, WA 98052
                                                                (206) 799-4221

40. Plaintiff Michael Brown was a Transportation Engineer 3 with Design/Construction Division at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Brown was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Brown and identified no undue hardship the agency would have suffered if an accommodation had been provided.

41. Plaintiff Michael Uribe was a Highway Maintenance Worker 3 with the Maintenance Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Uribe was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Uribe worked primarily outdoors. Defendants did not perform an interactive dialogue with Mr. Uribe and identified no undue hardship the agency would have suffered if an accommodation had been provided.

42. Plaintiff Michael Watkins was an Engine Room Oiler with the Ferries Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Watkins was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Watkins and identified no undue hardship the agency would have suffered if an accommodation had been provided.

43. Plaintiff Nathan Kesler was an Engineer with the Ferries Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Kesler was granted a religious exemption but was denied an accommodation and was terminated

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Kesler and identified no undue hardship the agency would have suffered if an accommodation had been provided.

44. Plaintiff Nicholas Auckland was a Signals Maintenance with the Northwest Region Traffic Office at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Auckland was terminated on or about October 18, 2021. Plaintiff Auckland was told that seeking a religious exemption or accommodation was pointless, as it would not be granted, and the form used to request an exemption led him to believe he did not qualify. Defendants did not perform an interactive dialogue with Mr. Auckand and identified no undue hardship the agency would have suffered if an accommodation had been provided.

45. Plaintiff Nicole Preziosi was an Engine Room Oiler with the Ferries Department (Seattle) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Preziosi was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Ms. Preziosi and identified no undue hardship the agency would have suffered if an accommodation had been provided.

46. Plaintiff Peter Duncan was an Oiler/Assistant Engineer with the Ferries Department (Seattle) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Duncan was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Duncan and identified no undue hardship the

COMPLAINT                                    16                    **ARNOLD & JACOBOWITZ PLLC**

agency would have suffered if an accommodation had been provided. Plaintiff Duncan also had demonstrated and documented natural immunity against COVID-19.

47.  Plaintiff Richard Ostrander was a Maintenance Technician 2 with the Incident Response Team at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Ostrander was denied a religious exemption and was terminated on or about October 18, 2021. Plaintiff Ostrander worked exclusively outdoors. Because Defendants wrongfully denied Mr. Ostrander's religious exemption, Defendants never performed an interactive dialogue with Mr. Ostrander to identify an undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Ostrander also had demonstrated and documented natural immunity against COVID-19.

48.  Plaintiff Robert Washabaugh was an Assistant Project Engineer with the Development Branch Project Office (Union Gap) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Washabaugh was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Washabaugh and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Washabaugh also had demonstrated and documented natural immunity against COVID-19.

49.  Plaintiff Rodney Pelham was a Highway Maintenance Worker 2 with the Maintenance Department (Discovery Bay) at WSDOT, who during employment with the Department was a resident of Washington State. Plaintiff Pelham was told that seeking a religious exemption or accommodation was pointless, as it would not be granted, and the form

COMPLAINT                                          17

used to request an exemption led him to believe he did not qualify. Mr. Pelham was terminated on or about October 18, 2021. Plaintiff Pelham worked primarily outdoors.

50. Plaintiff Ronald Vessey was an ITS Operations Engineer and acting Director of Traffic Operations at WSDOT Headquarters (Olympia), who during employment with the Department was a resident of Washington State. Mr. Vassey was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Vessey teleworked throughout the pandemic and was able to perform his work 100% remotely. Defendants did not perform an interactive dialogue with Mr. Vessey and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Vessey also had demonstrated and documented natural immunity against COVID-19.

51. Plaintiff Ryan Eubank was an On-call Oiler with the Ferries Department at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Eubank was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Eubank and identified no undue hardship the agency would have suffered if an accommodation had been provided.

52. Plaintiff Scott Schutt was a Maintenance Specialist 3 with the Maintenance Department (Moses Lake) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Schutt was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not

COMPLAINT                                    18                    **ARNOLD & JACOBOWITZ PLLC**

perform an interactive dialogue with Mr. Schutt and identified no undue hardship the agency would have suffered if an accommodation had been provided.

53. Plaintiff Sean Morgan was a Chief Engineer with the Ferries Department (Seattle) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Morgan was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Morgan and identified no undue hardship the agency would have suffered if an accommodation had been provided.

54. Plaintiff Shane Taylor was a Highway Maintenance Worker 2 with the Maintenance Department (Toppenish) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Taylor was granted a medical exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Taylor worked exclusively outdoors. Defendants did not perform an interactive dialogue with Mr. Taylor and identified no undue hardship the agency would have suffered if an accommodation had been provided.

55. Plaintiff Shasta Atkins was a Bridge Engineer 1 with Bridge & Structures Office (Tumwater) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Atkins was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Atkins teleworked prior and throughout the pandemic and was able to perform her work 100% remotely. Defendants did not perform an interactive dialogue with Ms. Atkins and

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

identified no undue hardship the agency would have suffered if an accommodation had been provided.

56.   Plaintiff Sheri Ferguson was a Ferry Terminal Attendant with the Ferries Department (Port Orchard) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Ferguson was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Ms. Ferguson and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Ferguson also had demonstrated and documented natural immunity against COVID-19.

57.   Plaintiff Sommer Beckner was a Ferry Terminal Attendant with the Ferries Department (Bremerton) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Beckner was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Beckner worked primarily outdoors. Defendants did not perform an interactive dialogue with Mr. Beckner and identified no undue hardship the agency would have suffered if an accommodation had been provided.

58.   Plaintiff Stacy Katyryniuk was a Highway Maintenance Supervisor with the Maintenance Department at WSDOT, who during employment with the Department was a resident of Washington State. Plaintiff Katyryniuk was told that seeking a religious exemption or accommodation was pointless, as it would not be granted, and the form used to request an exemption led her to believe she did not qualify. Ms. Katytyniuk was terminated on or about October 18, 2021. Defendants did not perform an interactive

COMPLAINT                                    20                    **ARNOLD & JACOBOWITZ PLLC**
                                                                  8201 164th Avenue NE, Suite 200
                                                                  Redmond, WA 98052
                                                                  (206) 799-4221

dialogue with Ms. Katyrynuik and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Katyrynuik also had demonstrated and documented natural immunity against COVID-19.

59. Plaintiff Stephen Austin was a Transportation Planning Specialist 4 (Historian) with the Cultural Resources Program (Olympia) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Austin was granted both medical and religious exemptions but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Austin teleworked throughout the pandemic and was able to perform his work 100% remotely. Defendants did not perform an interactive dialogue with Mr. Austin and identified no undue hardship the agency would have suffered if an accommodation had been provided.

60. Plaintiff Steve Walker was a Transportation Technician 3 – Traffic Engineering with the Traffic Division (Union Gap) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Walker was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Walker and identified no undue hardship the agency would have suffered if an accommodation had been provided.

61. Plaintiff Terry Dunn was an Engineer 2 (Utilities Permit Engineer) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Dunn was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Mr. Dunn and identified no undue hardship the agency would have suffered if an accommodation had been provided.

62. Plaintiff Todd Humphreys was a Transportation Technician 2 with Tom Brash's Engineering Office (Spokane) at WSDOT, who during employment with the Department was a resident of Washington State. Plaintiff Humphreys was told that seeking a religious exemption or accommodation was pointless, as it would not be granted, and the form used to request an exemption led him to believe he did not qualify. Mr. Humphreys was forced to retire on or about October 18, 2021.

63. Plaintiff Tyler Ratkie was a Highway Maintenance Technician (Naselle) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. Ratkie was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Defendants did not perform an interactive dialogue with Mr. Ratkie and identified no undue hardship the agency would have suffered if an accommodation had been provided. Plaintiff Ratkie also had demonstrated and documented natural immunity against COVID-19.

64. Plaintiff Wendy Punch was a Construction Inspector/Designer (Chehalis) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Punch was told that seeking a religious exemption or accommodation was pointless, as it would not be granted, and the form used to request an exemption led him to believe he did not qualify. Ms. Punch was terminated on or about October 18, 2021. Plaintiff Punch teleworked throughout the pandemic and was able to perform majority of her work remotely.

COMPLAINT                                    22                    **ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

65. Plaintiff William DuBose was an Engine Room Operator with the Ferries Department (Seattle) at WSDOT, who during employment with the Department was a resident of Washington State. Mr. DuBose was granted a religious exemption but was denied an accommodation and was forced to retire early on or about November 15, 2021. Defendants did not perform an interactive dialogue with Mr. DuBose and identified no undue hardship the agency would have suffered if an accommodation had been provided.

66. Plaintiff Victoria Gardner was a Transportation Engineer 2 with the Environmental/Design Office (Spokane) at WSDOT, who during employment with the Department was a resident of Washington State. Ms. Gardner was granted a religious exemption but was denied an accommodation and was terminated on or about October 18, 2021. Plaintiff Gardner teleworked prior and throughout the pandemic and was able to perform her work 100% remotely. Defendants did not perform an interactive dialogue with Ms. Gardner and identified no undue hardship the agency would have suffered if an accommodation had been provided.

67. All Plaintiffs have filed tort claims against the State and sixty calendar days have elapsed since the claims were first presented. Wash. Rev. Code § 4.92.110, § 4.96.020(4).

### III.   JURISDICTION AND VENUE

68. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343.

69. Venue is proper in this Court under 28 U.S.C. § 1391 where the Department is headquartered within this District and Defendants reside therein.

70. In compliance with Wash. Rev. Code § 4.92.100, Plaintiffs have submitted Tort Claims with the Washington State Office of Risk Management; sixty days have passed since that

COMPLAINT                                            23                **ARNOLD & JACOBOWITZ PLLC**
                                                                        8201 164th Avenue NE, Suite 200
                                                                        Redmond, WA 98052
                                                                        (206) 799-4221

submission, during which all statutes of limitations were tolled pursuant to Wash. Rev. Code § 4.92.110, § 4.96.020(4).

## IV.   FACTS

**The Plaintiffs:**

71.   Plaintiffs were employed by the Department until they were wrongfully terminated[1] on or about October 18, 2021.[2]

72.   Beginning in August 2021, each Plaintiff began submitting requests for religious and/or medical exemption from the Department's new employee vaccination requirement.[3]

73.   For each Plaintiff, Defendants determined they had a sincerely held religious belief and/or a medical exemption that prevented vaccination.

74.   For each Plaintiff, Defendants denied accommodation for their sincerely held religious belief and/or medical exemption and demanded vaccination as the only way to keep their employment.

75.   For each Plaintiff, Defendants have admitted that they relied on printed job descriptions in lieu of personal dialogue in denying accommodation, a global accommodation denial

---

[1] Plaintiffs Joe DeGroat, Ronald Vessey, Daniel Hjelmeseth, Todd Humphreys, and David Lawton were each prematurely forced into early retirement in lieu of termination.

[2] Plaintiff Christodoulos Paneris was terminated on March 4, 2022, as he was on PFML, FMLA at the time the mandate took effect.

[3] Plaintiffs Stacy Katyryniuk, Nicholas Auckland, Rodney Pelham, Todd Humphreys, and Wendy Punch did not file a religious or medical exemption, as each were specifically told that the process was futile and they would not be accommodated. These Plaintiffs also believed that they would not qualify for a religious exemption because the form Defendants required employees to complete to even request an exemption included asking the employee to confirm that they had never taken either a vaccine or a "medicine" from a physician in their adult life. The form Defendants required had an extraordinary chilling effect on individuals desiring to seek an exemption but believing based on the form provided that they would not qualify, *infra.* Exhibit A.

COMPLAINT                                      24                    **ARNOLD & JACOBOWITZ PLLC**
                                                                    8201 164th Avenue NE, Suite 200
                                                                    Redmond, WA 98052
                                                                    (206) 799-4221

that did not entail an interactive dialogue with each Plaintiff as required by state and federal law and the language of Proclamation 21-14.

76. For most Plaintiffs, after submitting a request for a religious and/or medical exemption, they received the same form letter stating that their exemption was approved, but accommodation was denied. There was no dialogue or interaction between the Parties after a request for an exemption was submitted but before an accommodation was denied.

77. For each Plaintiff, Defendants refused discussing any accommodation suggestions, with continued demands that only vaccination would offer protection from the alleged threat Plaintiffs posed.

78. For most Plaintiffs, a notice of granting religious and/or medical exemption was included in the same letter that denied Plaintiff an accommodation.

79. For each Plaintiff, Defendants did not identify the undue burden they would have suffered had they accommodated Plaintiff.

80. As discussed more fully *infra,* Defendants ignored requests for *Loudermill* hearings or denied requests on the basis that it was not required for "non-disciplinary separation," denied Plaintiffs' requests to go on leave without pay until the emergency passed, denied Plaintiffs' requests to take the Novavax vaccine once it became available, denied continued telework despite its success for 18 months, denied accommodation to outdoor workers, and rejected supervisory support for full telework accommodation.

**COVID Vaccines:**

81. During 2020, several experimental vaccines were developed to limit the effects of COVID-19.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

82. By early to mid- 2021, prior to termination of Plaintiffs, it had become clear that the COVID-19 vaccines developed by Pfizer, Moderna and Johnson & Johnson did not prevent recipients from being infected with, or spreading, COVID-19.

83. Thus, unlike polio or smallpox vaccines, the COVID-19 vaccines did not eliminate infection and could not end transmission of the virus.

84. Many studies confirmed this fact, including studies from the Centers for Disease Control (CDC), upon whom Defendants allegedly relied.

85. The single benefit of the COVID-19 vaccine, as even the government admits, is to protect an infected, vaccinated person from severe illness or death, but even that benefit is disputed, and wanes over time to the extent it exists at all.

86. Plaintiffs were told by Defendants that that they posed a "significant risk of substantial harm" in their unvaccinated state such that "no accommodation can be made in your current position." *See, e.g.,* Exhibit B, C, D. This language was repeated in virtually every form letter sent by Defendants to deny accommodation to Plaintiffs.

87. In Position Statements to the EEOC, Defendants denied wrongful termination, claiming "vaccination is critical to manage disease transmission." Exhibit E, at 7.  This was also repeated in virtually every Position Statement.

88. Defendants also stated that "[t]here are no other accommodations for your position available which sufficiently mitigate or *eliminate the risk* associated with having an unvaccinated employee performing the *essential functions* of your position." *Id.* (emphasis added).

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

89. Defendants did not identify the "significant risk of substantial harm" it would suffer through accommodation.

90. Defendants provided no method of "eliminating the risk" of harm absent vaccination.

91. Defendants did not provide current scientific studies confirming that "vaccination is critical to manage disease transmission," but relied on generalities that were not in keeping with latest data and statistics available to Defendants at the time.

92. At best, the studies were inconclusive and could not be the basis for terminating Plaintiffs who had an exemption to receiving it.

93. Defendants contrived and imagined essential functions that were not essential, and also listed public facing job functions that were not the responsibility of the Plaintiffs, *infra.*

94. Defendants did not comply with OFM guidance in determining essential job functions.

95. By OFM Guidance, a function is essential if: "1. The position exists to perform that function. 2.  There are a limited number of employees available who could perform that function. 3. The function is highly specialized, and the incumbent is hired for special expertise to perform it." Exhibit F.

96. With respect to essential functions, "[t]he term does NOT include marginal functions of the position." Exhibit G, at 25 (emphasis in original).

97. Additionally, "[g]enerally essential functions are **WHAT** the complete task is, not **HOW** the task is completed.  An essential function must really be a function, not merely a way of performing a function." *Id.* at 26 (emphasis in original).

98.  In reality, Defendants determined *any* task performed by an employee was "essential" that justified termination.  Defendants never performed a "job analysis [to] help identify essential functions by determining which functions an employee actually performs," *id.*

**Breakthrough cases of COVID-19 in the fully vaccinated:**

99.  These vaccines were developed quickly to protect those who were at highest risk of getting seriously ill from COVID-19, especially the elderly and those with multiple co-morbidities. [4]

100. Pfizer officials have admitted that its vaccine was not tested for efficacy at preventing transmission or infection, and the Food and Drug Administration likewise admitted that the vaccines were not licenses or authorized for prevention of infection or transmission, nor were clinical trials designed for such. [5]

101. It is now universally admitted that the vaccinated can contract and transmit COVID-19, though this data was readily available by Defendants prior to the termination of Plaintiffs.

102. A statement from the CDC Director Rochelle P. Walensky, MD, MPH, was issued and publicly available on the CDC site on July 30, 2021, before Washington Governor Jay Inslee's Proclamation 21-14 *et seq.,* that stated, "…data were published in CDC's Morbidity and Mortality Weekly Report (MMWR) demonstrating that Delta infection

---

[4] Finding most deaths for COVID-19 occurred in nursing homes, and that the inferred median infection fatality rate in locations with a COVID-19 mortality rate lower than the global average is low (0.09%). "If one could sample equally from all locations globally, the median infection fatality rate might even be substantially lower than the 0.23% observed in my analysis." https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7947934/pdf/BLT.20.265892.pdf/ at 26.
[5] Dr. Peter Marks, Director, Center for Biologics Evaluation and Research with the Food and Drug Administration, stated, "The vaccines are not licensed or authorized for prevention of infection with the SARS-CoV-2 virus or for prevention of transmission of the virus, nor were the clinical trials supporting the approvals and authorizations designed to assess whether the vaccines prevent infection or transmission of the virus." https://www.regulations.gov/document/FDA-2023-P-0360-0191.

COMPLAINT                                      28                    **ARNOLD & JACOBOWITZ PLLC**
                                                                    8201 164th Avenue NE, Suite 200
                                                                    Redmond, WA 98052
                                                                    (206) 799-4221

resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, **vaccinated people infected with Delta can transmit the virus."**

103. In a form letter sent to each Plaintiff terminating their employment, *see, e.g.,* Exhibits B and D, WSDOT specifically mentioned the infection risk of the *Delta variant*, while also allegedly relying on data from the CDC. This was not only a contradiction of the CDC published data, but a direct misrepresentation of the available science and data at the time.

104. Recorded "breakthrough" cases (fully vaccinated individuals contracting COVID-19) in Washington State from July 17, 2021, to July 9, 2022, alone totaled 636,766, with a majority of these breakthrough cases in the 20-49 years age group (74 percent). Exhibit H. These cases do not represent infection in the typical vulnerable population.

105. The Department of Health (DOH) also published notice of rising breakthrough cases as early as March 29, 2021, Exhibit I, nearly seven months prior to Plaintiffs' terminations.

106. Defendants had specific knowledge of breakthrough cases prior to termination of Plaintiffs.

107. The DOH held a question-and-answer session on August 17, 2021, where it was acknowledged that the vaccine did not stop transmission. [6]

---

[6] https://www.youtube.com/watch?v=1nrLMsvGea8 (at 33:29-35:36).

COMPLAINT                                    29                    **ARNOLD & JACOBOWITZ PLLC**
                                                                  8201 164th Avenue NE, Suite 200
                                                                       Redmond, WA 98052
                                                                         (206) 799-4221

108. A culture of fear and misinformation from Defendants, *infra,* led the workforce to believe that the vaccinated were catching COVID-19 because of the unvaccinated, when, in fact, the vaccinated were just as capable of transmission of and infection with COVID-19 as the unvaccinated.

109. These misrepresentations from leadership caused Plaintiffs great distress and suffering as they waited termination.

110. Defendant Millar was aware at this time that the vaccine did not prevent transmission. WSDOT was involved in coordinating a question/answer video session with the State Department of Health on August 17, 2021, to address concerns about the vaccine, where DOH leaders confirmed that the vaccine did not stop transmission.[7]

111. The CDC also released a complete report of rising breakthrough cases in a report dated August 13, 2021, Exhibit J, which was also recognized by the Washington State Department of Health (DOH) in a news release acknowledging extensive breakthrough cases as early on March 29, 2021. *Id.*

112. Many of the Plaintiffs have personal knowledge of co-workers who had been vaccinated who reinfected with COVID-19 prior to termination. Plaintiffs brought this to the attention of Defendants but were silenced.

113. On July 16, 2021, King County Public Health staff were notified of a staff party wherein fully vaccinated individuals tested positive for COVID-19 after the staff party. Exhibit K.

---

[7] https://www.youtube.com/watch?v=1nrLMsvGea8, (at 9:10-14:50).

114. Shortly thereafter, Jeffrey Duchin, Chief Communicable Disease Epidemiology and Immunization Section, Public Health for Seattle and King County, and Professor of Medicine, Division of Infectious Diseases, University of Washington, admitted that 37% of new cases of COVID-19 were in vaccinated individuals. Exhibit L.

115. Dr. Duchin also acknowledged awareness of the well-publicized COVID-19 outbreak in Provincetown, Massachusetts, after a Fourth of July celebration, where according to Steve Katsurinis, Chair of the Provincetown Board of Health, 469 cases reported among Massachusetts residents alone, 74 percent were in people who were fully immunized. That number grew to 765 cases overall. Exhibit M.

116. Indeed, just prior to terminating Plaintiffs, the CDC released a report on or about September 10, 2021, regarding a Norwegian Encore cruise ship returning to port in Seattle because of a large outbreak of COVID-19 with approximately 118 cases, despite its 100% vaccinated traveler status of both passengers and crew, as well as negative test prior to boarding. Health officials recognized, "This is crazy. 118 cases. All vaccinated and ALL tested negative prior to embarkation." Exhibit N.

117. Dr. Duchin was also made aware that deaths were uncommon overall and the number of deaths among cases is low, combined with the high likelihood that many fully vaccinated individuals were not seeking testing due to mild or asymptomatic illness, therefore increasing the proportions of the most severe outcomes. Exhibit O.

118. Defendants claim to have relied on data and studies from the CDC, DOH, King County Health Department, and studies from the University of Washington, all of whom were

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

publishing studies regarding the failure of the vaccine to prevent infection and transmission *prior to* Defendants terminating the Plaintiffs.

119.  One of those studies included a study in September 2021, co-authored by both Dr. Michael R. Sayre, medical director for Seattle Medic One and a physician in the Emergency Department at Harborview Medical Center, as well as Medical Director for the Seattle Fire Department, and Dr. Thomas Rea, medical director for King County Medic One, two prominent health care advisors in the state of Washington, indicating that even among first responders, "we observed a very low overall risk for COVID-19 infection among the EMS first responder workforce attributed to COVID-19 patient encounters…" Exhibit P.

120.  This calls into question Defendants' narrative that vaccination was the only means available to prevent death, transmission, or contraction of the virus.

121.  Instead, "rates and relative risk provide a clearer picture," Exhibit O, of virus containment, which Defendants did not consider in its blanket policy that all exempt employees must be vaccinated.

122.  Situation Reports released by Defendants after Plaintiffs were terminated confirmed Defendants' knowledge of breakthrough cases. A December 2021 report revealed 474 positive cases of COVID-19 among their vaccinated staff. Exhibit Q. By January, the infection rate among fully vaccinated staff included 611 positive COVID-19 cases. Exhibit R.

123.  The January 2022 Sitrep, *id.,* stated "[c]urrently WSDOT has 166 total people in isolation or quarantine status. The highest we have had during the pandemic."

COMPLAINT                                    32                **ARNOLD & JACOBOWITZ PLLC**
                                                                8201 164th Avenue NE, Suite 200
                                                                     Redmond, WA 98052
                                                                        (206) 799-4221

**Culture of shame and harassment:**

124.  Many of the Plaintiffs have personal knowledge of co-workers who had been vaccinated who then reinfected with COVID-19 prior to termination. Plaintiffs brought this to the attention of Defendants prior to termination but were silenced.

125.  In fact, Plaintiffs were made to feel shamed and degraded for any science or facts presented to Defendants.

126.  Defendant Millar, in an attempt to silence and shame those who brought forth these published studies, stated in a September 20, 2021, draft memo intended for all employees, "Some employees have shared information with me that disputes the State Department of Health (DOH) and the Centers for Disease Control (CDC) that they found while 'doing their own research.' [sic]. There is a lot of disinformation out there." Exhibit S.

127.  Defendant Millar does not identify what misinformation was presented, nor was he able to refute the studies that the DOH and CDC published that the vaccine did not stop transmission or infection.

128.  These unsubstantiated statements from leadership fueled a culture of harassment and discrimination throughout the agency that was felt by Plaintiffs.

129.  This culture of fear and harassment was particularly strong among WSF work crew, where Andy Lambert, Chief, Don Stewart, Staff Chief, Mark Nitchman, Staff Chief, and Don Stewart, Staff Chief, openly expressed fear of contracting COVID-19 from the unvaccinated and were openly hostile to unvaccinated employees, including some Plaintiffs.  These individuals expressed hostility toward some Plaintiffs through openly stating that the unvaccinated were "stupid" and "irresponsible."

COMPLAINT                                          33                    **ARNOLD & JACOBOWITZ PLLC**
                                                                        8201 164th Avenue NE, Suite 200
                                                                        Redmond, WA 98052
                                                                        (206) 799-4221

130. Defendant Nitchman made it known through many public comments during work hours that he did not want anyone on his boat who was unvaccinated.

131. In a social media post Defendant Nitchman stated, "I went to my boat today for technical issues and found an oiler who refused to get vaccinated moving his gear off the ship. Good to see him leaving, his presence jeopardizes us all and endangers my family. He is gone, I am reasonably happy about it." Exhibit T.

132. Defendant Nitchman likewise promulgated his own version of the science when asked why he felt jeopardized by someone who was unvaccinated, given his vaccinated status, to which he replied, "Because they can transmit thru me to others, because I have an immune compromised family member living with me and because they incubate other variants of the virus that may evolve to withstand vaccination. I don't want them around me." Exhibit U. It is unclear what data he relied on to support his opinion that unvaccinated were "incubat[ing] other variants of the virus that may evolve to withstand vaccination." *Id.*

133. Defendant Nitchman's vocal bias and condemnation of the unvaccinated concerned many but they were afraid to speak out against him. In 2008, a ferry worker whistleblower identified Nitchman in a lawsuit claiming the whistleblower was retaliated against by his bosses, including Mr. Nitchman, when the whistleblower complained about paycheck adding and misuse of funds in his department. A jury awarded the whistleblower $2.8 million from the state. Exhibit V.

134. This culture of bias against the unvaccinated was promulgated by Defendants. For example, in a September 20, 2021, draft memo, Defendant Millar failed to express

COMPLAINT                                      34                    **ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

objectivity in his leadership position, but rather, fueled an emotionally charged dissertation that was disrespectful of the rights of those who chose to exercise their constitutional rights. Exhibit S.

135. Defendant Millar's statements were also in direct contradiction to the evidence as presented by the CDC and the DOH. *Id.*

136. Defendant Millar states, "you deserve to know where I stand on the issue," *id.*, then Defendant Millar proceeded to provide his personal opinion that the unvaccinated put everyone at risk, suggesting that the unvaccinated did not care about the safety of others, including, "young children," or "a five-year-old special needs child who is too young to be vaccinated and too frail to survive COVID-19," or "an 85-year-old parent…." *Id.*

137. In that same email, Defendant Millar stated, "There is a lot of disinformation out there, spread by interests who seek to divide us as a people and weaken our resolve as a nation." *Id.* Defendant Millar's biased statements were a direct attack on religious objectors asserting their constitutional rights.

138. Defendant Millar provided no guidance or leadership on the perspective of those asserting their constitutional rights.

139. Defendant Millar's statements were emotional and unresponsive to the constitutional rights of religious objectors, including Plaintiffs.

140. Defendant Millar also wrongfully stated that "My job and your job are not ours by right," *id.,* a misrepresentation of the contractual relationship each Plaintiff enjoyed in their employment.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

141.   Defendant Millar also stated in a statewide TEAMS meeting that he took the vaccine and he "didn't go crazy," which was an insult to those exercising their religious freedoms. This perpetuated a culture of animosity and hatred toward religious objectors that set the tone for Plaintiffs being harassed by leadership for more than a year and a half prior to termination.

142.   This was a top-down leadership failure from Defendants.

143.   Consistent communication in ZOOM meetings by WSDOT leadership promulgating disdain for religious objectors, specifically from Todd Trepanier, South Central Assistant Regional Administrator, Troy Suing, South Central Region Administrator, Travis Vanderpool, South Central Region Human Resources Manager, Jeff Pelton, WSDOT Director of Human Resources, as well as Defendant Millar, caused extreme grief and anxiety to Plaintiffs.  These communications from leadership only encouraged others to accept this behavior as legitimate, causing additional harassment to Plaintiffs at their respective job sites.

144.   Plaintiff Larry Frostad found the statements by Defendant Millar insulting, unprofessional, and biased towards religious objectors. Mr. Frostad wrote to Defendant Millar in an email dated September 22, 2021, and expressed his outrage at the comments made, and included a series of questions. Defendant Millar did not respond to any of Mr. Frostad's specific questions, but instead Defendant Millar supported his own behavior

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

by stating his actions were "reviewed by the AG's office and our civil rights team in HR and in our Office of Equal Opportunity." Exhibit W.[8]

145. Mr. Frostad replied to Defendant Millar's response calling out Defendant Millar's personal justification without answering the questions posed. *Id.* Defendant Millar then simply replied "Acknowledging receipt. Thank you" without any further explanation. *Id.*

146. Todd Trepanier, WSDOT South Central Region Administrator, sent an email to all staff on September 13, 2021, with a lengthy, detailed and emotionally charged narrative regarding the death of a staff person, which Defendant Millar used to then allege the individual died from COVID-19. Exhibit X. There was no discussion whether the individual was vaccinated or not, no confirmation by Mr. Trepanier or Mr. Millar regarding whether COVID was the actual cause of death, but the effect of the letter was that the unvaccinated were blamed for this death. This type of leadership was suggesting a narrative demeaning to the exempt employees and caused great emotional distress to those who were asserting their rights to an exemption.

147. Plaintiffs Joe DeGroat and Geoffrey Gray responded to Mr. Trepanier's email, with Mr. DeGroat asking whether Defendants were going to address the adverse reactions suffered by the many DOT employees and their families who had received vaccination, including Jason Goetz, who developed Bell's Palsy,[9] a confirmed adverse reaction from the

---

[8] As discussed *infra,* OFM guidance did not support Defendant Millar's interpretation of his duties and constitutional responsibilities.

[9] Declaration of Dr. Peter McCullough in *Pilz v. Inslee* (WAWD Case No. 3:21-cv-05735, Dkt. No. 45). According to a study, mRNA COVID-19 vaccines were associated with an excess risk of serious adverse events, including coagulation disorders, acute cardiac arrest injuries, Bell's palsy and encephalitis. The risk was 1 in 550 individuals, which is much higher than other vaccines. https://pubmed.ncbi.nlm.nih.gov/36055877/; *see also*

COMPLAINT

37

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

vaccination, just seven days after his first shot, as well as Bethany VerMaas, whose oldest daughter developed Tourette's shortly after getting the shot. "Will that story be told too?" Exhibit Y. Other individuals also suffered adverse impacts following their vaccination, which was well known by many of the Plaintiffs.[10]

148. The extent of adverse reactions suffered by WSDOT employees is still being discovered through public records requests, but initial numbers of statewide cases of adverse events reported by state employees to LNI equal 114 cases, the severity of each case is unknown at this time. Exhibit Z.

149. These represent just the cases reported to LNI.

150. Based on other client records, many of these cases involve permanent debilitating illnesses/diagnoses requiring numerous medications that will need to be taken for the remainder of the employee's life.

151. Plaintiff Austin felt so harassed by his direct supervisor, Scott Williams, that he kept a journal beginning in June 2021, of the harassment.  For example, Mr. Williams frequently told Mr. Austin that the unvaccinated should be terminated, citing the "Houston Methodist hospital" lawsuit as justification, but was not understanding of the legal

---

*https://dailyclout.io/report-60-bells-palsy-accounted-for-over-1-of-all-post-marketing-patients-reporting-adverse-events/*

[10] When Governor Inslee issued his Covid-19 vaccine mandate, the VAERS data for the Covid-19 vaccine shots showed over a hundred thousand vaccine-related deaths or hospitalizations, as well as thousands of heart attacks, myocarditis and pericarditis episodes, permanent disability in the tens of thousands and other life-threatening episodes. https://openvaers.com/covid-data.  See also  https://vaersanalysis.info/2022/01/14/vaers-summary-for-covid-19-vaccines-through-01-07-2022/.  The VAERS system suffers from gross underreporting by between 5 and 10 times and as-high-as 40 times. Center for Disease Control and Prevention Morbidity and Mortality Weekly Report, COVID-19 Vaccine Safety in Children Aged 5–11 Years — United States, November 3–December 19, 2021 (CDC admits that VAERS under-reports by 4.5 times) (December 22, 2021); Electronic Support for Public Health–Vaccine Adverse Event Reporting System (ESP:VAERS), a Harvard Pilgrim Study (2010)(Stated that less than 1% of the adverse events were reported in the VAERS system.

COMPLAINT                                          38

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

reasonings behind that decision. He frequently questioned Mr. Austin about his private medical status and became hostile when Mr. Austin refused to discuss this with him. The pressure to discuss his vaccine status increased, with Mr. Williams not accepting that Plaintiff was declining to discuss it with him.

152. Mr. Williams resorted to name-calling of unvaccinated, such as "crazy," and stated that the unvaccinated should all be fired, that was their choice.

153. Ultimately, Mr. Austin was terminated because he was told that he might have public encounters in his field work and his presence was needed at meetings. But Mr. Austin performed most of his field work alone, and meetings to this day are still done remotely.

154. Plaintiff Atkins texted a former supervisor, Justin Heyford, about the possibility of being rehired, and was told, "Nope, not hiring back the dirty."

155. Defendants responded to the fears of the vaccinated but did not express concern about the constitutional rights of more than 400 terminated employees. For example, Defendant Roger Millar stated on September 20, 2021, that "many employees are legitimately afraid…that they are going to be exposed to COVID-19 by working with unvaccinated colleagues…." Exhibit AA.

156. Neither the Proclamation, ADA or WLAD require an analysis of what other individuals think or feel about the law. *See Roman Catholic Diocese of Brooklyn v Cuomo,* 141 S. Ct. 63, 71 (2020) (Gorsuch, concurring) ("Tellingly…[no] Justice seeks to explain why anything other than our usual constitutional standards should apply during the current pandemic.")

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

157. Plaintiff DuBose was told by his boss, Dave Wolf, Chief Engineer of Kittitas, that he would be unable to provide a reference for Mr. DuBose because he viewed Mr. DuBose as a public health hazard, which had nothing to do with his professional abilities. This treatment and disregard for the religious rights of Plaintiffs was encouraged and enabled by Defendants' actions.

158. Plaintiff Lawton was specifically threatened with loss of all retirement benefits if he were terminated in lieu of retirement. Mr. Lawton retired prematurely under coercion to preserve his benefits.

**Proclamation 21-14 *et seq.* and requirement for accommodation:**

159. On August 9, 2021, Governor Inslee issued Proclamation 21-14 (with amendments 21-14.1 on August 20, 2021, and 21-14.2 on September 27, 2021, the "Proclamation").

160. The Proclamation provided that "State agencies…***must*** provide any disability-related reasonable accommodations and sincerely held religious belief accommodations to the requirements of this Order that are required under the American with Disabilities Act of 1990 (ADA), the Rehabilitation Act of 1973 (Rehabilitation Act), Title VII of the Civil Rights act of 1964 (Title VII), the Washington Law Against Discrimination (WLAD), and any other applicable law." (emphasis added).

161. Under the Washington Law Against Discrimination, Wash. Rev. Code. 49.60 (WLAD), any employer's restrictions of employees' constitutional rights must be narrowly tailored to further a compelling government interest.

162. Defendants were advised repeatedly by OFM to seek legal counsel before terminating an employee without an accommodation.  For example, in a September 20, 2021, email from

COMPLAINT                                                    40                    **ARNOLD & JACOBOWITZ PLLC**
                                                                                        8201 164th Avenue NE, Suite 200
                                                                                        Redmond, WA 98052
                                                                                        (206) 799-4221

Kelly M. Woodward, State Human Resources Interim Deputy Assistant Director, Office of Financial Management (OFM), that "[a]gencies are advised to consider combinations of accommodations in determining if an accommodation can be granted, and to do so in consultation with legal counsel…." Exhibit AB; *see also* Exhibit AC, at 17-18, and Exhibit AD, at 17.

163. It is unknown the extent, if any, to which Defendants sought legal counsel.

164. Defendants zealously enforced its "no work" misinterpretation of the mandate and did not provide the accommodation process required in the language of the Proclamation and did not narrowly tailor its governmental interest in controlling the spread of COVID. Defendants demanded their employees be vaccinated or be terminated with no consideration for alternative methods to control the spread of the virus.

165. Because the vaccine did not stop the spread or infection of the virus, Defendants did not narrowly tailor their vaccine mandate to their compelling interest of virus containment.

**Defendants' disparate treatment of, and disparate impact on, religious employees compared to secular employees:**

166. The Washington State COVID-19 Vaccine Mandate Data report compiled by the Office of Financial Management on January 12, 2022, states WSDOT determined that 457 employees had sincerely held religious beliefs, but WSDOT denied accommodations to 404 of those religious objectors. Exhibit AE. This represents an 88.4% denial of religious accommodations.

167. Comparatively, WSDOT approved 159 requests for medical exemptions and accommodated 149 of those workers, a 6.2% denial rate. *Id.*

COMPLAINT

41

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

168. Compare this with the Washington State Health Care Authority and Washington State Department of Agriculture which did not deny accommodation to one religious or medically exempt employee. *Id.*

169. This disparity between accommodations granted to secular and religious exempt employees at WSDOT evidence disparate treatment and/or disparate impact demanding strict scrutiny. *See Kane v. DeBlasio,* 19 F.4th 152 (2nd Cir. 2021).

170. The fact that other state agencies were able to accommodate their employees with no terminations evidences the discriminatory treatment and impact of Defendants' actions.

171. Additionally, records obtained through a Public Records Act request found that when comparing employees in the same job within WSDOT, those with approved religious exemptions were denied accommodations while those with approved medical exemptions were granted accommodations. Exhibit AF.

172. For example, Washington State Ferries (WSF) approved accommodations for all of its seamen medical objectors except one, an 83% approval rate, while denying accommodations for all seamen religious objectors, a 0% approval rate. *Id.*

173. "The risk posed by an unvaccinated, exempt employee is the same regardless of the reason that the employee obtained the exemption.  In other words, an employee exempt from the Mandate for medical reasons presents the same risk of COVID-19 transmission in a high-risk role as does an employee exemption from the Mandate for religious reasons…Accordingly, giving priority consideration to employees in high-risk roles for secular exemptions over those with religious exemptions is likely to fail strict scrutiny." *UnifySCC v. Cody*, 2022 WL 2357068 (N.D. Cal. June 30, 2022).

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

174. Additionally, WSDOT approved accommodations for 67% of WMS3 staff with an approved medical exemption, but denied accommodations to all 7 of those same workers with the same job class who had religious exemptions. Exhibit AF.

**WSDOT failure to provide an interactive dialogue:**

175. Defendants published their process for evaluating religious and medical exemptions but then failed to adhere to that process.

176. This process, as articulated by Defendant Pelton on August 27, 2021, was a two-step process that Defendants abbreviated into one step, thereby eliminating the legal requirements required by the Proclamation, statutory and constitutional law.

177. Defendant Pelton stated "medical and religious exemptions and accommodations will be evaluated in the following manner: First an employee requests an **exemption"** by completing a religious or medical exemption form, followed by the instruction that "[i]f the exemption is granted, then the next step in the process is to do an assessment to determine if there is a **reasonable accommodation** available." Exhibit AG (emphasis in original).

178. Defendants failed to follow their own stated procedure in compliance with Proclamation 21-14.1.

179. Defendants did not conduct an interactive dialogue in step two, as the denial of accommodations to Plaintiffs came in the same letter that accepted their medical and/or sincerely held religious exemption. Plaintiffs did not even know they had received an exemption when they were all uniformly told at the same time that there would be no accommodation.

COMPLAINT                                        43                    **ARNOLD & JACOBOWITZ PLLC**

180. In fact, WSDOT EEO Officer Christian Afful told Plaintiff Geoffrey Gray during a sham *Loudermill* hearing that WSDOT did not have to conduct an undue burden analysis through an interactive dialogue "due to the size of the agency." This fundamentally misstates the law and rendered the hearing meaningless.

181. Aware of this misrepresentation, Mr. Gray notified Travis Vanderpool, South Central Region HR Manager, of Mr. Afful's misrepresentation and pressed Mr. Vanderpool to provide clarification of this misstatement by Mr. Afful, who was the very individual tasked with understanding Title VII and WLAD legal issues. Exhibit AH. Plaintiff Gray received no reply from Mr. Vanderpool.

182. Mr. Gray stated, "Christian specifically said that **undue hardship is NOT a subject addressed in the accommodation process.**" *Id.* (emphasis in original).

183. **"Christian Afful (Internal EEO Manager),** who attended the meeting by your request, specifically said that my case **DID NOT include an evaluation of undue hardship**. As a matter of fact, he said that WSDOT is not integrating an evaluation of undue hardship **FOR ANY accommodation requests**, agency wide!" *Id.* (emphasis in original).

184. Plaintiff Gray continued, "**I pressed VERY HARD** to have WSDOT **tell me** HOW the solution offered by my direct supervisor, Mark Norman (which was a slight modification of my PD), would result in an undue hardship to the state. I got the run-around from him, you, and Brian White.  You never answered the question." *Id.* (emphasis in original).

185. Defendants never answered Mr. Gray's email or provided answers to his questions, nor did they address the statements made by their own EEOC officer declaring WSDOT had

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

no obligation to even perform an interactive dialogue to identify a reasonable accommodation or identify any burden to them.

186. Plaintiff Schutt asked for a hearing, but was told by Brenda Raegan, Human Resources Department head, that it would make no difference in the outcome and that a decision had already been made. He skipped the hearing.

187. Defendants sent the exact same form letter to each Plaintiff notifying them that their exemption was approved but accommodation was denied.  There was no discussion that took place after Plaintiffs sent requests for an exemption but before notification that they would be terminated.

188. Defendants' own EEO officer was advising them that no interactive dialogue was needed.

189. In form letters sent to every Plaintiff, Defendant Pelton stated, "we have determined that no accommodation can be made in your current position…There are no other accommodations for your position available which sufficiently mitigate or *eliminate the risk* associated with having an unvaccinated employee performing the *essential functions* of your position." Exhibit AI (emphasis added).

190. At no time prior to denying accommodation did the Defendants discuss with Plaintiffs the "essential functions" of their job relied upon to deny accommodation.

191. At no time prior to denying accommodation did Defendants identify any accommodation that would "eliminate the risk" short of vaccination or make any suggestions other than vaccination.

192. At no time prior to denying accommodation did the Defendants discuss with Plaintiffs any potential accommodations that would be appropriate for each Plaintiff.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

193. At no time prior to denying accommodation did the Defendants discuss with any of the Plaintiffs the undue burden they would suffer as a result of accommodating their exemptions.

194. At no time prior to denying accommodation did the Defendants engage in any discussion with any of the Plaintiffs the possibility of utilizing personal protective equipment (PPE) as a means of accommodation.

195. This was a unilateral determination by Defendants that religious and medically exempt employees would be terminated, and this decision was made without an interactive dialogue with each Plaintiff.

196. This "all in one" *pro forma* acceptance of exemption but predetermined denial of accommodation, without any dialogue with the individual Plaintiff employees, rendered the accommodation process a sham and completely meaningless.[11]

197. Plaintiff Atkins, who teleworked extensively prior to COVID, was told by her supervisor, George Comstock, who fully supported 100% telework, that after talking to Defendants, he realized there was zero chance of being accommodated. There was no consideration for full-time telework, despite supervisory support for that accommodation and despite 18 months of proof that the job could be performed remotely.

198. Michelle Kiros-Sweet, Olympic Region HR Manager wrote in an email dated August 18, 2021, "I want to add that it is important to remember that the Governor stated religious

---

[11] The usage of cut-and-paste letters to threaten and terminate Plaintiffs evidences the chaos generated and the lack of any due process. For example, Plaintiff Preziosi, an Oiler, never received a pre-separation notice of termination, but she did receive a Notice of Separation that identified her job class as "SHOREGANG." No one ever discussed her job description with her, and, in fact, she was never provided a job description. It is unclear upon what basis Defendants determined that they could not accommodate her.

COMPLAINT                                      46                    **ARNOLD & JACOBOWITZ PLLC**

and medical exemptions *may* be considered and not *will* be. Exhibit AJ (emphasis in original). This statement furthered the perception that not only would an accommodation be denied, but that the Governor and Defendants were hostile to even those requesting an exemption.

199. Brenda Reagan, Human Resources Manager, North Central Region, stated at a September 20, 2021, leaders' meeting, "We're not looking for ways to accommodate people [who are seeking religious accommodation]. We're looking at their job descriptions…we're looking at very old ones."

200. Bobbi Collins Whitehead, Human Resources Manager, Eastern Region, stated on September 14, 2020, at a leaders' meeting, that testing or masking are not accommodations, "because the Governor said so," yet the Proclamation itself required an accommodation process consistent with the ADA, Title VII, and WLAD.

201. Defendants have provided no evidence that either the Proclamation or the Governor told them not to accommodate Plaintiffs. In fact, as discussed *infra,* OFM guidance specifically required strong consideration of telework, with emphasis on rotating job duties to other employees to allow continued telework, determining whether the specific job responsibility requiring a building presence was one that the public *must* perform in the building, as well as other issues. Exhibit AK.

202. The failure to provide a meaningful accommodation process was evidenced with every Plaintiff.  For example, Plaintiff David Lawton, a ferry boat Captain with nearly 40 years' experience, applied for a religious exemption but was told by Defendants that additional information was needed. Just 31 minutes after Mr. Lawton provided that additional

COMPLAINT                                                 47                **ARNOLD & JACOBOWITZ PLLC**
                                                                            8201 164th Avenue NE, Suite 200
                                                                            Redmond, WA 98052
                                                                            (206) 799-4221

information for his religious exemption, he received a notice from Defendants that his religious exemption was approved but his accommodation was denied. Exhibit AL. Mr. Lawton never even entered the sham accommodation process, was never allowed the opportunity to discuss accommodations, did not even know if his religious exemption was approved before he was told he would be terminated.

203. This was a frequent occurrence for all Plaintiffs, who never even knew their religious or medical exemption was approved before they were told they were terminated without accommodation, when no discussion regarding accommodation ever took place.

204. Defendants have admitted that they replaced the interactive dialogue with a subjective and fully discretionary review of the employee's job description in determining whether an accommodation could be granted. This created a process where a global denial of accommodation occurred without an individual interactive dialogue.

205. Defendants utilized a fully discretionary procedure that allowed them to treat employees with a religious exemption differently from secular employees.

206. In fact, Defendants' own policy was specifically silent on any interactive dialogue or discussion with the employee seeking an exemption, but instead relied on an "analysis" of multiple factors, none of which entailed a discussion with the individual employee. Exhibit AD.

207. Given the long list of factors allegedly analyzed and the speed at which it was performed, it was virtually impossible for Defendants to have carried out a meaningful analysis of these factors, notwithstanding the fact that the analysis did not allow for employee participation.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

208. Many Plaintiffs had job descriptions that had not been updated for years, were incorrect, or were completely misinterpreted by Defendants, but were silenced by Defendants when Plaintiffs brought this information to Defendants' attention.

209. For example, Plaintiff Joe DeGroat, who was denied the ability to continue to telework despite the full support of his supervisor to do so, *infra,* had a job description that was more than 10 years old. This outdated description stated that Mr. DeGroat was responsible for performing public facing traffic counts in the field, which Mr. DeGroat had never done in 19 years on the job. Plaintiff DeGroat brought this to the attention of Defendants but was denied the ability to telework regardless.

210. Plaintiff Steve Walker had a job description that was outdated and had another employee's name on it.

211. Plaintiff Joe Greene had a job description 17 years old when he was terminated, dated June 20, 2004, with no revisions.

212. Plaintiff Auckland's job description was more than 10 years old.

213. Plaintiff Robert Washabaugh had a job description that was approximately 5-6 years outdated and had job duties specific to the individual who held the job previously and who took those duties with him when he moved.  That job description was in the process of being updated when Mr. Washabaugh was terminated, with no consideration given.

214. Universally, job descriptions were not updated to reflect the 18 months where telework was successfully authorized and performed.

**WSDOT failure to identify an undue hardship:**

215. Defendants looked for *any* ability to interpret *any* job duty of Plaintiffs as one that *theoretically might* involve public exposure, and on that basis from reading the job description they denied accommodation.

216. Defendants did not identify any actual hardship, much less any hardship that was "real, rather than speculative, merely conceivable, or hypothetical." *Brown v. Polk County, Iowa,* 61 F.3d 650, 655 (8th Cir. 1995); *see also* https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#D, denying the use of speculative harm to create an undue burden.

217. Guidance received by OFM warned against hypothetical hardship. "An employer cannot rely on hypothetical hardship when faced with an employee's religious obligation that conflicts with scheduled work but should rely on objective data." Exhibit AM.

218. Defendants never explained why they could not "address its legitimate concerns with rules short of a total ban." *South Bay United Pentecostal Church v. Newsom,* 141 S. Ct. 716, 718 (2021) (Thomas, J. and Gorsuch, J., concurring), "nor . . . why the less restrictive options," *id.,* were not available.

219. The arbitrary nature of Defendants' actions denying accommodations without any burden to them is highlighted by the fact that numerous Plaintiffs were terminated by Defendants without an accommodation, but then these same Plaintiffs were hired immediately by WSDOT contractors, fully accommodated, doing the exact same work that they did for the Defendants.

220. For example, Plaintiff Wendy Punch was a Transportation Technician 3 (TT3) performing construction inspection/materials testing, and CAD drafting, all of which was

performed remotely or outdoors, but was denied an accommodation by Defendants.  She was then hired by her current employer, TranTech Engineering, LLC, a WSDOT contractor, fully accommodated, performing the same work she performed for WSDOT, working contracts for Defendants, who gave her a WSDOT vehicle and laptop for use when she performs work for them. Ms. Punch performs WSDOT contract work for Defendants as a WSDOT inspector because WSDOT fired her as an inspector.

221.   Further, in this new position, Ms. Punch is responsible for training WSDOT personnel, yet Defendants would not let her perform that job without vaccination but now allow her to do that job with her current employer who never even required her to wear a mask.

222.   Likewise, Plaintiff Jana Crawford was a Stormwater Branch Manager who worked at Headquarters and wrote policy and programmatic guidance, which was accomplished full-time remote during COVID and easily continued in that regard, but she was denied that accommodation. In fact, Ms. Crawford's replacement is full time telework and had no stormwater experience. Despite refusing Ms. Crawford's full-time telework accommodation, Defendants terminated her and thereafter published the job vacancy and recruited the position as a "full-time telework" position, which it remains to this day. Exhibit AN.

223.   Her evaluation in August 2021 stated "Above Standards" performance rating on 4 out of 5 competencies, with the fifth standard as "Meets Expectations," dispelling any theory that her job could not be done remotely.

224.   This is similar to Defendants' termination of Plaintiff Turcott, who was denied a religious accommodation for full time telework in his job as the Emergency Manager, after which

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Defendants advertised the position as full time telework. Exhibit AO; *see also* "Cultural Resources Specialist - Architectural Historian: www.governmentjobs.com/careers/washington/wsdot/jobs/3311304/cultural-resources-specialist-architectural-historian, a job previously held by an employee denied a remote accommodation, but thereafter offered as a remote position.

225.   The arbitrary and discriminatory nature of Defendants' actions are evidenced by the fact that Ms. Crawford, after being denied accommodation and terminated by Defendants, and then replaced by a full-time teleworker without stormwater experience, was thereafter hired by Jacobs Engineering, where she works as a contractor for Defendant, managing projects, developing project proposals, completing Defendants' drainage reports, and other duties regarding Defendants' compliance with stormwater requirements. Jacobs Engineering did not require anything from Ms. Crawford with respect to her employment.

226.   Similarly, Plaintiff Michael Uribe, terminated without religious accommodation as a Highway Maintenance Worker 2 working outdoors, returned to work on January 24, 2023. Mr. Uribe was quietly contacted by Defendants and told he could apply for a temporary winter position, fully accommodated in his unvaccinated state, without any restrictions – no mask, testing, or other protective measures. He was told that Defendants were not advertising this. Mr. Uribe was denied any accommodation as a permanent employee, but now he is afforded a full religious accommodation requiring no restrictions on his part in a temporary position.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

227. Defendants followed a confusing, if not discriminatory process, that believed that "an accommodation based on religion utilizes a different standard than an accommodation based on a disability." Exhibit AM. Defendants stated it allegedly could claim a de minimis undue hardship to reject a religious accommodation, but did not need to go through this analysis with a medical accommodation, which allegedly must be accommodated universally, *id.,* though it is clear this policy was not followed either.

**WSDOT utilized an unattainable standard:**

228. Based on information and belief, the standard which Defendants used to evaluate religious and medical objectors for accommodation – "eliminate the risk"[12] – was a standard devised solely for the purpose or disqualifying religious and medical objectors from continued employment.

229. "Risk elimination" is unattainable and was a ruse for termination. It is also not the standard required by the Proclamation, WLAD, or the Constitution.

230. Defendants fundamentally misrepresented the terms of Proclamation 21-14, as the Proclamation did not demand "risk elimination" but required agencies to comply with all state and federal law, specifically citing ADA, the Rehabilitation Act, Title VII, WLAD, and any other applicable law." Proclamation 21-14, *supra.*

231. Defendants made the predetermined decision that nothing other than vaccination would assure compliance with the Proclamation, a decision that violated the Proclamation, ADA and WLAD.

---

[12] This standard, "eliminate the risk," was applied to every single Plaintiff and recited in nearly every accommodation denial letter received by Plaintiffs. *See* Exhibits B, C, D.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

232. This standard of "risk elimination" evidences the discriminatory nature of Defendants' actions. Defendants did not terminate secular vaccinated employees who were reinfected and transmitted the virus to others but required religious objectors to meet this impossible standard.

233. Plaintiffs questioned Defendants regarding the known fact that the vaccine did not stop transmission or infection, and thus there was no "risk elimination" inherent in the vaccination.

234. Defendants refused to acknowledge any such information presented to them by Plaintiffs.

235. In essence, Defendants created their own mandate within the mandate, establishing their own criteria in the process – "risk elimination" – that did not comply with the Proclamation or federal and state law.

236. This standard was a ruse for termination.

**WSDOT did not accommodate even outdoor workers, those who worked in closed offices, or those who could telework:**

237. Even though many of the Plaintiffs worked either primarily or entirely outdoors, the Department refused to consider the high unlikelihood that the virus could be transmitted outdoors, especially when maintaining social distancing.

238. Defendants cited no science upon which to base their denial of accommodation to outdoor workers, teleworkers, or those who worked alone in a closed office.

239. OSHA guidance states that no vaccination is required for outdoor workers. Exhibit AP.

240. Proclamation 21-14.5 states, "WHEREAS, health experts agree that outdoor activities are safer than indoor activities, and individuals are less likely to be exposed to COVID-

COMPLAINT                                        54                    **ARNOLD & JACOBOWITZ PLLC**
                                                                      8201 164th Avenue NE, Suite 200
                                                                      Redmond, WA 98052
                                                                      (206) 799-4221

19 while working or engaged in other activities outside, even without the use of masks[.]" Exhibit AQ.

241. Defendants even terminated snowplow operators who worked outdoors and alone, including Plaintiffs Aaron Miller and Caitlyn Lomen-Carr. Defendants claimed that even outdoor workers had to be terminated or reassigned to jobs that did not require close personal contact with others. It was never explained how an outdoor worker working alone worked "in close proximity" with others.  Mr. Miller was told that he could not be accommodated because he might encounter an accident while snow plowing and would put them in danger.

242. After terminating Plaintiff snowplow operators, Defendants then hired a contractor to clear the passes in the winter of 2021, with no requirement for vaccination. So a job once performed by Plaintiffs who were terminated for not being vaccinated, was then being performed by contractors who were not vaccinated.

243. In an effort to obtain help plowing snow, Defendants hired BKC Contracting to clear the SR 903 route through Ronald, WA. The contract cost taxpayers more than $43,000, Exhibit AR, and it did not require those operating under the contract to be vaccinated. Exhibit AS. Therefore, Plaintiffs who had a sincerely held religious and/or medical exemption were terminated for not being vaccinated, and then replaced by individuals to perform the same work who were not required to be vaccinated.

244. Similarly, traffic fatalities on state highways have likewise increased more than 20% in 2022 from 2021 numbers, the deadliest in 25 years. Exhibit AT.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

245. Defendants terminated highway maintenance workers who worked entirely outdoors, including Plaintiff Rodney Pelham, who worked exclusively outdoors providing herbicide treatment, tree felling, traffic control, roadkill removal, guardrail replacement, asphalt and chip seal, snow and ice removal and vegetation management. Plaintiffs Shane Taylor, Scott Schute, Benjamin Wheeler, Caitlyn Lomen-Carr, Richard Ostrander, and Bobby Dean likewise worked outdoors as highway or field maintenance employees performing similar functions and were denied accommodation.

246. Plaintiff Ostrander worked outdoors, alone, in his truck as part of the Incident Response Team on the open highway. He was masked and fully able to social distance outdoors. He was denied accommodation without reason as to what risk he presented.

247. Similarly, Plaintiff Auckland worked alone in his truck. If he had any work to perform in the building, which was rare, he had his own cubicle with walls separating him from others and an exclusive door.

248. Plaintiff Bobby Dean, in fact, questioned Defendants after he was told he would be terminated, asking Defendants to identify a task that required public exposure, or what risk he posed, but Defendants provided none.  Mr. Dean likewise notes that 95% of his office filed for a religious or medical exemption and they all received the same email, on the same day, at the same time, that there would be no accommodation. None of those individuals were permitted any interactive dialogue with Defendants.  This included Mr. Dean's supervisor, lead tech sign personnel, office and maintenance personnel. On October 19, 2021, there were only four people out of 18 remaining at the Goldendale

COMPLAINT                                                    56

Maintenance Shed. Everyone who applied for an accommodation was denied without dialogue.

249. Plaintiff Aaron Miller worked outdoors as a highway maintenance worker.  He was told he could not be accommodated because he might come in contact with someone if there was an auto accident nearby him.

250. Plaintiff Todd Humphreys performed his work entirely outdoors performing job site inspections, surveying, and materials testing and documentation.  During the off-season, approximately three months out of the year, he worked on plans preparation, which was easily done remotely and, in fact, had been done remotely for 18 months.

251. Plaintiff Schiess was told by Michelle Kiros-Sweet, Olympic Region HR Manager, that because Mr. Schiess worked outdoors in the WSDOT highway "Right-of-Way," even by himself, he was exposing the public to a health hazard to which WSDOT could not protect the public from unless he was vaccinated. There was no written guidance to support this, and, in fact, this fabricated reason was in opposition to OSHA guidance.

252. Defendants terminated numerous Transportation Engineers who worked outdoors and on their computers from home, with no disruption to their job function, including Plaintiffs Steven Walker, Terry Dunn, and Victoria Gardner. Plaintiff Walker was told that because he had to come into the building to get his gear for his job, he had public exposure and could not be accommodated, but Mr. Walker could have easily kept that equipment at his home.

253. Similarly, Plaintiff Victoria Gardner went to field sites alone, worked outdoors where she performed all of her duties that did not involve computer access, which she managed

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

from her home. Ms. Gardner spent her hours working from a desk performing engineering design, including CAD drafting, writing reports, hydraulics design, estimates and contract plans. This was easily done from home. Similarly, Plaintiff Wendy Punch, Construction Inspection/Design, performed inspection work outdoors, with remaining work performed on a computer completed from her home, *supra.*

254. OFM guidance identified numerous responsibilities that were suitable for teleworking, many of which were the exact duties of Plaintiffs, including, "accounting, analyzing data, auditing reports, programming, phone work, data entry, evaluations, graphics and design, work planning, preparing budgets, monitoring contracts, project management, research, software development, spreadsheet analysis, web training, and writing and editing." Exhibit AK.

255. Defendants terminated outdoor ferry ticket booth attendants, including Plaintiffs Merrigrace LaPierre, Sheri Ferguson and Sommer Beckner. Ms. Ferguson even asked to go on leave without pay but was denied.

256. Plaintiffs should have been allowed to go on leave *with pay* pending the end of the emergency situation. *See Cleveland Bd. of Educ. v Loudermill,* 470 U.S. 532, 544-45 (1985) ("Finally, in those situations where the employer received a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay.") (emphasis added).

257. Defendants terminated Plaintiff Brad Sawaya, who worked for Washington State Ferries outdoors, loading cars onto the ferry and directing traffic. He had no contact with anyone.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

258.  Plaintiff Deborah Fletcher, a Secretary Senior, was denied telework because she was told she had tasks to perform in the building.  However, those tasks included performing the tasks that other secretaries who worked remotely could not come into the office to perform because of geographical distance from the Eastern Region complex. Ms. Fletcher routinely performed these tasks long before COVID-19.  The secretarial position was, and always had been able to be performed remotely, and Ms. Fletcher was denied the ability to telework because Defendants claimed her duties required her to be in the building to perform the work of those who teleworked but were not exempt from the vaccine.

259.  By OFM's own guidance, duties could be shifted, *infra,* but Defendants refused to do shift duties for religious objectors.

260.  Moreover, Ms. Fletcher's workstation would be characterized as meeting Defendants' definition of working alone.

261.  Plaintiff Austin had been teleworking since November 2019, but was denied the ability to continue.

262.  The extraordinary loss of talent, experience and expertise is evidenced in the termination of Plaintiff Shane Taylor, who worked outdoors as a Highway Worker 2 and had 18 years of Winter Shift experience, 5 months as Winter Shift Lead experience, attended the Maintenance Academy, Snow & Ice College, and is certified in forklift, front end loader, dump truck/snow. Plow, street sweeper, flusher truck, Evergreen Pilot Vehicle and Traffic Control Flagger. He has his medical Examiner's certification, as well as First Aid/Adult CPR.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

263. Defendants made no attempt to analyze individual work environments. For example, Plaintiff Kerry Strawn, a Highway Maintenance Worker 2 who likewise worked entirely outdoors, was only one of two individuals in his entire department who requested an exemption, which would not have been difficult for Defendants to accommodate.

264. These details were never uncovered by Human Resource Defendants performing accommodation processes from Olympia on a job they did not understand, reading a position statement from a book, and having little knowledge of the circumstances at literally dozens of office locations.

265. Defendant Pelton issued guidance to all staff where he defined "working alone" as "[a]lone worker inside the enclosed cab of a vehicle or piece of equipment." Exhibit AU. This guidance exempted these employees from wearing masks. *Id*.

266. These instructions regarding who was "working alone" also included those employees who worked "by themselves inside and office with four walls and a door," *id.,* but Plaintiffs who met this definition were terminated without consideration for their isolated status, even though they brought this fact to the attention of Defendants.

267. Defendants did not follow OFM legal policy and definitions when utilizing telework as an accommodation for religious and medically exempt workers.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

268.  OFM policy stated "Employers should not deny a request for telework as an RA if a job *involves some contract with colleagues and coworkers* for coordination and contact since this work can be conducted virtually." Exhibit AV, at 5 (emphasis added).[13]

269.  WSDOT denied all accommodations regardless of contact, even if contact could only be theorized.

270.  Plaintiff, Robert Washabaugh, a design engineer, worked in his own office with a door, separate from others. He teleworked successfully throughout the COVID-19 period of time.  Mr. Washabaugh was told by Regional Administrator Todd Trepanier early in the process that there would be no accommodations or reassignments for anyone.

271.  Plaintiff Scott Schutt worked in his own office far removed from others in his work group by approximately 150 feet, in a large garage at the far end of the maintenance building away from the rest of the crew.  Most of his work was performed outdoors, using his own assigned vehicle, and any work at his desk was alone, where he had no need for interaction. This work could have been done remotely.

272.  Plaintiff Daniel Hjelmeseth also worked in his own office, with a door, which remained closed unless Mr. Hjelmeseth needed to leave. He also had a larger slider window for ventilation. Field work included masks and social distancing.  Mr. Hjelmeseth rode in his own vehicle.

---

[13] The 2021 Roundtable discussion can also be found at https://ofm.wa.gov/state-human-resources/hr-meetings/reasonable-accommodation-roundtable-sep-2021.  All Roundtables can be found at: https://ofm.wa.gov/state-human-resources/hr-meetings/reasonable-accommodation-roundtables

COMPLAINT                                        61                **ARNOLD & JACOBOWITZ PLLC**
                                                                   8201 164th Avenue NE, Suite 200
                                                                   Redmond, WA 98052
                                                                   (206) 799-4221

273. Defendant Pelton's guidance likewise stated that "working alone" included those employees who worked "inside of a cubicle with 4 walls (one with an opening for an entryway) that are above the head of the seated or standing desk cubicle, worker, and whose work activity will not require anyone to come inside of the cubicle." *Id.* Defendants permitted no analysis with any Plaintiff regarding these individual circumstances.

274. In fact, Plaintiff Steve Walker worked in a cubicle, about 10-12 feet square, with one door. No one needed to enter his cubicle, and regardless, Mr. Walker could perform all of his duties remotely with a mobile phone and computer, which he did successfully for 18 months. Mr. Walker also performed work setting up office equipment in empty offices.

275.  Plaintiff Ron Vessey likewise worked in a cubicle with four walls and one opening.  No part of his job required anyone to enter his cubicle or required close coordination. When Mr. Vessey was forced to retire, most of the staff were still teleworking, and were not allowed in the building except on a per visit basis. To Mr. Vessey's knowledge, staff are still teleworking to this day. Mr. Vessey could clearly have been accommodated via telework to this day, as Defendants allowed this benefit for secular vaccinated employees, but not religious objectors. This was biased and arbitrary.

276. Plaintiff Larry Frostad worked in an open-air space that would seemingly meet the definition of working alone under Defendants' standards.  Mr. Frostad requested a copy of the evaluation of his workstation allegedly conducted as part of the process of denying him an accommodation, but he was never provided that analysis. It is believed that

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

analysis was never performed, and regardless, there was no dialogue with Mr. Frostad regarding any of the factors Defendants allegedly considered in denying accommodations, much less a workstation analysis.

277. Even though many Plaintiffs successfully teleworked prior to COVID-19 and certainly throughout the period of COVID, Defendants denied telework as an accommodation and contrived reasons for requiring Plaintiff presence in the building in order to claim public exposure.

278. In essence, Defendants created public exposure where none existed, and where none was required. This was for the purpose of terminating religious objectors.

279. Defendant Pelton misstated the language of the Proclamation and the law when he stated on August 20, 2021, that "Telework is not an option as an accommodation given the Governor's proclamation stating that even teleworking employees are required to be vaccinated." Exhibit AW. This is a fundamental misrepresentation of the language of the Proclamation. And it violates WLAD, ADA, and Title VII.

280. Defendant Pelton also misrepresented accommodation law when he stated that, "Schedule changes do not eliminate the conflict of the requirement to be vaccinated." *See Claybaugh v. Pacific Northwest Bell Telephone Co.,* 355 F. Supp. 1 (D. Oregon 1973).

281. The refusal to accommodate numerous Plaintiffs through telework, including Plaintiffs Gray and Turcott, directly contradicts guidance from the Office of Financial Management. OFM policy states that "[i]f an employee doesn't need to be at a state worksite or work a traditional schedule to perform all or some of their duties, support

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

them achieving their work objectives at their telework site and/or with a flexible work schedule." Exhibit AK.

282. The OFM guidance continues by stating that public interaction only applies when "the public *must* come into the state office in-person." *Id.*

283. Additionally, guidance also states that when tasks appear to require presence in the building, "[a]gencies *must* answer these questions: …Can those tasks be rotated to diminish the requirement for a specific person to be on-site, or is there just one person who can perform the work?" *Id.* The guidance also required answering, "How much time do those tasks or processes take to complete?", a relevant consideration that Defendants did not discuss with Plaintiffs in a meaningful dialogue but predetermined that any theoretical public task regardless of time required was grounds for dismissal.

284. Defendants failed to follow the clear guidance of OFM in denying telework accommodations to many of the Plaintiffs. This guidance was last updated July 19, 2021, prior to termination of Plaintiffs. *Id.*

285. Defendants failed to apply any of this legal guidance when terminating Plaintiffs who could telework. "Embed those [telework and remote work] practices in your agency culture and continue them whenever possible. *Continue to use feedback from employees and customers to inform what is working*…" Exhibit AK.

286. Indeed, "what was working," *id.,* was the same protocol Plaintiffs had successfully used for 18 months with no traced COVID-19 infections to any of them. This protocol included 100% telework as the job permitted, reserving office space/vehicles online to avoid encountering others at the office, daily body temperature recordings and filling out

ReadyOp online daily, sanitizing all surfaces, door handles, printers, vehicle interiors and exterior door handles, social distancing at all times, and masking at all times, even outdoors. [14]

287. It was clear this protocol was working on the job and could have successfully continued with no danger or risk of danger, as evidenced by 18 months of success.

288. Defendants accepted no feedback from Plaintiffs regarding job description, duties, and individual work site circumstances.

289. OFM also stated that "[o]ffering employees supportive options for more flexibility, including remote work, is intended to make it possible for people to continue to work, rather than taking leaves of absence *or leaving the workforce entirely* – a goal that diminishes inequities and benefits employees, agencies and those we serve." Exhibit BD.

290. Defendants refused feedback even from Plaintiffs' supervisors who certified that full telework was possible.

---

[14] Defendants had an extensive and detailed policy of PPE and other sanitation protocol that was effective in preventing the spread of the virus in the workplace yet provided no consideration of this preexisting structure in any alleged accommodation analysis. Plaintiffs followed this protocol and not one Plaintiff had a COVID-19 transmission traced to him or her. This protocol included the matrix "Daily Cleaning and Disinfection Guidance for Facilities" outlining the frequency and locations of sanitation procedures, Exhibit AX, a detailed plan regarding isolation and quarantine procedures to follow after exposure to a COVID-19+ individual Exhibit AY, "Disinfection protocol after persons suspected or confirmed to have COVID-19 have been in the facility," Exhibit AZ, "Facility Improvements Checklist" to recommend ways to reduce the risk of COVID-19 transmission in the buildings, Exhibit BA, a "WSDOT COVID-19 Safety Plan," which provided additional guidance to endure safety of employees and reduce the spread of the virus, Exhibit BB, and a "Supervisor/Management Checklist and COVID-19 Reporting" plan regarding how to respond to employee symptoms or a COVID diagnosis to prevent the spread of the virus. Exhibit BC. The denial of accommodations to Plaintiffs gave no consideration to this extensive and comprehensive guidance; they demanded as the only solution the termination of those with sincerely held religious beliefs and those with medical disabilities.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

291. This took place despite an "ALL STAFF" email sent by Defendant Millar on July 20, 2021, that stated "Telework is a WSDOT priority," with the goal to boost telework to 40% of the workforce. Exhibit BE. Defendant Millar did not follow his own policy.

292. This goal had been in place since March 3, 2014, when Governor Inslee issued Executive Order 14-02, which likewise ordered each agency to develop and implement written policy for telework and flexible work hours in order to reach the goal of "at least 40 percent of all state employees will be using flexible work hours." Exhibit BF.

293. Defendant Millar stated, "WSDOT focuses on job performance and results rather than work location. We know from our COVID-19 experience that we can deliver a safe, sustainable, and integrated multimodal transportation system, even with many employees working away from facilities. In fact, 81% of WSDOT managers report team productivity is the same or higher than before widespread teleworking began." Exhibit BE.

294. This philosophy of encouraging telework in accordance with the Governor's executive order was specifically rejected with respect to religious and medical objectors as a method of accommodation.

295. Defendant Millar stated, "[s]omeone *selecting* to telework 100%, for example, will *balance out* someone whose assignment is not suitable for telework or someone who may want an eventual full-time return to a building."

296. But there was no "*balance*" afforded to Plaintiffs seeking an accommodation through telework, nor were any of the terminated Plaintiffs offered the ability to "*select*" 100% telework.

COMPLAINT                                    66        **ARNOLD & JACOBOWITZ PLLC**
                                                       8201 164th Avenue NE, Suite 200
                                                       Redmond, WA 98052
                                                       (206) 799-4221

297. Defendants terminated Plaintiff Geoffrey Gray, Region Biologist, who teleworked more than 18 months *prior to* termination and had the unequivocal support of his supervisor to continue to telework, which he successfully did throughout COVID. Mr. Gray drove and worked alone in the field and was always outdoors with a mask and social distanced. Moreover, Mr. Gray presented an updated Position Description including fulltime telework, prepared by his supervisor Mark Norman, Assistant Environmental Manager – Biology and Mitigation, but it was outright rejected by Bill Sauriol, Environmental Manager, Mr. Norman's boss.  When Mr. Gray pushed Defendants to provide an undue burden they would suffer if he continued to telework, Mr. Gray was told that the agency did not have to do that analysis because of its size. Mr. Gray published this WSDOT statement in notes he transcribed during his union grievance meeting. He solicited feedback on the accuracy of his notes from all who participated and received no changes regarding his recitation of the statements made or the events that took place.

298. Plaintiff Gray's supervisor, Mark Norman, wrote a letter in full support of Mr. Gray's telework accommodation to Mr. Norman's supervisor, Bill Sauriol. Mr. Norman wrote that "[t]he Corps and Ecology liaisons at the site were overwhelmingly supportive of finding ways to keep Geoff while continuing to stay safe . . . I was very discreet in what I said to them, but when they heard Geoff was leaving they all implored me to do everything I could to keep him and said interacting 100% over Teams was just fine . . . Geoff is a valuable asset to WSDOT's team of biologists. To lose him is to lose years of valuable experience and the valuable relationships he has built with the WSDOT liaison program and Ecology." Exhibit BG.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

299. In response to this letter pleading to keep Mr. Gray, Mr. Sauriol simply stated he would forward the letter to Brian White, Assistant Region Administrator, and Travis Vanderpool, Human Resources, without any other statement showing consideration of accommodation other than, "I hope they contact him directly and try to convince him to get vaccinated." *Id.*

300. Plaintiff Gray never received any feedback or response from Mr. White or Mr. Vanderpool.

301. This was the common talking point given by Defendants to every Plaintiff seeking dialogue: get vaccinated.

302. Similarly, Plaintiff Joe DeGroat, Transportation Engineer 3, likewise teleworked 100% and had the full support of his supervisor, Mr. James Todd Daley, who was head of the Traffic Office, to continue in that telework capacity but was forced to retire prematurely or take the vaccine.  Mr. DeGroat also was assigned a cubicle that would have met the definition of "working alone," *supra.*

303. Plaintiff Atkins likewise had the full support of her supervisor to work remotely but was denied.

304. Defendants likewise terminated Plaintiff Steven Turcott, Eastern Washington Emergency Management, stating that although he had teleworked throughout COVID, including working remotely staffing four Emergency Operations Centers, Defendants claimed he was public facing because he needed to be in the office for future EOC's, with no specificity regarding why his physical presence was needed. Virtual/remote

staffing of emergency operations centers is a standard and common practice throughout the nation. Mr. Turcott's replacement works remotely.

305. In fact, as stated *supra,* Mr. Turcott's vacant position was advertised as full-time telework in January 2022 after his termination.

306. Similarly, Plaintiff Frostad was terminated because he was told he needed to be at the worksite as a member of the EOC. But removing Mr. Frostad's assignment to the EOC would not have burdened Defendants in the least, and regardless, Mr. Frostad's presence at EOC events was not necessary. The Eastern Region EOC was activated during the COVID era and was staffed by personnel working virtually while teleworking.

307. Defendants refused to accommodate fulltime teleworker and Plaintiff Ron Vessey, even though Mr. Vessey's Director and Appointing Authority Dongho Chang, declared in writing using the approved WSDOT questionnaire that Mr. Vessey could perform his job 100% telework. Mr. Chang's determination was also supported by Assistant Secretary Marshall Elizer. However, Assistant Secretary Review Board (ASRB) overruled Mr.Chang and Mr. Elizer, basing the denial on future hypothetical issues that he believed might require public exposure, without any real specifics.

308. Furthermore, Human Resources sent Mr. Vessey a reassignment offer to another position with an extraordinary pay cut, and the job description actually *required* public exposure through meetings with staff, vendors, and other required in-person meetings.  When Mr. Vessey pointed out this hypocrisy, asking why he posed a threat with hypothetical interaction but did not pose a threat with required interaction, the HR authority simply

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

responded that he assumed Mr. Vessey was not interested in the reassignment, without answering the obvious question.

309. Defendants terminated Shasta Atkins, who teleworked 100% as a Bridge Engineer.  Ms. Atkins' supervisor had waived all in-person duties and shifted those to a local employee, but Defendants still refused to accommodate her.

310. Plaintiff Lynn Nowels was a Fiscal Specialist Supervisor and performed her job electronically, such as reviewing and writing reports for payroll, writing DOT Adopt a Highway agreements, preparing Repair Cost Estimates for damages and submitting them electronically, and responding to phone messages from the public, all done remotely. Defendants claimed Ms. Nowels could not telework because she had to be in the building to sell commercial vehicle and rest area permits, but this was, and still is, done online.

311. Moreover, Defendants terminated Ms. Nowels at the same time Ms. Nowel's workspace was still locked down to the public, which remained locked down for nearly a year after Defendants terminated, meaning at minimum Ms. Nowels could have worked another year. Indeed, Defendants claimed the office was public facing, but after terminating Ms. Nowels, Defendants converted the office to a fully remote office with employees currently working remotely and coming into the office as little as a morning per week.

312. Additionally, WSDOT terminated exempt employees by refusing a telework accommodation, but then advertised that same job as full-time teleworker, *supra.*

313. This conversion of a position that was successfully performed remotely during the pandemic to full-time telework by WSDOT just after firing the religious objectors without an accommodation occurred in several instances, including the Eastern

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Washington Emergency Manager position, Exhibit AO, and the Stormwater Branch Manager, Exhibit AN.

314. At a minimum, Defendants could have at least accommodated Plaintiff until such time as workers were called back into the building, which did not occur until February 3, 2022, Exhibit BH, after which even some were allowed to continue to telework.[15]

315. Defendants contrived numerous hypothetical excuses to force Plaintiffs back into the building months before the October 18, 2021, vaccination deadline for the express purpose of discontinuing allowance of full telework and enforcing the vaccine mandate. This advice, to bring individuals back into the office so that there would be a reason to then deny accommodation, Exhibit BJ, was actually a tactic suggested by the Society for Human Resources Management (SHRM), an HR think tank, based on information and belief, was relied upon by Defendants for legal advice. Exhibit BK.

316. Not only did Defendants bring many of the Plaintiffs back into the office prior to termination in order to establish the precedent that the position could not be performed remotely, Defendants also contrived job responsibilities that could allegedly not be performed remotely, thereby eliminating telework as an accommodation.

---

[15] On November 3, 2021, Defendant Millar issued an "All Staff" update on return to the building and stated that Defendants were "dialing up" capacity in buildings to 25%. Exhibit BI. "The first turn of the dial starts now to 25% capacity at facilities that are ready and able to accommodate in-person/hybrid meetings, intermittent office work, etc. With capacity limited to 25%, *most employees who are allowed back into buildings will likely spend many of their days teleworking."* *Id.* Even this return "is dependent on how November and December progresses…" *Id.* It is inconceivable how one can justify terminating religious objectors under the pretense that they could not telework, yet allowing secular employees the option to continue to telework long after religious objectors were terminated.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

317.   For example, as discussed *supra,* Defendants contrived a job responsibility for Plaintiff Joe DeGroat, claiming he was responsible for Traffic Counts in the field, which Defendants claimed was a public position requiring vaccination.  However, despite the fact that Mr. DeGroat had never performed a traffic count in 19 years on the job, these traffic counts were done using automated methods with video cameras installed by an office tech at intersections where Mr. DeGroat requested traffic counts.  Defendants presented the responsibility as one requiring Mr. DeGroat , a Traffic Engineer 3, to sit at the intersection and count cars, an antiquated method that had been done long ago by entry level employees, never by Mr. DeGroat. And regardless, that work would have been performed outdoors, where a vaccination would have been unnecessary.

318.   As discussed, *supra,* Plaintiff Nowels was denied telework because Defendants claimed she was needed in the office to sell commercial vehicle and rest area permits, but this process was fully converted to an online service for customers and remains fully online to this day.

319.   Even SHRM advised, "Employers who require all employees to work remotely because of ETS [Emergency Temporary Standards] will be setting a precedent that the position can be performed remotely. . . . Doing so will make it difficult for employers to refuse future requests, regardless of the reason, from employees in the same or similar positions to work remotely as the refusal could serve as the basis for a discrimination claim." Exhibit BL.

320.   Defendants did not have the knowledge or the experience of the jobs for which they were remotely and unilaterally determining whether an accommodation could be granted.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

321. For example, Plaintiff Chris Paneris demanded a meeting after he was told, without dialogue, that he would not be accommodated. At that meeting, Eben Phillips stated he was the Engine expert in the HR meetings discussing implementation of the mandate, yet he had never worked as crew on any ferry. Instead, Mr. Phillips stated he used outside industry standards of Plaintiffs' job descriptions in formulating his opinion that all Oilers in the Engine Room had close contact with others, which misrepresented the reality of the contact.

322. Mr. Paneris offered to perform a walk-through of his workspace in the engine room to educate those making the determination, but this was refused.

323. Plaintiff Sean Morgan, Chief Engineer, like all Plaintiffs who worked in the engine room of a ferry, a restricted area with the door locked, was told he could not be accommodated because he had normal and regular contact with the public, which simply was not true.[16]

324. Oilers, like Plaintiff Preziosi, worked in the Engine Room, which was the entirety of the lower car deck below, an expansive area with only four crew present, at most, with their own kitchen, day room, bathroom and Engineer Operating Station. They had no contact with public or passengers, and watch turnover at the end of the shift was held outdoors,

---

[16] Like all Plaintiffs who were Engineers or Oilers, they lived at the console of the ship in the engine room, which is in the belly of the boat. It is described as "the single most isolated position on a ferry boat." M.E.B.A. BA Section 14(a). In fact, the essential functions of a Chief Engineer state that the Engineer Officers in charge of watch "Shall not be required to perform duties away from the confines of the engine room or fireroom casings while the vessel is underway." The Engine Room consists of a Chief, an Assistant, and two Oilers. The Engine Room spaces are separated with watertight doors and bulkheads. Each space has an additional external door to the open air car deck. They are highly ventilated with total exchange of air in a matter of minutes. They have their own kitchen, bathroom and crew area. The layout of each boat varies, which begs the question of how Defendants can make a blanket denial of accommodations to all engineers and oilers without having any information, or indeed, even asking for clarification, regarding the layout of the boat, the work environment of each exempted employee, and the ability to accommodate based on these unique factors.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

on the car deck once all passengers had left. These are issues and details that assigned HR decision-makers refused to discuss and had no time to discover.

325.   This is why interactive dialogues were not only constitutionally required, but they were also an absolute necessity to help administrative staff located hundreds of miles away from a work site understand the particulars of jobs and work environments of which they had no knowledge or experience.  Those terminated from ferry service alone each worked on a different boat, with a different vessel layout and different accommodation considerations, yet all were globally denied under a universal application of job descriptions.

326.   Chief Engineers and Oilers universally brought to the attention of Defendants the aggressive ventilation system inherent in engine rooms aboard ferries, coupled with the few people who occupy the very expansive space. Engine rooms contain propulsion engines, heat-emitting components such as boilers, diesel generators, combustion air exhaust pipes, and major electrical equipment. The engines need air for consumption, and air flow is further needed to cool the space and remove excess heat.  Consequently, engine room ventilation is highly sophisticated but very aggressive.[17]

327.   Universally, Defendants shut down any discussion regarding this fact.

328.   Based on information and belief, Defendants never considered this data in any alleged analysis performed.

---

[17] For an extensive discussion regarding engine room ventilation and the absolute need for adequate ventilation,      *see*      https://www.heinenhopman.com/20220308-engine-room-ventilation-explained/ and  https://www.powerandmotoryacht.com/maintenance/how-to-properly-ventilate-your-boats-engine-room.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

329. Defendants did not consider air exchange rates in these spaces and compare that data to guidance from the medical community about COVID exposure risk in areas of rapid air movement.

330. These are the details that HR decision-makers were not qualified or even had the minimal education required to intelligently analyze, nor did they attempt to analyze utilizing the expertise of those who had that knowledge base, in the expedited decision to offer no accommodations and rely on job descriptions and random resources to do so.

331. Those Defendants making the determination about accommodation merely looked for key phrases in a job description to justify termination.

332. Those individuals in HR denying accommodations also referenced outdated Position Descriptions (PD) that were not revised to include the telework and COVID risk mitigation used during outdoor fieldwork. Defendants updated these PDs after terminating Plaintiffs.

333. Plaintiffs became aware that the entire accommodation process was a sham and that no one was really responding to them personally, outside of form emails and canned responses.

334. Plaintiff Turcott was assigned duties for the purpose of denying accommodation that were not his duties and were not in his job description. Specifically, Mr. Turcott was told he provided in-person training and in-person attendance at meetings with stakeholders. But no such requirement existed in Mr. Turcott's Position Description. And regardless, any alleged meetings with stakeholders were speculative, as stakeholders were not even conducting in-person meetings.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

335. Moreover, throughout the COVID pandemic, while teleworking, Mr. Turcott successfully attended numerous virtual internal WSDOT meetings and stakeholder meetings relating to his area of responsibility, and he both received and provided training through virtual means.

336. Defendants justified their act by saying the stakeholders "might" hold in-person meetings, yet another ruse to terminate Mr. Turcott in violation of EEOC standards that speculative harm is not harm.[18]

337. In fact, Plaintiffs were told to not bother with even applying for an exemption, that no accommodation would be granted. For example, Travis Vanderpool, South Central Region HR Manager, made it very clear that there would be no accommodations granted and recited Defendants' position that relied upon a blanket "interacting with the public" job function, whether it existed or not, to decline accommodation.

338. The refusal to discuss or provide dialogue was admitted by Defendants on or about August 16, 2021, when Todd Trepanier, WSDOT Region Administrator, stated that "We weren't to enter into conversations of detail of why this was occurring; we were to not enter into conversations that debated this, the science behind it; we were not to enter into the conversation debating the politics behind it.  It was just, quite, just quite simply that this was a Proclamation that has been rolled to cabinet agencies and our agency is implementing this policy..."[19]

---

[18]   https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#D.

[19] https://www.youtube.com/watch?v=fggZ8Uem11A (starting at 5:01)

339. This misstated the words of the Proclamation, which required compliance with WLAD, Title VII, and ADA.

340. Michelle Kiros-Sweet stated that "it is important to remember that that Governor stated religious and medical exemptions *may* be considered and not *will* be." Exhibit AJ, *supra.* Ms. Kiros-Sweet misstates the law entirely, as the Governor *must* consider all requests for exemptions and accommodations; it is not a process the Governor or Ms. Kiros-Sweets had the legal authority to disregard.

341. This type of language sent a chilling message throughout the agency that the process of applying for an accommodation – indeed, even an exemption – was predetermined and a sham at best, and that the Governor had full discretionary authority to even grant a religious exemption based on a sincerely held religious belief. This is not the law.

342. No matter the suggested accommodation, it was denied. Plaintiff Donna Tegnell requested the accommodation to go on leave of absence until the Novavax vaccine was available. Defendants rejected this request.

343. Plaintiff Chris Paneris went to the extreme and was still denied; he requested to purchase and use a helmet with a HEPA filter, which was considered an effective COVID-19 isolating barrier by CDC,[20] but he was denied. He also requested to purchase at his own cost and use a powered air-purifying respirator (PAPR) used in hospitals by physicians in high-risk procedures but was also denied.

---

[20] https://pubmed.ncbi.nlm.nih.gov/35947419/

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

344. Plaintiff Larry Frostad was told that despite working remotely for 18 months, his presence was required at the worksite because he supervised others. Yet, he managed to supervise others throughout the pandemic without any issues. *See* decisions of three WDFW Arbitrations, *infra,* where it was found that supervision could be done remotely, as it had been done throughout the pandemic.

345. A September 9, 2021, email from Emily Beck, Assistant Director, Human Resources, Office of Financial Management, to Defendant Pelton before any accommodation process had even started, asked him to share his template for "RA approvals," stating, *"[w]e are only doing temporary approvals* and want to compare language." Exhibit BM (emphasis added).

346. Defendant Pelton openly stated that "[w]ith respect to both [religious and medical exempt] groups, *only temporary accommodations would be approved for medical accommodations f*or reasons such as, (e.g., pregnancy, breastfeeding, cancer treatment, clinical trials, etc.)," Exhibit AW (emphasis added), an unconstitutional preference for accommodations for secular employees over employees with a sincerely held religious belief.

347. Defendant Pelton's language clearly eliminates any accommodation potential for those with a sincerely held religious exemption, regardless of what the Plaintiffs suggested.

348. The same document adds that "[t]elework is not an option as an accommodation given the Governor's proclamation stating that even teleworking employees are required to be vaccinated…" *Id.*

349. Defendants systematically eliminated every avenue and potential for accommodation.

350. This was encouraged by the Governor's Office.

351. Kathryn Leathers, Chief Legal Counsel for Governor Inslee, stated on August 3, 2021, "Exemptions: medical for sure; and religious (if we have to; if yes, as narrow as possible.)" Exhibit BN.

352. Plaintiffs received emails from nameless boxes instructing them on how to apply for an accommodation or reassignment, such as exemption@wsdot.wa.gov that was, based on information and belief, programmed to simply provide canned responses that did not specifically address the questions a Plaintiff submitted. Michelle Kiros-Sweet stated that "an email address has been assigned as an intake box for the forms and will be provided to staff," Exhibit AJ, but staff never responded specifically to questions but Plaintiffs instead were sent canned responses.

353. The canned responses provided great frustration to Plaintiffs, who simply wanted to engage in a dialogue to discuss accommodation options. Emails received from this nameless email box simply acknowledged that contact was made to the website and repeated general information, reiterated the deadlines for taking the vaccination to avoid termination and repeated the COVID narrative regarding death and vaccine efficacy.

354. Even Defendants gave canned responses to all emails. Plaintiff Gray emailed Mr. Vanderpool and asked questions regarding who, exactly, was authorized to review/approve/reject the exemption requests and authorize accommodations. Exhibit BO. He was given a typical canned response, "Thank you for your email. I am acknowledging that I received it and read it." But no answer was ever provided to his questions.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

**Reassignment:**

355.  Reassignment, as indicated by EEOC protocol, is a last resort and can only be considered *after* engaging in an interactive dialogue to identify a reasonable accommodation that does not create an undue burden.[21] Defendants skipped interactive dialogues to find an accommodation and jumped right to reassignment potential.  *See* discussion *supra.*

356.  Most Plaintiffs were not offered reassignment, but many have direct evidence of jobs that were available for which they were qualified but were not offered these positions.

357.  For example, Plaintiff Chris Paneris submitted a resume for reassignment and having performed various jobs with WSF, believed a position would be offered to him, but that did not happen.  A dispatcher position was available, made known to Mr. Paneris by his Union Representative Eric Winge, and Mr. Paneris had performed dispatch work previously.  Mr. Paneris was told by Mr. Winge that despite Mr. Winge's advocacy for Defendants to hire Mr. Paneris, Defendants gave Mr. Winge a solid no without reason.  Mr. Winge indicated he was confused by the response.

358.  Additionally, Mireya Mendoza, an Engine HR representative, also vacated her job, and Mr. Paneris has a B.A. degree with a concentration in Human Resources, but Defendants did not offer this job to Mr. Paneris, either.

359.  Plaintiffs who applied for a reassignment were universally either ignored, sent a form denial without consideration, or weren't even told about positions that were available.

**Undue harm not identified, all based on speculative or theoretical harm:**

---

[21]   https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#D

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

360. Defendants refused to accommodate Plaintiffs based on purely speculative harm regarding Plaintiffs' *potential* public interaction, regardless of whether there had been any such public interaction in the past, and regardless of whether any minimal *potential* exposure which might become necessary could be accommodated through the use of PPE.

361. Defendants were told directly by some Plaintiffs that numerous published studies concluded that the vaccines did not prevent infection, which Defendants chose to ignore.

362. There were many published studies, even by the CDC, documenting the catastrophic failure of the vaccine that were released prior to the October 18, 2021, termination date.

363. Defendants refused to answer Plaintiffs' inquiries regarding how Plaintiffs posed any greater "risk of harm" than the vaccinated, given the abject failure of the vaccines to prevent infection and transmission, and given these studies.

364. Plaintiffs worked successfully throughout the crisis utilizing PPE and other methods, *supra,* with no stated reason why continued use of PPE was not equivalent, if not better, protection against COVID-19 infection and transmission, especially in light of the failed vaccine.

365. Ironically, after terminating Plaintiffs, Defendants reinstituted a mask policy as a method of containing the spread of the virus but refused to recognize masks as an accommodation with religious objectors as a method containing the virus. Exhibit BP.

**WSDOT failed to consider the net burden to the agency in mass terminations:**

366. Defendants refused to balance the undue hardships to the citizens of Washington State and the mission of the agency in their refusal to consider accommodations for hundreds

COMPLAINT                                                      81

of state employees, *see Kenner v. Domtar Industries, Inc.,* 2006 WL 522468 at *4 (W.D. Ark. 2006), which has resulted in catastrophic disruption of services to the citizens of Washington and a degradation of the mission of the Agency.

367. OFM guidance to Defendants required Defendants to consider "causes a lack of staffing," as well as "[s]ize and operating costs of the business impact of the accommodation on the agency as a whole," Exhibit AM, which would likewise include operating costs that would result from a denial of accommodation, as well.

368. That guidance also required Defendants to consider "safety concerns and security consideration." *Id.*

369. Defendants forced 402 employees out of employment due to the vaccine mandate and Defendants' steadfast refusal to accommodate religious and medical objectors. Exhibit BQ.[22]

370. Defendant Pelton stated that the Agency received "over 200 request [sic] for exemption or accommodation without even distributing the forms from State HR. We expect around 1000 requests once forms are available for distribution." Exhibit AW.

371. A report released in March 2022 regarding position vacancies in the South Central Region alone indicated more than 150 unfilled positions, which equates to more than 30% vacancy rate in that one region. Exhibit BR.

372. This crisis in staffing resulted in reduced services across the state.

---

[22] Defendants pressured employees not to file exemptions, as there would be no accommodations. For example, Plaintiff Rodney Pelham was deterred from filing an exemption by both Jim Hart, Olympic Region Area 3 Supervisor, and Connie Rea, Olympic Region Superintendent, both telling him that exemptions would not be accommodated.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

373.   For example, ferry schedules were decimated because of the mass termination of ferry workers, including numerous Plaintiffs who worked as Oilers, Ferry Boat Captains, Chief Mates, and Chief Engineers, causing "severe" staffing shortages, with 106 job openings listed across all departments in May 2022.

374.   A March 8, 2022, report addressed the lack of reliability of ferry service and the staffing crisis, and admitted they were unable to predict when ferry service would return to "normal." Exhibit BS.

375.   The March 8, 2022, report stated that "WSF is facing severe staff shortages that are unprecedented in its 70-year history." *Id.* at 4.  The Report also acknowledged that WSF had been operating on an "Alternative Service Plan" with significant reduced service since October 2021, which coincided with the massive terminations of ferry workers, including many Plaintiffs. *Id.* at 7.

376.   Defendants' spokesman Ian Sterling stated, "It's not good, quite honestly.  We don't have enough people to sail the vessels right now.  We need to hire, train, and get people out on the water." [23]

377.   Based upon information and belief, Defendants have accelerated the training of new mate candidates through the Maritime Institute of Technology and Graduate Studies (MITAGS). Due to the lack of deck officers, WSF has created a program that is not based on quality or safety but on adding deck officers to the ranks, resulting in the promotion of Chief Mates to Captain without the necessary experience and education.

---

[23]    https://www.king5.com/article/news/local/seattle/washington-state-ferries-staffing-shortages/281-90b8acf7-e911-4cea-83a2-cf6692672810

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

378. This accelerated training schedule may have contributed to a July 28, 2022, ferry crash near the Fauntleroy Dock in West Seattle, in which the ferry Cathlamet "sustain[ed] heavy damage," crushed one side of the ferry, as well as a car that was pinned inside the ferry by bent metal.[24]  The report noted that "[f]erries occasionally hit and damage pilings at the terminals, but impacts that dent a boat are rare." *Id.* Engine failure was eliminated as a cause.

379. "Again the people of WA suffer the bad results of the current Governor's incompetence. When the current Gov fires experienced state workers for no good reason, he creates staff shortages. When he creates staff shortages, he causes overwork, fatigue and mistakes." Exhibit BT.

380. Hours-long ferry delays and long lines were widely reported.[25]

381. Cancelled ferry runs became common and were widely reported. Exhibit BU.

382. Most routes were reduced to one-boat service. Exhibit BU, at 7-8.

383. This caused incredible frustration among the citizens of the state, who became stranded when routes were cancelled without warning. Exhibit BV.

384. Washington Ferries continued to evidence problems due to staffing shortages caused by termination of Plaintiffs without accommodation. Exhibit BW.

385. Plaintiff Jeremy Greene was a relief Chief that worked two classes of vessels.  He worked alone in an office in the Engine Room, a secure facility where no public is permitted

---

[24]    https://www.seattletimes.com/seattle-news/ferry-crashes-into-fauntleroy-dock-sustaining-heavy-damage/

[25] "Crew shortages cancel more Washington State Ferries Trips," https://www.seattletimes.com/seattle-news/transportation/crew-shortages-cancel-more-washington-state-ferries-trips/.

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

entry.[26] After termination, Mr. Green was rehired in February 2022 at an entry level position as an Oiler, and then had the job offer rescinded by Defendant Kim Monroe, Human Resources Director, and Eben Phillips, Deputy Director of Vessel Maintenance, denying him an accommodation. Mr. Greene had received a "conditional offer of employment" pending only the granting of a religious accommodation.

386.  Mr. Greene sent numerous emails to Defendants throughout 2022 indicating he was available for employment and rehire but was ignored.

387.  Thereafter, Mr. Green again applied for a temporary Assistant Engineer position in November 2022 after the Governor released his emergency powers declaration, but was denied accommodation, despite many positions available.

388.  Thereafter, in December 2022, Mr. Greene again applied for an entry level position, as Defendants publicly stated that they were able to accommodate religious objectors. Mr. Green was denied a religious accommodation, even though Defendants had already accommodated newly hired Plaintiff Chris Paneris, who was rehired in January 2023 under a religious accommodation. Mr. Green has received, and continues to receive, records requested under the Public Records Act specifically stating that the State did not want to rehire Mr. Green, with indication that this is in retaliation for Mr. Greene challenging the rescission of the job offer in February 2022. Document discovery is ongoing.

---

[26] The Engine Room is described as "the single most isolated position on a ferry boat." M.E.B.A. BA Section 14(a).

COMPLAINT

85

389. Plaintiffs attempted to regain their lost employment as the staffing crisis continued to escalate but Defendants refused their reinstatement or the ability to reapply for employment.

390. For example, Plaintiff Rodney Pelham contacted his supervisor in February 2022 inquiring about returning and was told not without a vaccination. Mr. Pelham worked outdoors except for crew meetings, but crew meetings were held in a large garage that WSDOT had already set up personal spaces six feet apart. Mr. Pelham could have easily maintained his distance in meetings that were already organized for that purpose.

391. Plaintiff Jay Sarver, an Oiler with a 3rd Engineer license, contacted his supervisor Westley Sweet in December 2021 asking if he could return to his position, at which time he was told there was no talk of any returns without full vaccination.

392. Plaintiff Chris Paneris applied for an Oiler position and was rehired in December 2022, given an accommodation that requires no action on his part, including no requirement to wear PPE or social distance. Exhibit BX.

393. Defendants choose to accommodate some Plaintiffs but not others, even within the same job titles.  Plaintiff Jeremy Greene had applied for this same position several times and was denied.

394. More than 15 months after terminating Plaintiffs, Defendants rehired Plaintiff Chris Paneris, but at great economic devastation to Mr. Paneris, who lost all seniority; despite 14 years' experience, he is now junior, on-call Oiler placed on probation at a massive wage loss.

COMPLAINT

86

395. When terminated, Mr. Paneris was a Senior Oiler and permanent on the M/V Chimacum, with Seniority #27.  Upon rehire, he is now a new hire, on-call Oiler that bounces from boat to boat at different ports as needed, sometimes working with unwelcoming crews and dealing with discrimination from superiors, and on probation with no vacations despite his training and years of experience, with no set schedule, making childcare issues difficult.

396. He has also lost guaranteed holiday pay and he is not guaranteed four hours of overtime per week. His seniority went from #27 to #191.

397. Plaintiff Preziosi was encouraged to reapply for her job, as a new hire, as an on-call Oiler with zero seniority.

398. Plaintiffs are being economically devastated by Defendants' behavior of wrongfully terminating Plaintiffs and then allowing a select few to reapply as new hires as opposed to reinstatement with the same benefits and pay as when they were terminated. This is yet another step in the discriminatory and discretionary process that fully benefits Defendants economically but catastrophically destroys Plaintiffs.

399. The decision to allow some to reapply for jobs with a full religious accommodation furthers the arbitrary and capricious nature of Defendants' behavior.

400. Defendants' decision to allow some individuals to return with a religious accommodation, while denying others even in the same job that same ability is a political decision not grounded in science.

401. Washington State Ferries has been hardest hit by the wrongful policy of Defendants, as documents identifying vacant positions in "Engine Room Crew" show an alarming

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

vacancy rate on October 22, 2021, just after the mandate took effect, as compared to the same vacancy rate document among Engine Room Crew on October 12, 2021, before the mandate. Exhibit BY.

402.  Based on information and belief, religious accommodations were based on political beliefs and not on science or safety.

403.  The ability to provide accommodations to some employees and not others, especially in the same work environment, outlines the arbitrary and egregious nature of Defendants' actions.

**Defendants required a form to request a religious exemption that placed a chilling effect on religious objectors:**

404.  Defendants required Plaintiffs utilize the WSDOT prescribed form to request a religious exemption.

405.  The form that Defendants required Plaintiffs to utilize to request a religious exemption asked two "yes/no" questions, neither of which advanced the argument of whether the individual actually had a sincerely held religious belief. Exhibit A.

406.  The first question asked whether the individual has a sincerely held religious belief or conviction that prevents vaccination, while the second question asked the individual to "affirm/agree that you have never received a vaccine or medicine from a health care provider as an adult."

407.  It is unclear how anyone would meet this standard of never taking a medicine as an adult, which undoubtedly placed a chilling effect on an individual who had a sincerely held religious belief but believed they would not qualify given this random criteria. *Id*.

COMPLAINT                                88                **ARNOLD & JACOBOWITZ PLLC**

408.  It is unclear how many individuals other than Plaintiffs identified herein, who were discouraged from exercising their civil rights due to the language contained in the WSDOT exemption request form.

409.  This created a chilling effect on individuals who were seeking a religious exemption under the implied message that they would not qualify for a religious exemption if they had ever taken any "medicine" from a doctor in their adult life.

410.  Numerous Plaintiffs, identified *supra,* did not apply for any exemption because they believed they would not qualify based on the language Defendants used in its religious exemption form.

411.  The form also did not comply with statutory exemptions permitted for vaccinations under Wash. Rev. Code § 28A.210.090, which permits a "philosophical or personal objection" to immunization.

412.  The form did not comply with discrimination on the basis of Creed, as found in Wash. Rev. Code 49.60 and Title VII of the Civil Rights Act of 1964.

413.  Defendants have stated in EEOC Position Statements that they permitted other forms, but this is inaccurate.

414.  In fact, Mark Norman, Assistant Environmental Manager – Biology and Mitigation, and supervisor to Plaintiff Gray, brought the problem with the form to the attention of Defendant Jeff Pelton, who told Mr. Norman that employees had to fill out the form provided to be considered for a religious exemption. Exhibit BZ.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

415. Plaintiff Gray was provided the two-question form required by Defendants and immediately recognized the sham nature of the form. He brought this to the attention of Defendant Millar, as well. He received no reply.

416. Thereafter, Plaintiff Gray was forced to utilize the two-question form, but scratched out number 2 on the form, and wrote in "See Attachment 1." Exhibit CA. Mr. Gray provided additional substantiation for his sincerely held belief.

417. Plaintiff Gray's request was denied, with Defendants stating they needed additional information, but never providing any answers as to why his original request was inadequate.

418. Based on information and belief, many employees of WSDOT, including many Plaintiffs, did not apply for a religious exemption because they were forced to utilize the two-question form that did not further the determination of whether they had a sincerely held religious belief. The form inherently led Plaintiffs and others to believe that their religious exemption would not be approved because they had taken medicine from a doctor in their adult life.

419. Even after being forced to use the WSDOT prescribed form and answering the two yes/no questions, Plaintiffs were further interrogated by Defendants demanding additional information, as was done to Mr. Gray, creating a greater chilling effect on the employees' rights to file a religious exemption.

420. Employees were either dissuaded from filing a religious exemption based on the discriminatory language contained in the two-question religious exemption request form,

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

or they gave up after the Defendants' continued demand for more data to justify a religious exemption.

421. Plaintiff Gray was never given any legitimate reason why his initial submission on the two-question form was insufficient.  Nor was he ever given answers to his questions to Defendant Millar regarding the sham religious request form.

422. Plaintiff Gray submitted a second religious exemption form because he was forced to do so under threat of termination.

423. Plaintiff Jordan Longacre likewise was forced to use the two-question form, declined to answer the second question regarding the taking of any medicine, but instead provided an attachment with his personal statement and a letter from his pastor. Exhibit CB. Defendants then proceeded to interrogate Mr. Longacre further, requiring more in-depth and personal information, but never answering Mr. Longacre's questions about the inadequacy of his previous documents.

424. This process by Defendants was arbitrary and harassing, as some individuals who just answered the yes/no questions without any detail from their pastor or a personal statement, were granted a religious exemption, while those who declined to participate in the sham interrogation were punished with follow-on questioning.

425. Ultimately, Plaintiff Longacre's questions were never answered, and he was never even told whether his religious exemption was approved when he was then sent a letter of termination.

**Natural immunity:**

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

426.   As noted *supra*, many Plaintiffs presented a positive COVID-19 antibody test and/or a positive COVID-19 test, but Defendants refused to consider this evidence of natural immunity.

427.   A highly publicized Israeli study released in August 2021,[27] serves as a point in favor of accommodating exempt employees. These positive tests were historical and presented after full recovery.

428.   Dr. Anthony Fauci correctly stated in 2004 that "[t]he most potent vaccination is getting infected yourself."[28]

429.   Defendants provided no evidence of any COVID-19 transmissions traced to any Plaintiff.

430.   All Plaintiffs had successfully utilized PPE during the pandemic but were denied the continued use of PPE as an accommodation, without discussion.

431.   Many of the Plaintiffs requested *Loudermill* hearings but were denied and told that a *Loudermill* was only for disciplinary terminations.  Plaintiff Benjamin Wheeler asked for a *Loudermill* hearing on two separate occasions via emails to Joelle Davis and Cynthia Kent, but never received even an answer to those requests. Likewise, Plaintiffs Daniel Hjelmeseth, Bradley Sawaya and Kerry Strawn requested a *Loudermill*, as did others, but Defendants did not respond to their requests either. Mr. Sawaya also submitted an internal EEO complaint with WSF HR that went ignored and unanswered.

---

[27] https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1
[28]   https://www.onenewspage.com/video/20220401/14604225/Fauci-Flashback-quot-The-Most-Potent-Vaccination.htm

COMPLAINT                                          92               **ARNOLD & JACOBOWITZ PLLC**
                                                                    8201 164th Avenue NE, Suite 200
                                                                    Redmond, WA 98052
                                                                    (206) 799-4221

432.   *Loudermill* hearings were required as a due process protection afforded to employees to present "[their] side of the story," *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 534 (1985). They are not reserved exclusively for addressing wrongdoing allegations against employees, but also against the employer, a conclusion inherent in the purpose to allow employees to tell "[their] side of the story."

433.   "Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by suspending with pay." *Loudermill,* 470 U.S. at 532, 544-545.

**Four arbitration decisions analyzing the same accommodation process used by Defendants found the process constitutionally violative of employees' rights and ordered reinstatement of the terminated employee with backpay:**

434.   Four arbiters heard grievances filed on behalf of Washington Department of Fish and Wildlife (WDFW) and Department of Revenue (DOR) employees wrongfully terminated by agencies using the same procedures used by WSDOT in the instant case.

435.   In all three arbitrations by three different arbiters, it was found that WDFW failed to find a reasonable accommodation before asserting an undue hardship, had conclusions unsupported by evidence to establish an undue hardship and/or violated the Proclamation and Title VII.

436.   In the DOR arbitration, the arbiter found that DOR "did not establish that it paid serious attention to [employee's] reassignment of her site visit responsibilities, and because the record does not show that such reassignment [of allegedly essential job functions] would have presented an undue hardship," DOR violated the CBA and MOU.

COMPLAINT                                     93                    **ARNOLD & JACOBOWITZ PLLC**

437. In the Ruthanna Shirley Arbitrator's Decision and Award, PERC No. 134851-P-22, Exhibit CC, the Arbiter Michael Anthony Marr found that, "[t]here is nothing in the evidence to indicate that the Agency considered testing or any alternative accommodation to vaccination."

438. Arbiter Marr also found that the agency did not consider masks and social distancing as accommodations and that "[f]ailing **to consider** available accommodations is extremely concerning.  It is difficult for the Agency to establish good faith when EEOC and/or CDC guidance is ignored and not considered." Exhibit CC, at 36 (emphasis in original).

439. Furthermore, "[t]here is nothing in the evidence to indicate that the Agency considered testing or any alternative accommodation to vaccination." *Id.* at 37.

440. Additionally, the agency "did not take this opportunity to explain with specificity," why masks and social distancing were no longer a reasonable accommodation. *Id.* at 39. "The position taken by the Agency constituted a hypothetical hardship in violation of Title VII because it was conclusory and unsupported by data and other statistical evidence." *Id.* at p. 40.

441. In the John Hone Arbitration Decision and Award, PERC No. 134845-P-22, Exhibit CD, Arbiter Michael E. Cavanaugh specifically found that the Agency failed to follow the interactive process and that such failure could not be excused. *Id.* at 10.

442. Arbiter Cavanaugh also rejected the Agency's assertion that, "in effect, no inquiry into an individuals' work situation – beyond evaluating a job description – was necessary. *Id.* at 10-11.

94

443. "The Department failed to afford [Mr. Hone] the individualized consideration of his religious accommodation request that is required by law and by the parties' MOU. In addition, at least as applied to Mr. Hone, The Department's *per se* rule against masking and distancing as part of an appropriate religious accommodation violated the law and the MOU." *Id.* at 16.

444. In the Tyler Kave Arbitration Decision and Award, PERC No. 134848-P-22, Exhibit CE, Arbiter Barbara J. Diamond found that the Agency did not provide a legal accommodation process before terminating Mr. Kave. *Id.* at 25.

445. In an arbitration on behalf of LaRetta Martin, DOR, Case No. Arbiter's X59, a terminated employee suggested numerous accommodations to site visits, including allowing a co-worker to perform that part of her job, which DOR refused, claiming it was an essential function of her job. The arbiter found "that claim is problematic: (1) the Department apparently functioned well without [site visits] for an extended period of time; (2) the position description signed by [employee], her supervisor and her appointing authority…mentions such travel but does not show it as essential; and…site visits do not seem to satisfy any of OFM's trigger characteristics for essential job functions…or to meet the simple test that 'An essential function is a completed task, not how that task is completed.'" Exhibit CF, at 9 n. 3.

446. The DOR Arbiter also discounted the "'customer service' value of site visits," recognizing that "the customer was accomplished by phone and Zoom for some years during the acute COVID program and nothing in the record supports the suggestion that

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

those methods are no longer satisfactory just because in person contact is now possible." *Id.* at n. 4.

447.   "DOR seems to have given no serious consideration to that proposal [to allow a co-worker to perform site visits]." *Id.* at 9.

448.   Additionally, DOR apparently never considered whether that shifted burden could be alleviated by shifting some of that other employee's work to [the religious exempt employee] in return for the inspection work." *Id.* at 10 (citing Wash. Admin. Code § 162-22-065(2)), stating, "Possible examples of reasonable accommodation may include, but are not limited to: (a) Adjustments in job duties, . . . or scope of work. . ." *Id.* at 9 n.6.

449.   The arbiter stated: "But one of the common methods of accommodation is a change in rules, policy, or procedures and such an option seems to have at least deserved consideration in this case...DOR's offhand rejection of [employee's] suggestion to redistribute her site visits duties fell short of DOR's responsibility to accommodate her sincerely held religious belief....It was the Department's responsibility to seriously consider that proposal, and its immediate dismissal did not satisfy that responsibility. Moreover, on this record, more likely than not, if the Department had considered it, the workloads could be balanced, miss Martin's suggestion was in fact a reasonable accommodation." *Id.* at 11.

450.   The arbiter also addressed the fact that the employee did not violate any rule, yet was still terminated without just cause, but "[b]ecause the just cause issue is moot in the case at hand I decline to address such a fundamental issue on the basis of such a limited record." *Id.* at 12. "But in the case at hand, DOR does not allege that [the employee]

COMPLAINT                                      96                    **ARNOLD & JACOBOWITZ PLLC**
                                                                    8201 164th Avenue NE, Suite 200
                                                                    Redmond, WA 98052
                                                                    (206) 799-4221

violated any rule or fell short of any policy. This case springs from the Governor's vaccination mandate; and that mandate does not say, 'Be vaccinated or we will let you go.' What it says is 'Be vaccinated unless you fall under a medical or religious exemption, or we will let you go.' There is no dispute that [the employee] did not violate that rule."

451. Defendants followed the same procedures and methodology used by WDFW and DOR, which was found constitutionally violative of employee's rights in four separate arbitrations.

**Defendant Kim Monroe Flaig:**

452. Defendant Flaig used her social media account to openly chastise, demean, and dismiss those who declined the vaccine.

453. Defendant Flaig was a key player in the denial of accommodations to Plaintiffs.

454. In a social media post regarding an individual's outrage that some individuals were offered money to take the shot while other "brave souls….stepped up in the very beginning," Defendant Flaig agreed. Defendant Flaig then stated that she will get her booster as soon as it is available.

455. Defendant Flaig states, "Just because one can lick a spoon and make it stick to their nose does not mean the vax makes then [sic] magnetic.  If one chooses not to do this after reviewing the science, their decision but there is accountability to public health that affects others. But don't refuse on fake news -or stand in line just because someone flips cash your way.  That's stupidity." Exhibit CG.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

456. In a direct mocking of those who refused the vaccine and would soon be terminated, Defendant Flaig stated, "Me too. AND I plan on keeping my job! Those who choose not to vax in the name of stupidity can stand in line to get paid for their shot after they no longer have a paycheck to cash." Exhibit CH.

## CAUSES OF ACTION AGAINST THE DEFENDANTS

### FIRST CAUSE OF ACTION
### (Violation of Washington Law Against Discrimination Perceived Physical Disability)

457. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

458. The Washington Law Against Discrimination (WLAD) prohibits discrimination in the workplace for actual or perceived disability. Wash. Rev. Code § 49.60.180. *Taylor v. Burlington Northern Railroad Holdings,* 193 Wash.2d 611 (2019) (en banc*).* WLAD's definition of disability is broader than the definition in the ADA. *Pulcino v. Fed. Express Corp.,* 141 Wash.2d 629, 641 n.3 (2000).

459. A disability is defined as "a sensory, mental, or physical impairment that …(i) [i]s medically cognizable or diagnosable; or (ii) [e]xists as a record or history; or (iii) [i]s *perceived* to exist whether or not it exists in fact." Wash. Rev. Code § 49.60.040(7). Disability is also an impairment that "affects one or more of the . . . body systems." Wash. Rev. Code § 49.60.040(7)(c)(i).

460. The legislature intended to adopt a broad and expansive definition of "disability" to protect against discrimination. *Taylor,* 193 Wash.2d at 618.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

461. The EEOC has interpreted these rules to include protection for an actual or perceived immunological condition.

462. WLAD's definition of disability is broader than the definition in the ADA. *Pulcino v. Fed. Express Corp.,* 141 Wash.2d 629, 641 n.3 (2000).

463. Defendants perceived Plaintiffs as having an impairment and/or disability that identified them as presenting a "significant risk of harm."

464. Defendants acted believing Plaintiffs have a perceived physical disability of not having the best protection against COVID-19 in their bodies that conflicted with a stated job requirement defined by Defendants' vaccine mandate.

465. Defendants were aware of this conflict but did not explore any available reasonable alternatives for accommodating Plaintiffs to resolve the conflict. *Suarez v. State,* 2022 WL 4351109 (September 20, 2022).

466. Defendants refused to consider or explore accommodations and refused to balance the undue hardships to the citizens of Washington State, the environment, and the mission of the agency.

467. Defendants terminated Plaintiffs due to their perceived physical disability.

468. Defendants' actions caused Plaintiffs to suffer damages to be proven at trial, such actions being the actual and proximate cause of those damages.

**SECOND CAUSE OF ACTION**
**(Deprivation of Privacy, Wash. Const. art. I, Sec. 7)**

469. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

470. No person shall be disturbed in his private affairs, or his home invaded, without authority of law. Wash. Const. art. I, § 7.

471. This constitutional right to privacy includes the right to autonomous decision-making and autonomy over one's medical care and includes the right to refuse treatment. *See, e.g., In re Welfare of Colyer,* 99 Wash.2d 114, 119-22, 660 P.2d 738 (1983); *see also* Wash. Rev. Code § 7.70.050.

472. Bodily autonomy is a critical component of the constitutional right of privacy.

473. The decision to suffer the battery of a vaccination is also a private affair which further impacts a citizen's bodily integrity.

474. The Washington State privacy protections under art. I, § 7, are broader than the privacy rights under the U.S. Constitution's Fourth Amendment, as Section 7 guarantees, "an individual's right to privacy *with no express limitations." Robinson v. City of Seattle,* 102 Wash. App. 795 (2000) (emphasis added).

475. Plaintiffs have the right to make the decision whether to receive a COVID-19 vaccine and have the right to decide not to disclose their personal medical history – including whether they have been "fully vaccinated" for COVID-19.

476. Despite these rights, Defendants will continue to violate the privacy rights of every individual seeking employment with WSDOT.

477. Despite these rights, Defendants will continue to refuse reemployment to Plaintiffs.

478. Plaintiffs have been deprived of their rights to privacy by the actions of Defendants in forcing Plaintiffs to violate their religious and/or medical freedoms or suffer loss of employment and loss of pension.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

479. The right to privacy is protected under Wash. Const. art. I, § 7, as a fundamental right which can only be infringed upon by a law which satisfies a strict scrutiny analysis, that is, which furthers a compelling state interest and is narrowly tailored thereto, using the least restrictive means.

480. Defendants demanded termination of religious and medical objectors who did not vaccinate, alleged in the interest of stopping the spread of COVID-19.

481. However, the vaccines did not stop infection or transmission, and both the vaccinated and unvaccinated spread COVID-19.

482. The termination of religious and/or medical objectors did not further the alleged state interest because the efficacy of the vaccines failed. Defendants knew in advance of the termination that the vaccine was ineffective, but Defendants purposefully chose to continue with the wrongful termination of religious and medical objectors.

483. Even if the vaccines had worked as promoted, the Defendants failed to utilize a narrowly tailored method to control the spread of virus, leaping directly to termination without considering lesser available means of achieving the alleged objective.

484. Defendants failed to utilize PPE, testing, telework, or natural immunity in stopping the spread of COVID-19, and the method they relied upon – vaccination only – did nothing to stop the spread of the virus, as evidenced by a "cleansed" workforce with high breakthrough numbers of fully vaccinated contracting the virus.

485. Defendants' actions fail strict scrutiny.

486. Defendants' actions would fail even rational-basis review.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

487. Additionally, Plaintiffs have been deprived of their right to privacy through the invasive nature of the religious exemption questionnaire which Defendants required them to answer.

488. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

### THIRD CAUSE OF ACTION
### (Deprivation of Life, Liberty, or Property, U.S. Const. am. V., am. XIV, Wash. Const. art. I, Sec. 3)

489. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

490. No person shall be deprived of life, liberty, or property, without due process of law. U.S. Const. ams. V, XIV; Wash. Const., art. I, § 3.

491. Plaintiffs suffered loss of pension rights and benefits as a direct result of the actions of Defendants.

492. Plaintiffs lost title to their real property due to Defendants' actions, had to relocate at considerable loss in the sale of that property, which are losses which they cannot recover.

493. Public employees have a property interest in their pensions, which cannot be unilaterally altered to the material disadvantage of the employee. *Eagan v. Spellman,* 90 Wash.2d 248 (1978).

494. Public employees have a property interest in their employment, cannot be terminated without "just cause," and cannot be terminated without due process, which includes a fair hearing. *Board of Regents v. Roth*, 408 U.S. at 564 (1972); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 105 (1985).

COMPLAINT                                      102                    **ARNOLD & JACOBOWITZ PLLC**

495. Plaintiffs were terminated from public employment without a hearing or other due process.

496. The law regarding due process in employment is well established.

497. Defendants knew the Fourteenth Amendment prohibits government from denying an employee due process.

498. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of the Equal Protection Clause of the Wash. Const. art. I, Sec. 3)**

499. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

500. Wash. Const. art. I, § 3, states that "[n]o person shall be deprived of life, liberty, or property, without due process of law."

501. If a law neither burdens a fundamental right nor targets a suspect class, it will be upheld so long as it bears a rational relation to some legitimate end. *Romer v. Evans,* 517 U.S. 620, 631 (1996).

502. There was no rational relation to some legitimate government end because the action taken – termination of the unvaccinated – did not further the interest of reducing the spread of COVID-19 given that the vaccinated and the unvaccinated both contract and transmit COVID-19.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

503. In fact, people who are vaccinated for COVID-19 are more likely to become infected with and spread COVID-19 than are people who have recovered from COVID-19 and have natural immunity.

504. Defendants have treated different classes of people unequally, with religious objectors suffering a greater adverse impact by the actions of Defendants.

505. The actions of Defendants, on its face and as applied, was not rationally related to a legitimate end.

506. The actions of Defendant have caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs.

507. Defendants' actions caused Plaintiffs to suffer damages to be proven at trial, such actions being the actual and proximate cause of those damages.

**FIFTH CAUSE OF ACTION**
**(Deprivation of Religious Freedom, Wash. Const. art. I, Sec. 11.)**

508. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

509. Defendants' vaccination mandate and religious exemption questionnaire are contrary to and transgress Wash. Const. art I, § 11, which states, "Absolute freedom of conscience in all matters of religious sentiment, belief and worship, shall be guaranteed to every individual, and no one shall be molested or disturbed in person or property on account of religion. . . No religious qualification shall be required for any public office or employment."

510. Plaintiffs' absolute right to religious freedom has been infringed.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

511. Defendants, by their conduct and words, discriminated against the Plaintiffs for acting according to their conscience, guided by their religious faith, in refusing to be vaccinated.

512. Defendants' vaccination mandate, in conjunction with their religious exemption questionnaire, by design and intent, impose a religious qualification for public employment, and deny Plaintiffs' absolute freedom of conscience in all matters of religious sentiment, belief and worship, and result in an unauthorized molestation or disturbance of the Plaintiffs' persons and property rights on account of religion.

513. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

### SIXTH CAUSE OF ACTION
### (Wage Theft)

514. Plaintiffs here reallege the allegations set forth above in this Complaint.

515. Defendants have, willfully and with the intent to deprive, failed to pay wages to the Plaintiffs since the date of their respective terminations.

516. Defendants had a pre-existing duty under contract to pay Plaintiffs the specific compensation as set forth in their employment contracts.

517. Defendants were aware at the time of termination that Plaintiffs were being treated differently than secular vaccinated employees by requiring religious and medical objectors to receive a vaccine to prevent infection, knowing that both the vaccinated and the unvaccinated both contracted and spread the COVID-19 virus, and affirmatively elected to ignore the established science.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

518. Defendants have authority and control over the employment status and payment of wages to Plaintiffs.

519. Plaintiffs did not knowingly submit to the deprivation of wages.

520. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial, including at least lost wages and lost benefits, including pensions.

521. Defendants' actions are the actual and proximate cause of Plaintiffs' damages.

522. Plaintiffs not yet reinstated are entitled to back wages, and for all Plaintiffs to double damages, costs of suit and reasonable attorney's fees. Wash. Rev. Code § 49.52.070.

**SEVENTH CAUSE OF ACTION**
**(Breach of Contract; U.S. Const. art I, § 10, cl. 1; Wash. Const. art. I, § 23)**

523. Plaintiffs here reallege the allegations set forth above in this Complaint.

524. There existed a binding contract between each Plaintiff and the Department that permitted termination only for "just cause."

525. Each Plaintiff substantially performed their obligations under this contract.

526. The Department breached its contracts with Plaintiffs by terminating them without just cause.

527. Defendants' wrongful termination of Plaintiffs was based on a new condition of employment that was not part of Plaintiffs' contract when hired.

528. A vaccine mandate is a "private, irreversible medical decision made in consultation with private medical professionals outside the federal workplace," and is not a "working condition" of employment. *Feds for Medical Freedom et al. v. Joseph Biden et al.,* No. 22-40043 (5th Cir. March 23, 2023) at 14, 28, 30.

COMPLAINT                                             106                    **ARNOLD & JACOBOWITZ PLLC**

529. Defendants' actions violated Plaintiffs' right to continued employment by terminating them without "just cause" and by mandating a private medical decision made outside the workplace and wrongly characterizing that private decision as a new condition of employment without consideration.

530. Defendants' action also violated Plaintiffs' pension rights, likewise established by contract.

531. Defendants' actions caused a substantial change to the pension rights of Plaintiffs established by Wash. Rev. Code Title 41 *et. seq.*

532. Plaintiffs have suffered extraordinary financial loss because of the substantial change in their pension rights without cause.

533. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial, including at least lost wages and lost pensions.

**EIGHTH CAUSE OF ACTION**
**(Violation of the Washington Law Against Discrimination; Failure to Accommodate)**

534. Plaintiffs here reallege the allegations set forth above in this Complaint.

535. Each Plaintiff was found by the Department to have a sincerely held religious belief preventing vaccination and was granted an exemption, and/or was granted a medical exemption preventing vaccination due to a medical condition.

536. Defendants were aware of these exemptions.

537. Plaintiffs made repeated requests for accommodations but were shut down without discussion.

538. Defendants failed to consider any of the accommodations proposed by Plaintiffs.

107                    **ARNOLD & JACOBOWITZ PLLC**
                                                                                8201 164th Avenue NE, Suite 200
                                                                                Redmond, WA 98052
                                                                                (206) 799-4221

539. Reassignment, as indicated by EEOC protocol, is a last resort and can only be considered *after* engaging in an interactive dialogue to identify a reasonable accommodation that does not create an undue burden. Defendants skipped this step and jumped right to reassignment.

540. Defendants stated that reassignment was the only possible accommodation, but then almost universally denied reassignment to terminated employees regardless.[29]

541. Plaintiffs were forced to either be terminated or take a vaccine in direct violation of their sincerely held religious beliefs in order to feed their families.

542. Strict scrutiny applies where fundamental rights are concerned.

543. "The risk posed by an unvaccinated, exempt employee is the same regardless of the reason that the employee obtained the exemption.  In other words, an employee exempt from the Mandate for medical reasons presents the same risk of COVID-19 transmission in a high-risk role as does an employee exemption from the Mandate for religious reasons…. Accordingly, giving priority consideration to employees in high-risk roles for secular exemptions over those with religious exemptions is likely to fail strict scrutiny." *UnivySCC v. Cody,* 2022 WL 2357068 (N.D. Cal. Jun. 30, 2022).

544. Whereas the mandated vaccine does not prevent infection or transmission, Defendants' actions, *and the continuance thereof,* are arbitrary and capricious and fail even a rational basis review.

---

[29] OFM Policy is that "[e]mployees being reassigned to a position that has a lower salary range are not considered 'reassignments' they are voluntary demotions…." Exhibit AC. A voluntary demotion as threat to termination is not a valid accommodation to a religious or medical objector.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

545. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

## NINTH CAUSE OF ACTION
### (Violation of the Washington Law Against Discrimination; Disparate Impact)

546. Plaintiffs here reallege the allegations set forth above in this Complaint.

547. To the extent that Defendants' policy is facially neutral, it falls more harshly upon those within a protected class.

548. The Plaintiffs have been damaged by the disparate impact of the Defendants' policy.

549. Defendants' actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

## TENTH CAUSE OF ACTION
### (42 U.S.C. § 1983 – Violation of the First Amendment of the United States Constitution; Free Exercise)

550. Plaintiffs here reallege the allegations set forth above in this Complaint.

551. The First Amendment of the U.S. Constitution provides that: "Congress shall make no law respecting an establishment of religion or prohibiting the free exercise thereof." This clause has been incorporated against the states. *Cantwell v. Connecticut,* 310 U.S. 296 (1940).

552. Courts should not inquire into the validity or plausibility of a person's beliefs; instead the task is to determine whether "the beliefs professed []are sincerely held and whether they are, in [a believer's] own scheme of things, religious." *United States v. Seeger,* 380 U.S. 163, 185 (1965).

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

553. Plaintiffs' sincerely held religious beliefs that prohibit them from taking the COVID-19 vaccinations have been unconstitutionally burdened by Defendants. Plaintiffs' accommodations were universally denied.

554. Defendants have pitted Plaintiffs' consciences against their ability to work. The Free Exercise Clause of the First Amendment protects against "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions." *Carson v. Makin,* 142 S. Ct. 1987 (2022) (quoting *Lyng v. Northwest Indian Cemetery Protective Assn.,* 485 U.S. 439, 450 (1988). "In particular, we have repeatedly held that a State violates the Free Exercise Clause when it excludes religious observers from otherwise available public benefits." *Id.*

555. Defendants openly stated that religious accommodations would be denied, but secular (i.e., medical) accommodations were allowed. Here, with regard to regulating the conduct of its secular and religious citizens, the government holds the same interest in preventing disease. Further, the secular and religious activities at issue are not only comparable, but they are also exactly the same, seeking exemption from compulsory vaccination.

556. A law "lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way. *Fulton v. City of Philadelphia, Pa.*, 141 S. Ct. 1868, 1877 (2021). While defendants may have a general healthcare interest in preventing the spread of disease, its interest is not so extraordinary as to prohibit an accommodation for religious reasons, which poses a similar contagion hazard as a hypothetical medical accommodation.

COMPLAINT                                                  110

557. Government regulations "are not neutral and generally applicable, and therefore trigger strict scrutiny under the free exercise clause of the First Amendment, whenever they treat any comparable secular activity more favorably than religious exercise." *Tandon v. Newsome,* 141 S. Ct. 1294, 1296 (2021).

558. Defendants have instituted a system that includes 2 levels of personalized discretionary review. The Defendants have delegated private healthcare providers discretion to determine what broad variety of circumstances are eligible for a medical exemption, and which are not. Acting on behalf of the state, these physicians conduct an individualized assessment of each potential medical exemption. If and when the medical exemption form is signed by a physician, it is then submitted to Defendants to enter yet another discretionary process of affording an accommodation.

559. Defendants' vaccination policy thus fails the general applicability test on additional, alternative grounds because the medical exemption system provides for individualized discretionary review. "The creation of a formal mechanism for granting exceptions renders a policy not generally applicable...." *Fulton,* at 1879.

560. All the acts of Defendants were conducted by them under color and pretense of the statutes, regulations, customs, policies, and/or usages of the State of Washington and the Washington Department of Transportation.

561. Defendants knew that the First Amendment prohibits governmental officials from demonstrating hostility to religion or prohibiting the free exercise thereof.

COMPLAINT                                   111                  **ARNOLD & JACOBOWITZ PLLC**
                                                                 8201 164th Avenue NE, Suite 200
                                                                 Redmond, WA 98052
                                                                 (206) 799-4221

562.   Defendants acted with willful malice, and/or intentionally and in gross disregard of Plaintiffs' constitutional rights, and/or in reckless disregard of Plaintiffs' constitutional rights.

563.   As a direct and proximate result of Defendants' actions, Plaintiffs have been deprived of their constitutional rights to the free exercise of religion and to be free from governmental hostility directed at their religion and have been denied their rights to due process and equal protection under the law.

564.   Defendant's actions proximately caused Plaintiffs to suffer damages in amounts to be proven at trial.

## ELEVENTH CAUSE OF ACTION
### (Violation of Right to be Free from Arbitrary and Capricious Action)

565.   The Plaintiffs here reallege the allegations set forth above in this Complaint.

566.   The Plaintiffs have a "fundamental right" "to be free from arbitrary and capricious government action. *Pierce Cnty. Sheriff v. Civ. Serv. Comm'n of Pierce Cnty.*, 98 Wash.2d 690, 693–94 (1983).

567.   In light of the CDC's latest guidance, and the City of Seattle's similarly revised guidance, and/or with the current knowledge that the vaccines do not prevent transmission, the "vaccinate or terminate" policy at issue in this case is arbitrary and capricious.

568.   The Plaintiffs have each been adversely impacted by the Defendants' arbitrary and capricious conduct.

569.   The Plaintiffs have been damaged in an amount to be proved at trial.

## TWELVTH CAUSE OF ACTION
### (Public Policy Tort Claim Against Religious Discrimination)

COMPLAINT                                    112

570. The Plaintiffs here reallege the allegations set forth above in this Complaint.

571. The Plaintiffs hold sincere religious beliefs.

572. Defendants acknowledged and accepted the sincerity of the religious beliefs of each Plaintiff.

573. Plaintiffs were each terminated for practicing their religion, which is a legal right of each Plaintiff.

574. Plaintiffs were terminated in retaliation for exercising their religious beliefs.

575. Plaintiffs each had employment agreements that they could only be terminated for just cause.

576. Plaintiffs' terminations violate a precept of public policy that prohibits employment discrimination without just cause.

577. Plaintiffs each had employment agreements containing express or implied provisions that they would be employed so long as they satisfactorily performed the services expected of them, protecting them from discharge for reasons other than good faith dissatisfaction by the employer.

578. Each of the Plaintiffs have a tort action for damages to redress injuries and damages caused by their termination and are entitled to judgment therefor.

## THIRTEENTH CAUSE OF ACTION
### (Violation of the "Takings Clause"; U.S. Constitution Amendment V; Washington Constitution Art. I, § 16)

579. The Plaintiffs here reallege the allegations set forth above in this Complaint.

580. Both the United States and the Washington Constitutions prohibit the taking of private property for public use without just compensation. U.S. Const. amend. V; Wash. Const.

COMPLAINT

113

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

art. I, § 16; *see Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 536-37 (2005) (characterizing the takings clause as placing a *condition* on the exercise of the power to take private property).

581. Plaintiffs each were deprived of wages, pension rights, and other contractual benefits of employment by the wrongful actions of Defendants.

582. "A regulation that is otherwise a valid exercise of police power may go 'too far' in its impact on a property owner as to constitute a taking, requiring compensation." *Instacart v. City of Seattle,* No. 99771-3 at 27-28 (quoting *Chong Yim v. City of Seattle,* 194 Wn.2d 651, 658-59 (2019) (quoting *Pa. Coal Co. v. Mahon,* 260 U.S. 393, 415 (1922), *Chevron,* 544 U.S. at 543 (holding that an inquiry into a regulation's validity is "logically prior to and distinct from the question whether a regulation effects a taking, for the Takings Clause presupposes that the government has acted in pursuit of a valid public purpose."))).

583. Intangible property rights, including valid contracts, are protected by the takings clause. *Id.*

584. Plaintiffs each had an employment contract with the Defendants that constitutes property for the purposes of the takings clause.

585. Each of the Plaintiffs have a claim for damages to redress injuries and damages caused by their termination the taking of their property and are entitled to judgment therefor.

## FOURTEENTH CAUSE OF ACTION

### (Violation of the Equal Protection Clause of the Fourteenth Amendment to the U.S. Constitution)

COMPLAINT                                            114

586. Plaintiffs here reallege the allegations set forth above in this Complaint as if fully set forth herein.

587. The Fourteenth Amendment to the U.S. Constitution states that "[n]o State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

588. All of the acts of Defendants, their officers, agents, servants, and employees, as alleged herein, were conducted by the Defendants under color and pretense of the statutes, regulations, customs, policies and/or usages of the State of Washington and the Washington State Department of Transportation.

589. Defendants' policies, as administratively construed and applied against Plaintiffs granted Defendants unfettered discretion to disregard the process they created for determining whether a religious accommodation would be granted and, therefore, abridged Plaintiffs' rights to due process as guaranteed by the Fourteenth Amendment to the United States Constitution.

590. The actions of Defendant have caused, are causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs.

591. Defendants' actions caused Plaintiffs to suffer damages to be proven at trial, such actions being the actual and proximate cause of those damages.

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221

## V.   **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, and each of them, pray for the following relief against the Defendants:

1. Judgment against all Defendants on all claims.

2. Money judgment for back pay and front pay, loss of benefits, and loss of pension rights, for those Plaintiffs who were terminated or forced to quit.

3. Money judgment for back pay, loss of benefits, and loss of pension rights, for those two reinstated Plaintiffs, to the extent they are reinstated.

4. Double damages for lost wages pursuant to Wash. Rev. Code § 49.52.070.

5. Money judgment for all Plaintiffs pursuant to the infringement upon their constitutional and statutory rights.

6. Attorney fees as authorized by State and Federal statutes.

7. Such other and further relief that is just and equitable.

DATED this 9th day of May 2023.

**ARNOLD & JACOBOWITZ PLLC**

*s/ Nathan J. Arnold*
Nathan J. Arnold, WSBA #45356
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221
Nathan@CAJLawyers.com
*Counsel for Plaintiffs*

COMPLAINT

116

ARNOLD & JACOBOWITZ PLLC
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221