HONORABLE DAVID G. ESTUDILLO

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| GEOFFREY GRAY, et al.,<br><br>                            Plaintiffs,<br><br>    v.<br><br>WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, ROGER MILLAR, JEFF PELTON, MARK NITCHMAN, and KIMBERLY MONROE FLAIG,<br><br>                          Defendants. | No. 3:23-cv-05418-DGE<br><br>DEFENDANTS' MOTION TO DISMISS<br><br>NOTE ON MOTION CALENDAR: July 28, 2023<br><br>ORAL ARGUMENT REQUESTED |

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF CONTENTS

I.    INTRODUCTION ...................................................................................................1

II.   FACTS ...................................................................................................................3

   A.   The COVID-19 Pandemic and Washington's Emergency Response ......................3

   B.   The Delta Surge and Proclamation 21-14...........................................................4

   C.   Unsuccessful Legal Challenges to the Proclamation ...........................................5

   D.   Plaintiffs Failed to Comply with the Proclamation..............................................6

   E.   Plaintiffs' Lawsuit.............................................................................................8

III.  ARGUMENT ..........................................................................................................8

   A.   Legal Standard .................................................................................................8

   B.   The Federal Constitutional Claims Should Be Dismissed (Claims 3, 7, 10, 13–14).9

      1.   WSDOT is not a person under § 1983 so the claims against it must be dismissed ...........................................................................................9

      2.   The free exercise claim should be dismissed (Claim 10) ................................10

      3.   The due process claim should be dismissed (Claim 3)....................................16

      4.   The equal protection claim should be dismissed (Claim 14) ...........................17

      5.   The Contracts Clause claim should be dismissed (Claim 7) ............................19

      6.   The takings claim should be dismissed (Claim 13)..........................................20

   C.   Plaintiffs' Employment Discrimination Claims Fail ...................................22

      1.   The WLAD "perceived disability" claim fails as a matter of law (Claim 1) ....22

      2.   The WLAD failure-to-accommodate claims fail as a matter of law (Claim 8).24

      3.   The WLAD disparate impact claim fails as a matter of law (Claim 9).............26

      4.   The public policy tort claim fails as a matter of law (Claim 12)......................27

   D.   Plaintiffs' State Constitutional Claims Should Be Dismissed (Claims 2–5, 7).........28

DEFENDANTS' MOTION TO DISMISS - i
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1.   The due process, equal protection, and contracts clause claims fail as a matter of law because they are coextensive with their federal counterparts (Claims 3, 4, 7) ................................................................................29

2.   The Proclamation does not violate Plaintiffs' right to privacy (Claim 2) .........29

3.   The religious freedom claim fails as a matter of law (Claim 5) ........................29

E.   Plaintiffs' Other State Law Claims Should Be Dismissed.........................................30

1.   The wage theft claim fails as a matter of law (Claim 6) ...................................30

2.   The "arbitrary and capricious" claim fails as a matter of law (Claim 11).........31

IV.   CONCLUSION.....................................................................................................32

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

# TABLE OF AUTHORITIES

## Federal Cases

*Akiyama v. U.S. Judo Inc.*,
    181 F. Supp. 2d 1179 (W.D. Wash. 2002)................................................................ 26

*Apt. Ass'n of L.A. Cnty., Inc. v. City of L.A.*,
    10 F.4th 905, 913 (9th Cir. 2021) ......................................................................... 19

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009).........................................................................8, 9, 14, 27

*Bacon v. Woodward*,
    No. 2:21-CV-0296-TOR, 2022 WL 2381021 (E.D. Wash. June 30, 2022) ........................ 6, 18

*Bank of Lake Tahoe v. Bank of Am.*,
    318 F.3d 914 (9th Cir. 2003) ................................................................................ 10

*Bd. of Regents of State Colls. v. Roth*,
    408 U.S. 564 (1972)............................................................................................ 21

*Becker v. Cashman*,
    114 P.3d 1210 (Wash. Ct. App. 2005) ...................................................................... 25

*Becker v. Cmty. Health Sys., Inc.*,
    359 P.3d 746 (Wash. 2015) .................................................................................. 27

*Bell v. Boeing Co.*,
    599 F. Supp. 3d 1052 (W.D. Wash. 2022)............................................................ 27, 28

*Black v. Grant Cnty. Pub. Util. Dist.*,
    No. 2:17-CV-365-RMP, 2019 WL 2617236 (E.D. Wash. June 26, 2019).............................. 24

*Blackwell v. Lehigh Valley Health Network*,
    No. 5:22-CV-03360-JMG, 2023 WL 362392 (E.D. Pa. Jan. 23, 2023) ................................ 25

*Bridge Aina Le'a, LLC v. State of Haw.*,
    125 F. Supp. 3d 1051 (D. Haw. 2015) ................................................................ 20, 21

*Brown v. Morgan*,
    No. C16-5975 RBL-TLF, 2017 WL 3454572 (W.D. Wash. Aug. 11, 2017).................... 12, 13

*Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*,
    508 U.S. 520 (1993).......................................................................................... 14

*Church v. Biden*,
    No. CV 21-2815 (CKK), 2022 WL 1491100 (D.D.C. May 11, 2022) ...................................... 4

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*City of Everett v. Pub. Emp. Rels. Comm'n,*
    451 P.3d 347 (Wash. Ct. App. 2019) (cleaned up) .................................................................. 31

*Cleveland Board of Education v. Loudermill,*
    470 U.S. 532 (1985) .................................................................. 16

*Conservation Force v. Salazar,*
    646 F.3d 1240 (9th Cir. 2011) .................................................................. 9

*Cousins v. Lockyer,*
    568 F.3d 1063 (9th Cir. 2009) .................................................................. 16

*Cox v. Glebe,*
    No. C13-5073 RBL-JRC, 2013 WL 1944524 (W.D. Wash. Mar. 29, 2013) .......................... 30

*Crawford–El v. Britton,*
    523 U.S. 574 (1998) .................................................................. 14

*Daniels v. Williams,*
    474 U.S. 327 (1986) .................................................................. 12

*Davis v. Scherer,*
    468 U.S. 183 (1984) .................................................................. 17

*Doe v. San Diego Unified Sch. Dist.,*
    19 F.4th 1173 (9th Cir. 2021) .................................................................. 15

*Does 1-6 v. Mills,*
    16 F.4th 20 (1st Cir. 2021) .................................................................. 4, 15

*Dr. A. v. Hochul,*
    142 S. Ct. 2569 (2022) .................................................................. 15

*Dunbar v. Walt Disney Co.,*
    CV 22-1075-DMG (JCX), 2022 WL 18357775 (C.D. Cal. July 25, 2022) .......................... 26

*Florida v. Dep't of Health & Hum. Servs.,*
    19 F.4th 1271 (11th Cir. 2021) .................................................................. 3

*Fulton v. City of Philadelphia,*
    141 S. Ct. 1868 (2021) .................................................................. 11

*Gallo v. Washington Nationals Baseball Club, LLC,*
    No. 22-CV-01092 (APM), 2023 WL 2455678 (D.D.C. Mar. 10, 2023) .......................... 23

*Gamble v. Pac. NW Reg'l Council of Carpenters,*
    No. 2:14-cv-455RSM, 2015 WL 402782 (W.D. Wash. Jan. 29, 2015) .......................... 9

DEFENDANTS' MOTION TO DISMISS - iv
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*,
　No. 22-CV-0424-BAS-DDL, 2022 WL 17330467 (S.D. Cal. Nov. 29, 2022) ......................... 2

*Griner v. Biden*,
　No. 2:22CV149 DAK-DBP, 2022 WL 7501065 (D. Utah Oct. 13, 2022)............................. 29

*Grove v. Mead Sch. Dist. No. 354*,
　753 F.2d 1528 (9th Cir. 1985) ................................................................................ 15

*Gunsul v. Boeing Co.*,
　No. C15-95RAJ, 2015 WL 11254742 (W.D. Wash. June 24, 2015) ..................................... 31

*Harlow v. Fitzgerald*,
　457 U.S. 800 (1982)............................................................................................ 13

*Hinkle Family Fun Ctr. v. Grisham*,
　No. 22-1062, 2023 WL 3937631 (U.S. June 12, 2023).............................................. 20

*Hinkle Family Fun Ctr., LLC v. Grisham*,
　No. 22-2028, 2022 WL 17972138 (10th Cir. Dec. 28, 2022)...................................... 20

*Hodel v. Va. Surface Mining & Reclamation Ass'n*,
　452 U.S. 264 (1981)............................................................................................ 21

*Holt v. McDonnell*,
　No. CV 15-9632 R(JC), 2016 WL 7217572 (C.D. Cal. Dec. 12, 2016).................................. 12

*Ivey v. Bd. of Regents*,
　673 F.2d 266 (9th Cir. 1982) ................................................................................ 12

*Jacobs v. Clark Cnty. Sch. Dist.*,
　526 F.3d 419 (9th Cir. 2008) ................................................................................ 16

*Jacobsen v. Massachusetts*,
　197 U.S. 11 (1905).............................................................................................. 15

*Jensen v. Biden*,
　No. 4:21-CV-5119-TOR, 2021 WL 10280395 (E.D. Wash. Nov. 19, 2021)......................... 29

*Jones v. Williams*,
　297 F.3d 930 (9th Cir. 2002) ................................................................................ 12

*Jorgenson v. Conduent Transp. Sols., Inc.*,
　No. CV SAG-22-01648, 2023 WL 1472022 (D. Md. Feb. 2, 2023) ..................................... 22

*Khazali v. Washington*,
　No. C23-0796JLR, 2023 WL 3866767 (W.D. Wash. June 7, 2023)..................................... 10

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Kheriaty v. Regents of the Univ. of Cal.*,
22-55001, 2022 WL 17175070 (9th Cir. Nov. 23, 2022) ........................................ 15

*King v. Cnty. of L.A.*,
885 F.3d 548 (9th Cir. 2018) .................................................................................... 3

*Kirk v. Hockenberry*,
No. 1:14-cv-713, 2016 WL374433 (S.D. Ohio Feb. 1, 2016) .................................. 21

*Kisela v. Hughes*,
138 S. Ct. 1148 (2018) ............................................................................................ 14

*Langdon v. Swain*,
29 F. App'x 171 (4th Cir. 2002) ............................................................................. 20

*Leer v. Murphy*,
844 F.2d 628 (9th Cir. 1988) .................................................................................. 12

*Leggo v. M.C. Dean, Inc.*,
No. 122CV374LMBIDD, 2023 WL 1822383 (E.D. Va. Feb. 7, 2023) ................... 23

*LSO, Ltd. v. Stroh*,
205 F.3d 1146 (9th Cir. 2000) ................................................................................ 14

*Martin v. Gonzaga Univ.*,
425 P.3d 837 (Wash. 2018) ..................................................................................... 27

*Mass. Corr. Officers Federated Union v. Baker*,
567 F. Supp. 3d 315 (D. Mass. 2021) ....................................................................... 4

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ................................................................................................ 27

*McKinley v. Princeton Univ.*,
No. CV22-5069 (MAS) (TJB), 2023 WL 3168026 (D.N.J. Apr. 28, 2023) ............ 25

*McMinimee v. Yakima Sch. Dist. No. 7*,
No. 1:18-CV-3073-TOR, 2019 WL 11680199 (E.D. Wash. Aug. 7, 2019) ............ 31

*Nikolao v. Lyon*,
875 F.3d 310 (6th Cir. 2017) .................................................................................. 15

*Oliver v. Pac. Nw. Bell Tel. Co.*, 724 P.2d 1003 (Wash. 1986) ................................. 26

*Ordonez v. Stanley*,
495 F. Supp. 3d 855 (C.D. Cal. 2020) ..................................................................... 20

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Parratt v. Taylor*,
    451 U.S. 527 (1981).................................................................................................. 12

*Pearson v. Callahan*,
    555 U.S. 223 (2009).................................................................................................. 13

*Pedreira v. Ky. Baptist Homes for Child., Inc.*,
    579 F.3d 722 (6th Cir. 2009) ................................................................................... 25

*Peters v. Lieuallen*,
    693 F.2d 966 (9th Cir. 1982) ................................................................................... 10

*Phillips v. City of N.Y.*, 775 F.3d 538 (2d Cir. 2015)..................................................... 15

*Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022),
    *appeal docketed*, No. 22-35508 (9th Cir.) ....................................................... passim

*Poe v. Waste Connections US, Inc.*,
    371 F. Supp. 3d 901 (W.D. Wash. 2019)................................................................. 23

*Rico v. Ducart*,
    980 F.3d 1292 (9th Cir. 2020) ................................................................................. 14

*Rodgers v. Lincoln Towing Serv., Inc.*,
    596 F. Supp. 13 (N.D. Ill. 1984), *aff'd*, 771 F.2d 194 (7th Cir. 1985) ...................... 1

*Rolovich v. Wash. State Univ.*,
    No. 2:22-CV-0319-TOR, 2023 WL 3733894 (E.D. Wash. May 30, 2023) .......... 11, 13, 15, 17

*Schneider v. Cnty. of Fairfax*,
    No. 1:22-cv-871 (LMB/WEF), 2023 WL 2333305 (E.D. Va. Mar. 2, 2023).......................... 23

*Slidewaters LLC v. Wash. Dep't of Labor & Indus.*,
    4 F.4th 747 (9th Cir. 2021) .......................................................................... 3, 4, 18

*Speaks v. Health Sys. Mgmt., Inc.*,
    No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649 (W.D.N.C. Aug. 17, 2022)............. 23, 24

*Taylor v. Burlington N. R.R. Holdings Inc.*,
    801 F. App'x 477 (9th Cir. 2020) ........................................................................... 22

*Taylor v. Burlington N. R.R. Holdings Inc.*,
    904 F.3d 846 (9th Cir. 2018) ................................................................................... 23

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007)................................................................................................... 3

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Thomas v. City of Spokane*,
   No. CV-12-0156-EFS, 2013 WL 1346988 (E.D. Wash. Apr. 3, 2013)................................... 22

*Troulliet v. Gray Media Grp., Inc.*,
   No. CV 22-5256, 2023 WL 2894707 (E.D. La. Apr. 11, 2023) ............................................. 25

*Turner v. Ass'n of Apt. Owners of Wailea Point Vill.*,
   739 F. App'x 874 (9th Cir. 2018) ........................................................................................ 25

*Vicory v. Walton*,
   730 F.2d 466 (6th Cir. 1984) ............................................................................................... 20

*Village of Orland Park v. Pritzker*, 475 F. Supp. 3d 866 (N.D. Ill. 2020) .................................. 17

*W. States Paving Co., Inc. v. Washington State Dep't of Transp.*,
   No. C00-5204 RBL, 2006 WL 1734163 (W.D. Wash. June 23, 2006) (dismissing ............... 10

*We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, *opinion clarified*, 17 F.4th 368 (2d
   Cir. 2021) ............................................................................................................................. 15

*White v. Shaffer*,
   No. C13-5952 RBL, 2014 WL 1116735 (W.D. Wash. Mar. 20, 2014) ................................. 28

*Will v. Mich. Dep't of State Police*,
   491 U.S. 58 (1989)................................................................................................................. 10

*Williams v. Brown*, 567 F. Supp.3d 1213 (D. Or. 2021)............................................................. 19

*Winans v. Cox Auto., Inc.*,
   No. CV 22-3826, 2023 WL 2975872 (E.D. Pa. Apr. 17, 2023) ............................................. 25

*Wise v. Inslee*,
   No. 2:21-CV-0288-TOR, 2022 WL 1243662 (E.D. Wash. Apr. 27, 2022) ..................... passim

*Wise v. Inslee*,
   No. 2:21-CV-0288-TOR, 2021 WL 4951571 (E.D. Wash. Oct. 25, 2021)........................ 5, 18

*Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348 (4th Cir. 2011) ................................. 15

*Yousefi v. Delta Elec. Motors, Inc.*,
   No. C13-1632RSL, 2014 WL 6460826 (W.D. Wash. Nov. 17, 2014).................................... 24

**State Cases**

*Alpha Kappa Lambda Fraternity v. Wash. State Univ.*,
   216 P.3d 451 (Wash. Ct. App. 2009).................................................................................... 32

DEFENDANTS' MOTION TO DISMISS - viii
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Amunrud v. Bd. of Appeals*,
   143 P.3d 571 (Wash. 2006) ............................................................................... 29

*Blinka v. Wash. State Bar Ass'n*,
   36 P.3d 1094 (Wash. Ct. App. 2001) ................................................................. 28

*Cleary v. Inslee*,
   No. 21-2-01674-34 (Thurston Cnty. Super. Ct. Dec. 10, 2021) .............................. 30

*Garcia v. Dep't of Soc. & Health Servs.*,
   451 P.3d 1107 (Wash. Ct. App. 2019) ............................................................... 31

*Kellogg v. Nat'l R.R. Passenger Corp.*,
   504 P.3d 796 (Wash. 2022) ............................................................................... 29

*Klimovich v. State, Dep't of Soc. & Health Servs.*,
   No. 69938-5-I, 2014 WL 3930455 (Wash. Ct. App. Aug. 11, 2014) ..................... 32

*Lang v. Washington State Dep't of Health*,
   156 P.3d 919 (Wash. Ct. App. 2007) ................................................................. 32

*Mattila v. City of Seattle*,
   No. 22-2-14316-9 (King Cnty. Super. Ct. Oct. 12, 2022) .................................... 30

*Open Door Baptist Church v. Clark Cnty.*,
   995 P.2d 33 (Wash. 2000) ................................................................................. 30

*Pierce Cnty. Sheriff v. Civ. Serv. Comm'n of Pierce Cnty.*,
   658 P.2d 648 (Wash. 1983) ............................................................................... 31

*Rocha v. King Cnty.*,
   435 P.3d 325 (Wash. Ct. App. 2019), *aff'd*, 460 P.3d 624 (Wash. 2020) .............. 27

*State v. Arlene's Flowers, Inc.*,
   441 P.3d 1203 (Wash. 2019) ............................................................................. 30

*State v. Manussier*,
   921 P.2d 473 (Wash. 1996) ............................................................................... 29

*Yim v. City of Seattle*,
   451 P.3d 694 (2019)........................................................................................... 29

### Federal Statutes

42 U.S.C. § 1983................................................................................................... passim

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## State Statutes

RCW 49.52.050(2) ................................................................................ 31

RCW 49.60.040(7)(a) .......................................................................... 22

## Federal Rules

Fed. R. Civ. P. 12(b)(6) ...................................................................... 3, 8

Fed. R. Evid. 201 .................................................................................... 3

## Other Authorities

CDC, *COVID Data Tracker* ..................................................................... 3

CDC, *Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths,*
   *by Vaccination Status — 13 U.S. Jurisdictions, April 4–July 17, 2021* (Sept. 17,  2021) .... 5, 18

CDC, *Overview of COVID-19 Vaccines* (Nov. 1, 2022) .............................. 4

DOH, *COVID-19 Data Dashboard*, Disease Activity and Testing ........................... 3, 4

DOH, *COVID-19 Data Dashboard*, Vaccinations ........................................ 5

FDA, *FDA Authorizes Booster Dose of Pfizer-BioNTech COVID-19 Vaccine for Certain*
   *Populations* (Sept. 22, 2021) ......................................................... 4

FDA, *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in*
   *Children 5 through 11 Years of Age* (Oct. 29, 2021) ................................ 4

FDA, *Janssen COVID-19 Vaccine* (May 11, 2022) ..................................... 4

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

## I.     INTRODUCTION

In this lawsuit, 60 Plaintiffs challenge their separations from employment with Defendant Washington State Department of Transportation (WSDOT) due to their noncompliance with an emergency gubernatorial proclamation requiring state employees to be fully vaccinated against COVID-19. Other than those basic facts, it is unclear what (if anything) links Plaintiffs to one another or why they have chosen to challenge their terminations in a single, unwieldy lawsuit. WSDOT employed the 60 Plaintiffs in 34 different job positions—from ferry captains to highway maintenance workers—across multiple WSDOT divisions in at least 28 locations around the state. Some Plaintiffs unsuccessfully sought accommodations from the vaccine requirement on religious grounds; others sought accommodations for medical reasons; while still others did not even bother to apply for an accommodation at all.

Perhaps as a result of their varied circumstances, Plaintiffs have taken the "shotgun approach to pleading." *Rodgers v. Lincoln Towing Serv., Inc.*, 596 F. Supp. 13, 27 (N.D. Ill. 1984), *aff'd*, 771 F.2d 194 (7th Cir. 1985) ("[T]his 'shotgun approach" to pleading, where the pleader heedlessly throws a little bit of everything into his complaint in the hope that something will stick, is to be discouraged.") (cleaned up). The Complaint contains 14 causes of action raising various federal constitutional claims, Washington State constitutional claims, and statutory, tort, and administrative claims under Washington law. Each claim misses the mark, fails as a matter of law, and should be dismissed.

Start with the federal constitutional claims, which allege violations of the Free Exercise, Due Process, Equal Protection, and Contracts Clauses. While each claim fails for somewhat unique reasons, three common threads link their deficiencies. First, the claims pleaded do not challenge the constitutionality of WSDOT's *application* of the vaccine policy to the individual Plaintiffs. They instead challenge the *facial* validity of the vaccine proclamation itself. But virtually all of Plaintiffs' federal constitutional attacks on the proclamation have already been rejected by this Court and others. *See, e.g.*, *Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172, at *1 (W.D. Wash. May 27, 2022), *appeal docketed*, No. 22-35508 (9th Cir. June 30, 2022). Those

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

outcomes are consistent with the abysmal success rate of similar challenges across the country, and Plaintiffs give this Court no reason to reach a different result here. *See, e.g.*, *George v. Grossmont Cuyamaca Cmty. Coll. Dist. Bd. of Governors*, No. 22-CV-0424-BAS-DDL, 2022 WL 17330467, at *1 (S.D. Cal. Nov. 29, 2022) ("This action is one of over approximately 1,000 challenges brought nationwide to strike down COVID-19 vaccine mandates. . . . Overwhelmingly, these suits have been unsuccessful.") (cleaned up).

Second, because the only specific relief Plaintiffs seek is monetary damages and attorney's fees, the exclusive vehicle of their federal constitutional claims is an "individual capacity" claim under 42 U.S.C. § 1983 against state officials, so Plaintiffs have no such claim against WSDOT itself. The Complaint also names five WSDOT officials as Defendants but fails to allege that any of those officials personally participated in a constitutional violation—which is a strict requirement of any § 1983 suit.

Third, the doctrine of qualified immunity bars Plaintiffs' constitutional claims against the WSDOT officials. To defeat qualified immunity, a plaintiff must show that an official's own conduct violated the plaintiff's "clearly established" constitutional rights. Plaintiffs have failed to plausibly allege that *anyone* violated even their arguable rights. They have fallen far short of meeting the "clearly established" bar to defeat the WSDOT officials' qualified immunity.

Plaintiffs fare no better on their state-law employment discrimination claims. Among their many flaws, perhaps the most glaring is that the Plaintiffs who claim to have religiously based objections to the COVID-19 vaccines do not actually describe their beliefs at all, even at the highest of levels. Nor do the Plaintiffs who sought disability-based accommodations identify the medical conditions that allegedly precluded their vaccination against COVID-19. Thus, Plaintiffs' employment discrimination claims under the Washington Law Against Discrimination (WLAD) lack the most basic element of a failure-to-accommodate theory: an articulation of each Plaintiff's "sincerely held religious belief" or "qualifying disability" that triggers the statute's protections. For that reason and others, Plaintiffs' WLAD claims fail as a matter of law.

DEFENDANTS' MOTION TO DISMISS - 2
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Finally, Plaintiffs' other state law claims also fail as a matter of law for multiple reasons. The most basic reason, however, is that there is no freestanding claim for damages based on violations of the Washington Constitution. Yet all of Plaintiffs' Washington constitutional claims precisely seek that relief, while further alleging no plausible violations of the provisions they invoke. This insuperable bar warrants dismissal of those claims.

For these reasons and those explained in detail below, the Court should dismiss Plaintiffs' Complaint in its entirety.

## II.    FACTS

This factual summary is based on the allegations in the Complaint, documents incorporated by reference into the Complaint, and judicially noticeable facts. *See* Fed. R. Civ. P. 12(b)(6); *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). The Court should take judicial notice of the government records and data cited in this Motion—including from the U.S. Food and Drug Administration (FDA), the U.S. Centers for Disease Control and Prevention (CDC), and the Washington State Department of Health (DOH). *See* Fed. R. Evid. 201; *King v. Cnty. of L.A.*, 885 F.3d 548, 555 (9th Cir. 2018).

### A.    The COVID-19 Pandemic and Washington's Emergency Response

In response to the pandemic, "[g]overnments at all levels instituted restrictions to curb the transmission of the virus." *Slidewaters LLC v. Wash. State Dep't of Lab. & Indus.*, 4 F.4th 747, 752 (9th Cir. 2021), *cert. denied*, 142 S. Ct. 779 (2022). Even with those restrictions, COVID-19 has killed more than 1.1 million Americans, including over 16,000 Washingtonians[1]—making it the "deadliest disease in American history." *State of Florida v. Dep't of Health & Hum. Servs.*, 19 F.4th 1271, 1275 (11th Cir. 2021) (citation omitted).

---

[1] CDC, *COVID Data Tracker*, http://bit.ly/3LadJ5s (last visit June 8, 2023); DOH, *COVID-19 Data Dashboard*, Disease Activity and Testing, https://bit.ly/3AKV0Gq (last update June 7, 2023).

DEFENDANTS' MOTION TO DISMISS - 3
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

On February 29, 2020, amidst the initial COVID-19 outbreak in Washington, Governor Inslee proclaimed a state of emergency. *Slidewaters*, 4 F.4th at 753; Procl. 20-05.[2] Between December 2020 and February 2021, the FDA issued Emergency Use Authorizations (EUAs) for three COVID-19 vaccines developed by Pfizer, Moderna, and Johnson & Johnson.[3] FDA gave full approval to Pfizer's vaccine for people 16 and older on August 23, 2021, and to Moderna's for people 18 and older on January 31, 2022. *Church v. Biden*, No. CV 21-2815 (CKK), 2022 WL 1491100, at *2 (D.D.C. May 11, 2022). The CDC considers the vaccines to be safe and effective in reducing the risk of severe illness or death due to COVID-19.[4]

### B.    The Delta Surge and Proclamation 21-14

In summer 2021, the "Delta variant" emerged—a new, highly infectious COVID-19 strain. *See Does 1–6 v. Mills*, 16 F.4th 20, 26–27 (1st Cir. 2021), *cert. denied sub nom. Does 1–3 v. Mills*, 142 S. Ct. 1112 (2022) (Mem.). Twice as infectious as earlier variants, *id.*, Delta spread like wildfire, causing Washington's daily case count to jump from a low of 329 on June 28 to 4,449 on September 7, 2021.[5] While "no vaccine is 100% effective," the COVID-19 vaccines proved highly effective at preventing the virus's spread and severe disease—particularly with the Delta variant. *Mass. Corr. Officers Federated Union v. Baker*, 567 F. Supp. 3d 315, 319–20 (D. Mass. 2021). According to a September 2021 CDC report (when Delta was dominant), unvaccinated people were 5 times more likely to contract, 10 times more likely to be hospitalized with, and 11 times

---

[2] A repository of Governor Inslee's emergency proclamations is available at: Office of Governor Jay Inslee, *Proclamations*, https://www.governor.wa.gov/office-governor/official-actions/proclamations (last visited June 8, 2023).

[3] FDA, *FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Children 5 through 11 Years of Age* (Oct. 29, 2021), http://bit.ly/3ZSWgmb (last visited June 30, 2023); FDA, *Janssen COVID-19 Vaccine* (May 11, 2022), http://bit.ly/3l3SnvW (last visited June 30, 2023); FDA, *FDA Authorizes Booster Dose of Pfizer-BioNTech COVID-19 Vaccine for Certain Populations* (Sept. 22, 2021), http://bit.ly/3l2nEiY (last visited June 30, 2023).

[4] CDC, *Overview of COVID-19 Vaccines* (Nov. 1, 2022), http://bit.ly/3FdTjVv (last visited June 30, 2023).

[5] DOH, *COVID-19 Data Dashboard*, Disease Activity and Testing, *supra* note 1.

DEFENDANTS' MOTION TO DISMISS - 4
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

more likely to die from COVID-19 than those who were fully vaccinated.[6] Despite such stark disparities, the Delta surge coincided with a steady decline in vaccination rates.[7] In August 2021, nearly 30% of eligible Washingtonians were unvaccinated. Procl. 21-14 at 2.

On August 9, 2021, Governor Inslee issued Proclamation 21-14 (together with subsequent iterations, the Proclamation), prohibiting healthcare providers and most state employees from working after October 18, 2021, without being fully vaccinated against COVID-19, *i.e.*, at least two weeks post-final dose. Procl. 21-14. When it took effect, the Proclamation applied to at least 681,000 workers across the three covered sectors—state government, health care, and education. *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *1 (E.D. Wash. Oct. 25, 2021). The Proclamation required covered employers to evaluate requests for medical and religious exemptions and provide reasonable accommodations, consistent with state and federal antidiscrimination statutes. Procl. 21-14.2 at 5–6. Covered employers had to "conduct[] an individualized assessment and determination of each individual's need and justification for an accommodation." *Id.* at 6. Covered employers were "prohibited from providing accommodations" if "based on false, misleading, or dishonest grounds or information" or "the personal preference of the individual," rather than "an inability to get vaccinated because of a disability or a conflict with a sincerely held religious belief, practice, or observance." *Id.*

### C.    Unsuccessful Legal Challenges to the Proclamation

In the weeks and months after the Proclamation was issued, multiple lawsuits were filed in state and federal courts challenging it as facially unconstitutional under a variety of theories— including several raised by Plaintiffs here. None of these facial challenges succeeded. *See, e.g.*, *Pilz*, 2022 WL 1719172, at *1 (dismissing challenge to Proclamation that raised free exercise, contracts clause, due process, equal protection, and employment discrimination claims); *Bacon v.*

---

[6] CDC, *Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status — 13 U.S. Jurisdictions, April 4–July 17, 2021* (Sept. 17, 2021), http://bit.ly/3YQ9tMM (last visited June 30, 2023).

[7] DOH, *COVID-19 Data Dashboard*, Vaccinations, *supra* note 1.

DEFENDANTS' MOTION TO DISMISS - 5
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

*Woodward*, No. 2:21-CV-0296-TOR, 2022 WL 2381021, at *1 (E.D. Wash. June 30, 2022), *appeal docketed*, No. 22-35611 (9th Cir. Aug. 8, 2022) (same); *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2022 WL 1243662, at *1 (E.D. Wash. Apr. 27, 2022), *appeal dismissed*, No. 22-35426, 2022 WL 17254335 (9th Cir. Oct. 7, 2022) (same except equal protection claim). In *Pilz*, for example, this Court dismissed on the pleadings a lawsuit brought by approximately 100 plaintiffs who had been separated from employment with state agencies or other employers due to the Proclamation. Judge Rothstein emphasized "how totally ineffective this forum would be for resolving the individual claims of 100 plaintiffs" with "little in common except their opposition to the vaccine requirement." 2022 WL 1719172, at *3. The Court therefore construed the *Pilz* complaint to raise "only a facial challenge to the Proclamation"—which it rejected on all counts. *Id.* In *Pilz* (as well as *Bacon*), the plaintiffs were represented by the same counsel as Plaintiffs here.

In August 2022, after *Pilz* and other courts had dismissed all legal challenges to the Proclamation and as COVID-19 cases ebbed, the Governor announced termination of the Proclamation and the underlying state of emergency, effective October 31, 2022. *See* Procl. 21-14.6 at 2 (rescinding and terminating Proclamation 21-14 et seq., effective October 31, 2022, at 11:59 PM); Procl. 20-05.1 (declaring "the termination of the state of emergency proclaimed in Proclamation 20-05 and rescind[ing] and terminat[ing] Proclamation 20-05" effective October 31, 2022, at 11:59 PM).

### D.   Plaintiffs Failed to Comply with the Proclamation

This case was filed by 60 Plaintiffs who were previously employed in various roles with the WSDOT in numerous locations across the state. Compl. ¶¶ 1, 7–66. Approximately 25 Plaintiffs were employed within WSDOT's Washington State Ferries Division, with roles ranging from terminal attendants to vessel captains. *See, e.g.*, *id.* ¶¶ 10, 11, 20. The other Plaintiffs worked for eight different WSDOT components, including Communications, Cultural Resources, Maintenance, and Design/Construction. *Id.* ¶¶ 7–66. Plaintiffs worked in at least 28 different cities across the state—from Anacortes to Tumwater to Spokane—in at least 34 different job positions (including highway maintenance workers, secretaries, and engineers). *Id.*

DEFENDANTS' MOTION TO DISMISS - 6
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Of these 60 Plaintiffs, 52 submitted requests to WSDOT seeking religious exemptions and accommodations from the Proclamation. *See id.* WSDOT approved religious exemptions for all but one, but denied all 52 Plaintiffs' religious accommodation requests, determining that it would impose an undue hardship on WDOT to allow them to remain unvaccinated in their roles. *See id.* The two Plaintiffs who sought and were granted medical exemptions were also denied accommodations due to WSDOT's undue hardship determination. *See id.* ¶¶ 14, 54. One Plaintiff sought both medical and religious exemptions, which were granted, but an accommodation was denied due to undue hardship. *See id.* ¶ 59. And five plaintiffs allege that they have religiously based objections to the COVID-19 vaccines but did not apply for an exemption and accommodation because they were purportedly advised that doing so would be "pointless." *See id.* ¶¶ 44, 49, 58, 65, 64.

Plaintiffs who claim to have religious objections to the COVID-19 vaccines have not in any way described the nature of their religious beliefs in the Complaint, nor alleged any facts demonstrating how, when, or to whom at WSDOT they disclosed any such beliefs. Nor have Plaintiffs who sought disability-based accommodations described in the Complaint the nature of their medical issues that purportedly preclude COVID-19 vaccination, nor alleged any facts establishing how and when they provided notice to WSDOT of such issues. *See id.* ¶¶ 14, 54.

As Plaintiffs acknowledge, WSDOT sent an email to each Plaintiff notifying them of the decision to grant or deny their exemption request. *See, e.g.*, Compl., Ex. C. This email also informed each Plaintiff whether a reasonable accommodation was possible based on their position with WSDOT and provided information on reassignment where applicable. *Id.* at 2. Additionally, the email provided each Plaintiff with an opportunity to discuss the decision by scheduling a meeting. *Id.* at 3. The Complaint does not allege whether any Plaintiffs sought a meeting to discuss their exemption requests and possible accommodations. All Plaintiffs were separated from their positions at WSDOT on October 18, 2021, due to their failure to meet the job requirement that they be vaccinated against COVID-19 or receive an accommodation. *See* Compl. ¶ 71.

DEFENDANTS' MOTION TO DISMISS - 7
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1

### E.     Plaintiffs' Lawsuit

Plaintiffs filed this lawsuit on May 9, 2023, naming as Defendants WSDOT and four individual WSDOT supervisors: its Secretary of Transportation Roger Millar, Human Resources Director Jeff Pelton, Deputy Director of Human Resources Kimberly Flaig, and Staff Chief Engineer Mark Nichtman (together, the Individual Defendants). The Complaint does not specify whether the Individual Defendants are sued in their official or individual capacities. As relief, Plaintiffs seek damages for back pay, front pay, loss of benefits, and under other theories, as well as attorney fees. Compl. at ¶ 116.

The Complaint alleges 14 causes of action: (1) a WLAD claim based on perceived physical disability, *id.* ¶¶ 457–68; (2) a deprivation of privacy claim under article I, section 7 of the Washington Constitution, *id.* ¶¶ 469–88; (3) a due process claim under the federal and state constitutions, *id.* ¶¶ 489–98; (4) an equal protection claim under article I, section 3 of the Washington Constitution, *id.* ¶¶ 499–507; (5) a religious freedom claim under article I, section 11 of the Washington Constitution, *id.* ¶¶ 508–13; (6) a wage theft claim under RCW 49.52.070, *id.* ¶¶ 514–22; (7) a Contracts Clause claim under the federal and state constitutions, *id.* ¶¶ 523–33; (8) a WLAD failure-to-accommodate claim, *id.* ¶¶ 534–45; (9) a WLAD disparate impact claim, *id.* ¶¶ 546–49; (10) a claim under the First Amendment's Free Exercise Clause, *id.* ¶¶ 550–64; (11) a state constitutional claim invoking the "right to be free from arbitrary and capricious action," *id.* ¶¶ 565–69; (12) a state "public policy tort claim against religious discrimination," ¶¶ 570–78; (13) a takings claim under the federal and state constitutions, *id.* ¶¶ 579–85; and (14) an equal protection claim under the U.S. Constitution, *id.* ¶¶ 586–91. For the following reasons, every claim should be dismissed for failure to state a claim.

### III.     ARGUMENT

### A.     Legal Standard

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

up). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Whether a complaint states a claim for relief "requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Dismissal may be based on either "the lack of a cognizable legal theory or absence of sufficient facts alleged under a cognizable legal theory." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011). "Leave to amend need not be granted, and dismissal may be ordered with prejudice, if amendment would be futile," such as when a claim "fails as a matter of law." *Gamble v. Pac. NW Reg'l Council of Carpenters*, No. 2:14-cv-455RSM, 2015 WL 402782, at *7 (W.D. Wash. Jan. 29, 2015).

**B.      The Federal Constitutional Claims Should Be Dismissed (Claims 3, 7, 10, 13–14)**

Plaintiffs allege violations of the following federal constitutional provisions or principles: (i) the Free Exercise Clause (Claim 10); (ii) the Due Process Clause of the Fifth and Fourteenth Amendments (Claim 3); (iii) the Equal Protection Clause of the Fourteenth Amendment (Claim 14); (iv) the Contracts Clause, U.S. Const. art. I, § 10 (Claim 7); and (v) the Takings Clause of the Fifth Amendment (Claim 13). For multiple reasons, each of these claims fails as a matter of law.

First, each federal constitutional claim against WSDOT must be dismissed because the agency is not a person under 42 U.S.C. § 1983, which is the only vehicle by which a plaintiff may sue state actors for damages based on alleged federal constitutional violations. Second, many of the Plaintiffs' claims raise facial challenges to the constitutionality of the Proclamation itself, which this Court and others have already squarely rejected. There is no reason to relitigate those rulings. Third, Plaintiffs' federal constitutional claims challenging how the Proclamation was allegedly applied to them by the Individual Defendants all fail as a matter of law—both because they do not plausibly allege cognizable constitutional violations by any Individual Defendant and because qualified immunity bars them.

**1.      WSDOT is not a person under § 1983 so the claims against it must be dismissed**

Claims seeking money damages for state actors' violations of the federal constitution must be brought pursuant to 42 U.S.C. § 1983. *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 917

DEFENDANTS' MOTION TO DISMISS - 9
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(9th Cir. 2003). Yet of Plaintiffs' five federal constitutional claims, only one—their Free Exercise claim (Claim 10)—expressly invokes § 1983. *See* Compl. at 109. The Court may and should construe Plaintiffs' four other federal constitutional claims as also brought pursuant to § 1983. *See, e.g.*, *Khazali v. Washington*, No. C23-0796JLR, 2023 WL 3866767, at *1 n.1 (W.D. Wash. June 7, 2023) ("Courts regularly construe federal constitutional claims as § 1983 claims.") (collecting cases).

Because § 1983 is the exclusive statutory vehicle through which Plaintiffs may bring their federal claims, all those claims must be dismissed as to WSDOT because it is not a "person" under § 1983. *Khazali*, 2023 WL 3866767, at *2 ("[S]tates, state agencies, and state officials sued in their official capacity are not 'persons' under § 1983 and are immune from suit under the Eleventh Amendment."). As the Supreme Court stated, "We cannot conclude that § 1983 was intended to disregard the well-established immunity of a State from being sued without its consent." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989). This is equally applicable to WSDOT. *See, e.g.*, *W. States Paving Co., Inc. v. Wash. State Dep't of Transp.*, No. C00-5204 RBL, 2006 WL 1734163, at *10 (W.D. Wash. June 23, 2006) (dismissing § 1983 claim against WSDOT as barred by the Eleventh Amendment). Thus, Plaintiffs' federal constitutional claims against WSDOT must be dismissed. By the same token, to the extent Plaintiffs assert those claims against the Individual Defendants in their official capacities, those claims must also be dismissed.

That leaves only Plaintiffs' federal constitutional claims against the Individual Defendants in their individual capacities, which also fail as a matter of law and must be dismissed.

### 2.  The free exercise claim should be dismissed (Claim 10)

The three overarching deficiencies in Plaintiffs' free exercise claim exemplify the flaws common to virtually all their federal constitutional claims. First, Plaintiffs' free exercise claim appears to seek to relitigate whether the Proclamation on its face violates the Free Exercise Clause—a question that both this Court and others have already answered in the negative. *See, e.g.*, *Pilz*, 2022 WL 1719172, at *5; *Wise*, 2022 WL 1243662, at *4. Second, the Complaint fails to allege the personal participation of any Individual Defendant in any plausible free exercise

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

violation—which is a requirement of any § 1983 claim. Third, the Individual Defendants are entitled to qualified immunity.

### a. This Court has already rejected a free exercise challenge to the Proclamation

Plaintiffs' basic free exercise argument is that "Defendants' vaccination policy thus fails the general applicability test" under the Free Exercise Clause "because the medical exemption system provides for individualized discretionary review." Compl. ¶ 559. Plaintiffs state that "[a] law 'lacks general applicability if it prohibits religious conduct while permitting secular conduct that undermines the government's asserted interests in a similar way.'" *Id.* ¶ 556 (quoting *Fulton v. City of Phila.*, 141 S. Ct. 1868, 1877 (2021)).

This was the same argument the *Pilz* plaintiffs made in their facial challenge to the Proclamation, which this Court squarely rejected. As Judge Rothstein noted, "*Fulton* did not hold that any law containing exemptions is *per se* not generally applicable." 2022 WL 1719172, at *4. Rather, the "Ordinance in *Fulton* contained a 'system of *entirely discretionary* exceptions,' and city officials used that discretion to effectively blacklist agencies with particular religious views." *Id.* (quoting *Fulton*, 141 S. Ct. at 1878). Finding that "[t]he exemptions created by the Proclamation here are not discretionary because state officials are not empowered to decide what justifies an exemption," the *Pilz* Court held "the Proclamation's standardized exemptions do not prevent the Court from finding the law generally applicable, and thus do not trigger strict scrutiny." *Id.* at 5.

Applying rational basis review, the Court concluded that "the Proclamation easily satisfies this standard[,]" thereby "join[ing] many other[] [federal courts] in finding that requiring state employees to be vaccinated is rationally related to stemming the spread of COVID-19—and does not violate the Free Exercise Clause." *Id.* at *5 (collecting cases). The judicial consensus has grown even stronger since *Pilz* was decided more than a year ago. *See, e.g.*, *Rolovich v. Wash. State Univ.*, No. 2:22-CV-0319-TOR, 2023 WL 3733894, at *6 (E.D. Wash. May 30, 2023) ("This Court and many others around the country have consistently found COVID-19 vaccine mandates for state employees are facially neutral and generally applicable, and terminating an employee for failing to comply with a vaccine mandate is a permissible employment action.") (collecting cases). This

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

1   Court should join them and dismiss Plaintiffs' facial free exercise challenge to the Proclamation.

2   **b.  Plaintiffs fail to allege the Individual Defendants' personal participation**

3   To the extent Plaintiffs allege a § 1983 free exercise claim against the Individual

4   Defendants in their individual capacities, this claim fails for multiple reasons. First, the Complaint

5   does not allege personal participation by any Individual Defendant in any arguably

6   unconstitutional actions. A § 1983 plaintiff must allege both that (1) the conduct complained of

7   was committed by a person acting under color of state law, and (2) the conduct deprived a person

8   of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Parratt*

9   *v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S.

10  327 (1986); *Leer v. Murphy*, 844 F.2d 628, 632–33 (9th Cir. 1988). The second prong requires "a

11  showing of personal participation in the alleged rights deprivation: there is no respondeat superior

12  liability under section 1983." *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002) (cleaned up).

13  Thus, the complaint must set forth the "specific injury-causing act or omission of" each individual

14  defendant. *Holt v. McDonnell*, No. CV 15-9632 R(JC), 2016 WL 7217572, at *4 (C.D. Cal. Dec.

15  12, 2016); *see also Brown v. Morgan*, No. C16-5975 RBL-TLF, 2017 WL 3454572, at *2 (W.D.

16  Wash. Aug. 11, 2017) ("A plaintiff must allege that he suffered a specific injury as a result of the

17  conduct of a particular defendant, and he must allege an affirmative link between the injury and

18  the conduct of that defendant."). "Vague and conclusory allegations of official participation in a

19  civil rights violation are not sufficient to withstand a motion to dismiss." *Ivey v. Bd. of Regents of*

20  *Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). Rather, the "inquiry into causation must be

21  individualized and focus on the duties and responsibilities of each individual defendant whose acts

22  or omissions are alleged to have caused a constitutional deprivation." *Leer*, 844 F.2d at 632–33.

23  Claim 10 does not allege any "specific injury-causing act or omission of" any Individual

24  Defendant. *Holt*, 2016 WL 7217572, at *4; *see also* Compl. ¶¶ 550–64. Instead, the Complaint

25  alleges in conclusory fashion that "Defendants acted with willful malice, and/or intentionally and

26  in gross disregard of Plaintiffs' constitutional rights, and/or in reckless disregard of Plaintiffs'

27  constitutional rights." Compl. ¶ 562. This falls far short of alleging "a specific injury as a result of

DEFENDANTS' MOTION TO DISMISS - 12
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

the conduct of a particular defendant." *Brown*, 2017 WL 3454572, at *2.

The most Plaintiffs can allege about the Individual Defendants is that they expressed their personal opinions that WSDOT employees should comply with the Proclamation and receive vaccination against COVID-19, and that some of them were in various ways involved in WSDOT's decisions on Plaintiffs' accommodation requests. *See, e.g.*, Compl. ¶ 136 (alleging that "Defendant Millar proceeded to provide his personal opinion that the unvaccinated put everyone at risk"); *id.* ¶ 130 (alleging that "Defendant Nitchman made it known through many public comments during work hours that he did not want anyone on his boat who was unvaccinated"); *id.* ¶ 452 (alleging that "Defendant Flaig used her social media account to openly chastise, demean, and dismiss those who declined the vaccine"). Such allegations do not remotely establish that the Individual Defendants somehow personally participated in a violation of Plaintiffs' free exercise rights. *See, e.g.*, *Rolovich*, 2023 WL 3733894, at *6 (concluding that plaintiff failed to allege facts to support claim that supervisor violated his free exercise rights because, "[e]ven if [supervisor] personally disagreed with Plaintiff's reasons for not getting vaccinated and urged Plaintiff to comply with the Proclamation, his actions do not rise to a constitutional violation," and his "repeated statements to Plaintiff that his employment would be terminated with just cause for failing to comply with the vaccination requirements were in accord with the Proclamation," which is itself constitutional).

### c.   Qualified immunity bars Plaintiffs' free exercise claim

Even if Plaintiffs had plausibly alleged the Individual Defendants' personal participation in free exercise violations (and they have not), the doctrine of qualified immunity would bar Plaintiffs' claim. With qualified immunity, a defendant has immunity from suit provided his conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Courts consider two questions: (1) whether the facts, taken in the light most favorable to the non-moving party, show that the official's conduct violated a constitutional right, and (2) whether the allegedly violated right was "clearly established" at the time of the challenged conduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Once a defendant raises this defense, "the plaintiff bears the burden of

DEFENDANTS' MOTION TO DISMISS - 13
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

showing that the rights allegedly violated were 'clearly established.'" *LSO, Ltd. v. Stroh*, 205 F.3d 1146, 1157 (9th Cir. 2000). "[F]or a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018); *see also Rico v. Ducart*, 980 F.3d 1292, 1301 (9th Cir. 2020) (explaining courts first look to binding authorities at the time and then "robust consensus" of persuasive authority).

As to the first element, and as explained above, Plaintiffs have failed to demonstrate that any Individual Defendant's actions violated a constitutional right. "Where the claim is invidious discrimination in contravention of the First . . . Amendment[]," the Supreme Court's "decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." *Iqbal*, 556 U.S. at 676 (citing, inter alia, *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 540–41 (1993) (opinion of Kennedy, J.)). Such "purposeful discrimination" requires that a "decisionmaker[] undertak[e] a course of action because of, not merely in spite of, the action's adverse effects upon an identifiable group." *Id.* at 676–77 (cleaned up). To survive a motion to dismiss, a plaintiff must provide "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury." *Crawford–El v. Britton*, 523 U.S. 574, 598 (1998).

The facts alleged in the Complaint do not plausibly support the inference that Plaintiffs were separated because of their religion—as opposed to because they were unvaccinated against COVID-19, which was a condition for continued employment. None of the facts alleged remotely suggests the Individual Defendants harbored any animus on the basis of Plaintiffs' *religious* beliefs. *See id.* at 592 ("When intent is an element of a constitutional violation, however, the primary focus is not on any possible animus directed at the plaintiff; rather, it is more specific, such as an intent to disadvantage all members of a class that includes the plaintiff . . . ."). Indeed, Plaintiffs do not so much as allege what any of their religious beliefs even *are*, nor that any Individual Defendant was ever aware of any Plaintiff's religious beliefs. And even if there were plausible allegations of religious animus (and there isn't), "[m]ere hostility is insufficient to demonstrate the level of coercion necessary to maintain a Section 1983 claim for free exercise

DEFENDANTS' MOTION TO DISMISS - 14
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

violation." *Rolovich*, 2023 WL 3733894, at *7 (citing *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1543 (9th Cir. 1985) (Canby, J., concurring) ("[G]overnmental actions that merely offend … religious beliefs do not on that account violate free exercise. An actual burden on the … exercise of religion is required.")).

Under the second element of the qualified immunity standard, the Individual Defendants' implementation of the Proclamation does not violate a clearly established right. Instead, the clearly established law is just the opposite: the State may constitutionally establish generally applicable vaccine requirements even *without* affording a religious exemption. *Id.* at *6; *see also, e.g.*, *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) ("Limitation of the medical exemption in this way serves the primary interest for imposing the mandate—protecting student 'health and safety'—and so does not undermine the District's interests as a religious exemption would."); *Nikolao v. Lyon*, 875 F.3d 310, 316 (6th Cir. 2017) (Free Exercise Clause does not require exemption from vaccination requirement); *Phillips v. City of N.Y.*, 775 F.3d 538, 543 (2d Cir. 2015) (same); *Workman v. Mingo Cnty. Bd. of Educ.*, 419 F. App'x 348, 354 (4th Cir. 2011) (unpublished) (same). As the Ninth Circuit recently held, there is no "'fundamental right' to be free from a vaccine mandate at a workplace." *Kheriaty v. Regents of the Univ. of Cal.*, 22-55001, 2022 WL 17175070, at *1 (9th Cir. Nov. 23, 2022) (unpublished); *see also Does 1-6*, 16 F.4th at 30 (rejecting free exercise challenge to state vaccine mandate); *We the Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 292, *opinion clarified*, 17 F.4th 368 (2d Cir. 2021) (per curiam), *cert. denied sub nom. Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022) (same). Rather, "[t]he Supreme Court has long endorsed state and local government authority to impose compulsory vaccines." *Wise*, 2022 WL 1243662, at *4 (collecting cases).

DEFENDANTS' MOTION TO DISMISS - 15
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON 98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

### 3.   The due process claim should be dismissed (Claim 3)

Plaintiffs' federal due process claim against the Individual Defendants fails for similar reasons as their free exercise claim. First, Plaintiffs' due process theory is essentially a facial attack on the Proclamation that rehashes the same argument rejected by this Court and others—namely, that "Plaintiffs were terminated from public employment without a hearing or other due process," as purportedly required by *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985). Compl. ¶ 495. As the *Pilz* Court observed, however, "*Loudermill* held that '[t]he essential requirements of due process . . . are notice and an opportunity to respond,'" which entitles public employees to "'oral or written notice of the charges against [them]' and 'an opportunity to present their side of the story' before they are terminated." 2022 WL 1719172, at *7 (cleaned up) (quoting *Loudermill*, 470 U.S. at 545–46). The Proclamation "created a process by which employees could apply for exemptions and accommodations, and essentially 'present their side of the story' to avoid termination," which is "all that *Loudermill* requires." *Id.* Accordingly, *Pilz* dismissed the plaintiffs' due process claim, "join[ing] other 'district courts around the country that have' rejected procedural due process challenges 'to employer-issued vaccine mandates during the COVID-19 pandemic.'" *Id.* (cleaned up) (quoting *Wise*, 2022 WL 1243662, at *5). This Court should adhere to *Pilz* and reject Plaintiffs' recycled due process claim.

Second, the Complaint does not allege that any Individual Defendant personally participated in a plausible due process violation. Plaintiffs allege that the "Defendants published their process for evaluating religious and medical exemptions but then failed to adhere to that process." Compl. ¶ 175. But even if it were true that WSDOT did not follow its own procedures for processing Plaintiffs' exemption and accommodation requests, the Complaint would not state a cognizable due process violation. State actors may deviate from agency procedures without offending due process so long as they still provide the constitutionally required floor—notice and an opportunity to be heard—which WSDOT undisputedly did. *See, e.g.*, *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) ("state departmental regulations do not establish a federal *constitutional* violation"); *Jacobs v. Clark Cnty. Sch. Dist.*, 526 F.3d 419, 441 (9th Cir. 2008)

DEFENDANTS' MOTION TO DISMISS - 16
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(school district did not violate due process clause by implementing a dress code without following its regulations requiring parental notification).

Finally, qualified immunity bars Plaintiffs' due process claim against the Individual Defendants. As to the first qualified immunity prong, as explained above, the Complaint does not articulate how any Individual Defendant's personal conduct plausibly violated Plaintiffs' constitutional due process rights. *See, e.g.*, *Rolovich*, 2023 WL 3733894, at *9 (supervisor entitled to qualified immunity from due process claim; "[t]he[] facts do not support Plaintiff's claim that Chun impermissibly interfered in the exemption review process. Chun participated as required under the prescribed procedures, and his determination regarding Plaintiff's requested exemption and accommodations was also in accordance with the procedures."). As to the second prong, the Complaint does not allege how any Individual Defendant's conduct violated a due process right that was "clearly established." To the contrary, Plaintiffs' basic due process theory—which criticizes WSDOT for not providing pre-termination evidentiary hearings and not following its own procedures—does not even identify *arguable* due process violations, let alone clearly established ones. *See, e.g.*, *Davis v. Scherer*, 468 U.S. 183, 194 & n.12 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."); *Village of Orland Park v. Pritzker*, 475 F. Supp. 3d 866, 883 (N.D. Ill. 2020) (individualized pre-deprivation mini-trials not required as they would overwhelm the administrative system and cripple the state's ability to act quickly and decisively to contain a rapidly spreading disease).

### 4. The equal protection claim should be dismissed (Claim 14)

Plaintiffs' equal protection claim fails for similar reasons as their free exercise and due process claims. First, the Complaint appears to raise a facial equal protection challenge to the Proclamation itself—and one that earlier courts have readily rejected. Recognizing that rational basis review is the applicable standard because the Proclamation "neither burdens a fundamental right nor targets a suspect class," Plaintiffs contend that "[t]here was no rational relation to some legitimate government end because the action taken – termination of the unvaccinated – did not

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

further the interest of reducing the spread of COVID-19 given that the vaccinated and the unvaccinated both contract and transmit COVID-19." Compl. ¶¶ 501, 502.[8] Plaintiffs' argument ignores the fact that when the Proclamation was adopted, unvaccinated people were five times more likely to contract, ten times more likely to be hospitalized with, and 11 times more likely to die from COVID-19 than those who were fully vaccinated.[9] It also overlooks that numerous courts—including this one—have held that the Proclamation was rationally related to a legitimate government objective. *See, e.g.*, *Bacon*, 2022 WL 2381021, at *3 (dismissing equal protection challenge to Proclamation because, "[w]hile the Proclamation differentiates between vaccinated and unvaccinated employees, the classifications serve a legitimate government purpose, which is to slow the spread of COVID-19, and the classifications are not arbitrary or irrational"); *Pilz*, 2022 WL 1719172, at *5 (holding in the context of free exercise analysis that the "Proclamation easily satisfies this standard and passes rational basis review").

Second, Plaintiffs again do not allege personal participation by any Individual Defendant, as § 1983 requires. Claim 14 does not reference any acts or omissions by an Individual Defendant, let alone connect them to a cognizable equal protection violation. In fact, Claim 14 is more focused on alleged violations of "Plaintiffs' rights to due process," rather than on any abridgement of equal protection. *See* Compl. ¶ 589. Despite being labeled an equal protection claim, Count 14 does not squarely address equal protection at all.

Elsewhere in the Complaint, Plaintiffs suggest (but do not expressly allege) that each Individual Defendant denied them equal protection by retaining persons with vaccine immunity while separating only those with "natural immunity." *E.g.*, *id.* ¶¶ 426. Because this decision rationally relates to a legitimate governmental interest (i.e., public health), *see Slidewaters LLC*, 4 F.4th at 758, and does not concern a suspect class, the disparity is not actionable. *See, e.g.*, *Wise*,

---

[8] Although the quoted paragraphs appear in part of the Complaint describing Plaintiffs' *state* equal protection claim, they cite federal equal protection case law.

[9] CDC, *Monitoring Incidence of COVID-19 Cases, Hospitalizations, and Deaths, by Vaccination Status — 13 U.S. Jurisdictions, April 4–July 17, 2021* (Sept. 17, 2021), http://bit.ly/3YQ9tMM (last visited June 30, 2023).

DEFENDANTS' MOTION TO DISMISS - 18
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

2021 WL 4951571, at *3 ("[T]he State has a legitimate government interest in preventing the spread of COVID-19" and "[t]he Proclamation is rationally related to that interest because it is based on overwhelming evidence that the vaccines are safe and effective"); *Bauer*, 568 F. Supp. 3d at 597 (similar); *Williams v. Brown*, 567 F. Supp. 3d 1213, 1227 (D. Or. 2021) (similar).

Third, the Individual Defendants are entitled to qualified immunity on Plaintiffs' equal protection claim, too. Plaintiffs have failed to plausibly allege that any Individual Defendant engaged in conduct that violated Plaintiffs' equal protection rights under clearly established law. Indeed, Plaintiffs have failed to allege a plausible equal protection violation by *anyone*.

### 5. The Contracts Clause claim should be dismissed (Claim 7)

The deficiencies in Plaintiffs' Contracts Clause claim follow the same pattern as their other federal constitutional claims. First, in arguing that the Proclamation imposed a "new condition of employment that was not part of Plaintiffs' contract when hired," Plaintiffs are again making a facial challenge to the validity of the Proclamation under the Contracts Clause. Compl. ¶ 527. And again, this Court and others have correctly rejected that theory. In *Pilz*, this Court dismissed plaintiffs' Contracts Clause claim because they had not met either prong of the applicable two-part test: "Plaintiffs have not satisfied the first prong of the Contracts Clause test—that the Proclamation imposes a substantial impairment on their contractual relationship with the state." 2022 WL 1719172, at *6. And "Plaintiffs fail the second prong of the Contracts Clause test, requiring that the law be 'drawn in an appropriate and reasonable way to advance a significant and legitimate public interest.'" *Id.* (quoting *Apt. Ass'n of L.A. Cnty., Inc. v. City of L.A.*, 10 F.4th 905, 913 (9th Cir. 2021)). The *Wise* court also reached the same conclusion, concluding that "there is no doubt that it is an appropriate and reasonable way to advance a significant and legitimate public purpose, which is curbing the spread of COVID-19." 2022 WL 1243662, at *7.[10] Plaintiffs have

---

[10] As in *Wise*, Plaintiffs "have not provided copies of their collective bargaining agreements or stated the material provisions that have allegedly been modified" as a result of the Proclamation. 2022 WL 1243662, at *6. Thus, the Court should "not go on a fishing expedition to parse out Plaintiffs' arguments" on their Contracts Clause claim. *Id.*

DEFENDANTS' MOTION TO DISMISS - 19
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

provided no reason to depart from these courts' reasoned judgments.

Second, and once again, Plaintiffs do not allege that the Individual Defendants personally participated in any Contracts Clause violation. Nor could they plausibly do so if—as it appears— Plaintiffs' theory is that the Proclamation itself violated the Contracts Clause by imposing a "new condition of employment." Compl. ¶ 527. Some of the Individual Defendants were involved in WSDOT's implementation of the Proclamation, but Plaintiffs do not allege that any of them were responsible or involved in the Governor's *issuance* of the Proclamation. Thus, any personal participation by the Individual Defendants in an alleged Contract Clause violation is not only absent from the Complaint but incompatible with Plaintiffs' legal theory.

Third, the Individual Defendants are also entitled to qualified immunity from the Contracts Clause claim. As explained above, the Complaint does not plausibly allege that Plaintiffs' "clearly established" rights under the Contract Clause were violated—let alone that they were violated through the Individual Defendants' conduct.

### 6. The takings claim should be dismissed (Claim 13)

Plaintiffs' federal takings claim fails for the simple reason that government employees sued in their individual capacity cannot be liable under the Takings Clause. *See, e.g.*, *Langdon v. Swain*, 29 F. App'x 171, 172 (4th Cir. 2002); *Vicory v. Walton*, 730 F.2d 466, 467 (6th Cir. 1984); *Ordonez v. Stanley*, 495 F. Supp. 3d 855, 865 (C.D. Cal. 2020); *Bridge Aina Le'a, LLC v. State of Haw.*, 125 F. Supp. 3d 1051, 1078–79 (D. Haw. 2015); *see also Hinkle Family Fun Ctr., LLC v. Grisham*, No. 22-2028, 2022 WL 17972138, at *4 (10th Cir. Dec. 28, 2022) (unpublished), *cert. denied sub nom. Hinkle Family Fun Ctr. v. Grisham*, No. 22-1062, 2023 WL 3937631 (U.S. June 12, 2023) (noting "substantial support for the district court's" conclusion that a takings "claim cannot be brought against government officials in their individual capacities" and that "[w]e are not aware of any circuit court that has explicitly held that a takings action can be brought against a state official in an individual capacity").

Even if Plaintiffs could assert a takings claim against the Individual Defendants, it would fail as a matter of law. To establish a taking, the plaintiff must show that the government, by some

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

specific action, took a private property interest for a public use without just compensation. *Hodel v. Va. Surface Mining & Reclamation Ass'n,* 452 U.S. 264, 294 (1981). Plaintiffs were separated from their positions with WSDOT because they failed to meet a condition of employment. Thus, Plaintiffs could not have had a property interest in continued employment with WSDOT. Property interests "are created and their dimensions defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972). "To have a property interest in a benefit," one "must . . . have a legitimate claim of entitlement to it. *Id.* Plaintiffs give no reason why they had a property interest in continued employment with WSDOT when they failed to fulfill a job requirement imposed by law. Moreover, even if Plaintiffs could assert a property interest in continued employment, however, they fail to allege (and factually cannot show) that their loss of employment resulted in a taking *for a public use*. *Kirk v. Hockenberry*, No. 1:14-cv-713, 2016 WL374433, at *4 (S.D. Ohio Feb. 1, 2016) ("[E]ven assuming that Plaintiffs' job was 'taken' when [they] [were] terminated, in no way was [their] former job taken for 'public use.'").

In addition to those reasons unique to the Takings Clause, Plaintiffs' takings claim fails for some of the same reasons as their other constitutional claims. The Complaint does not allege facts establishing the Individual Defendants' personal participation in any takings violation. It is difficult to even imagine how the Individual Defendants could have violated the Takings Clause in their individual capacities since the "nature of a taking is that a public entity is taking private property for a public purpose, and must provide just compensation in return." *Bridge Aina Le'a*, 125 F. Supp. 3d at 1078. This concept is fundamentally "inconsistent with the notion that someone acting in an individual capacity has taken property or could be personally liable for a taking"— which is why most courts do not permit § 1983 claims against state officials for alleged takings in the first place. *Id.*

Finally, the Individual Defendants are entitled to qualified immunity from Plaintiffs' takings claim given the lack of a "clearly established" law demonstrating that the Individual

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

Defendants' conduct violated the Takings Clause.

### C.    Plaintiffs' Employment Discrimination Claims Fail

Plaintiffs bring the following state law employment discrimination claims: (i) a WLAD claim based on perceived disability (Claim 1); (ii) a WLAD claim based on failure to accommodate Plaintiffs' religious beliefs and disabilities (Claim 8); (iii) a WLAD claim based on disparate impact (Claim 9); and (iv) a public policy tort claim against religious discrimination (Claim 12). Each of these claims fails as a matter of law.

### 1.   The WLAD "perceived disability" claim fails as a matter of law (Claim 1)

Plaintiffs allege that their refusal to comply with the Proclamation and receive vaccinations against COVID-19 was perceived as a disability by WSDOT and that they were separated from their positions with the agency based on this perceived disability. *See* Compl. ¶¶ 457–68. "To establish a disability discrimination claim under the WLAD, [Plaintiffs] must show (1) that [they were] perceived to have a disability; (2) that [they were] able to perform the essential functions of the job; and (3) that the perception of [their] disability was a substantial factor in [WSDOT's] decision to deny [them] employment." *Taylor v. Burlington N. R.R. Holdings Inc.*, 801 F. App'x 477, 478 (9th Cir. 2020). "Under the WLAD, a disability 'means the presence of a sensory, mental, or physical impairment that: [1] [i]s medically cognizable or diagnosable; or [2] [e]xists as a record or history; or [3] [i]s perceived to exist whether or not it exists in fact.'" *Thomas v. City of Spokane*, No. CV-12-0156-EFS, 2013 WL 1346988, at *6 (E.D. Wash. Apr. 3, 2013) (citing RCW 49.60.040(7)(a).

As an initial matter, Plaintiffs were not singled out by WSDOT to be vaccinated against COVID-19—rather, all state employees were required to be vaccinated or receive an exemption and, thus, the policy "[did] not hinge on any assessment of disability of perceived impairment." *Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL 1472022, at *4 (D. Md. Feb. 2, 2023) (employer's "decision to protect its workplace by requiring its employees to attest to their vaccination status . . . does not plausibly reflect a determination or belief that any of its employees are disabled or impaired"); *see also Leggo v. M.C. Dean, Inc.*, No. 1:22-cv-374

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

(LMB/IDD), 2023 WL 1822383, at \*4 (E.D. Va. Feb. 7, 2023) (where COVID-19 policy was "generally applicable" to all employees, it "[did] not plausibly reflect a determination or belief that any of its employees are disabled or impaired").[11]

Plaintiffs describe their perceived disability as "not having the best protection against COVID-19 in their bodies." Compl. ¶ 464. But courts have uniformly concluded that a refusal to be vaccinated cannot be considered a disability. *See, e.g.*, *Gallo v. Washington Nationals Baseball Club, LLC*, No. 22-CV-01092 (APM), 2023 WL 2455678, at \*4 (D.D.C. Mar. 10, 2023) (collecting cases) (stating that "[e]very court that has considered this question has held the same" and found no perceived disability where plaintiff refused to be vaccinated); *Schneider v. Cnty. of Fairfax*, No. 1:22-cv-871 (LMB/WEF), 2023 WL 2333305, at \*4 (E.D. Va. Mar. 2, 2023) (noting that "[t]his theory of liability has been rejected by multiple courts . . . around the country"); *Speaks v. Health Sys. Mgmt., Inc.*, No. 5:22-CV-00077-KDB-DCK, 2022 WL 3448649, at \*5 (W.D.N.C. Aug. 17, 2022) ("[I]nferring that the Company classified [Plaintiff] as impaired by requiring her to become vaccinated or seek an exemption would mean that [Employer] considered all its employees to have an 'impairment,' which is of course not a plausible inference, particularly in light of the possibility of an exemption").

Further, Plaintiffs have not plausibly alleged facts establishing the third element of their disability discrimination claim—that their supposed perceived disability was a substantial factor in their separations from WSDOT. Rather, the Complaint makes clear that Plaintiffs were separated from the agency due to their personal decision not to comply with the Proclamation. WSDOT had a legal duty to comply with the Proclamation, which required state employees to be vaccinated against COVID-19 unless they received a reasonable accommodation. Compl. ¶ 159. None of the Plaintiffs were vaccinated against COVID-19 or received an accommodation by the

---

[11] Washington courts "look to federal case law interpreting [the Americans With Disabilities Act (ADA) and Title VII] to guide [their] interpretation of the WLAD." *Kumar v. Gate Gourmet Kumar v. Gate Gourmet Inc.*, 325 P.3d 193, 197 (Wash. 2014); *see also Poe v. Waste Connections US, Inc.*, 371 F. Supp. 3d 901, 909 (W.D. Wash. 2019) (same) (citing *Taylor v. Burlington N. R.R. Holdings Inc.*, 904 F.3d 846, 848–49 (9th Cir. 2018)).

DEFENDANTS' MOTION TO DISMISS - 23
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

deadline. *See id.* ¶¶ 71–74. As a result, all Plaintiffs were separated from their positions at WSDOT due to their failure to comply with a requirement of their job, and not as a result of any perceived disability. *See, e.g.*, *Wise*, 2022 WL 1243662, at *8 (dismissing Title VII and § 1983 claims because "there is no indication that Plaintiffs faced adverse employment decisions due to their sincerely held religious beliefs rather than a failure to comply with the Proclamation"); *Speaks*, 2022 WL 3448649, at *5 ("Refusing to get a vaccine required by an employer is not itself an 'impairment' of any sort. Rather, it reflects a personal *choice* by [Plaintiff] that, while hers to make in this context, cannot be considered an impairment.").

### 2.  The WLAD failure-to-accommodate claims fail as a matter of law (Claim 8)

Plaintiffs also allege that Defendants violated the WLAD by failing to afford religious or medical accommodations of their refusal to be vaccinated against COVID-19. *See* ¶¶ 534–45. Plaintiffs lump together the claims of employees who sought religious accommodations with those who sought medical accommodations, even though different standards govern. Under each standard, however, all Plaintiffs' claims fail as a matter of law.

As for the 58 Plaintiffs who claim that their opposition to the COVID-19 vaccines is based on sincerely held religious beliefs, to "state a cause of action for failure to accommodate [a religious belief] plaintiff must make a *prima facie* showing that "(1) he had a bona fide religious belief, the practice of which conflicts with an employment duty; (2) he informed his employer of the belief and conflict; and (3) the employer discharged, threatened, or otherwise subjected him to an adverse employment action because of his inability to fulfill the job requirement." *Yousefi v. Delta Elec. Motors, Inc.*, No. C13-1632RSL, 2014 WL 6460826, at *1 (W.D. Wash. Nov. 17, 2014) (cleaned up).[12]

Plaintiffs fail as to the first element because the Complaint does not identify any of Plaintiffs' pertinent beliefs whatsoever. Although Plaintiffs allege that they requested religious

---

[12] The elements of a religious discrimination claim are the same under WLAD and Title VII. *See Black v. Grant Cnty. Pub. Util. Dist.*, No. 2:17-CV-365-RMP, 2019 WL 2617236, at *7 (E.D. Wash. June 26, 2019), *aff'd in part and rev'd in part on other grounds*, 820 F. App'x 547 (9th Cir. 2020).

DEFENDANTS' MOTION TO DISMISS - 24
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

exemptions and accommodation, the Complaint contains not a single allegation as to what beliefs any Plaintiffs actually hold that prevent them from receiving the COVID-19 vaccines. Thus, they have failed to state a prima facie claim of religious discrimination under the WLAD. *See, e.g.*, *Turner v. Ass'n of Apartment Owners of Wailea Point Vill.*, 739 F. App'x 874, 877 (9th Cir. 2018) (affirming grant of summary judgment on Title VII claim because plaintiff could not establish actual conflict between religious belief and work requirement); *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (affirming dismissal where plaintiff had "not alleged any particulars about her religion that would even allow an inference that she was discriminated against on account of her religion"); *Blackwell v. Lehigh Valley Health Network*, No. 5:22-CV-03360-JMG, 2023 WL 362392, at *6 (E.D. Pa. Jan. 23, 2023) ("Importantly, an employee's complaint must provide sufficient information about the nature of the employee's beliefs in order to state a claim for Title VII religious discrimination."). *McKinley v. Princeton Univ.*, No. 22-5069 (MAS) (TJB), 2023 WL 3168026, at *2 (D.N.J. Apr. 28, 2023) ("Without Plaintiff providing facts showing what sincerely held religious belief she holds that prevented her from complying with the COVID-19 Policies, Plaintiff fails to adequately allege a cognizable claim for religious discrimination . . . ."); *Troulliet v. Gray Media Grp., Inc.*, No. CV 22-5256, 2023 WL 2894707, at *4 (E.D. La. Apr. 11, 2023) (dismissing Title VII claim where plaintiff "summarily states that the COVID-19 vaccine violates her religious beliefs" but "does not allege what those beliefs are or what religion or church she is a member of, or even that she believes in any particular higher power," nor "reference any religious teachings or scripture").

As to the three Plaintiffs who sought medical accommodations, "[t]o establish a prima facie case for failure to reasonably accommodate a disability, the employee must show that (1) he or she had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) he or she was qualified to do the job; (3) he or she gave the employer notice of the abnormality and its substantial limitations; and (4) after notice, the employer failed to adopt available measures that were medically necessary to accommodate the abnormality." *Becker v. Cashman*, 114 P.3d 1210, 1213 (Wash. Ct. App. 2005). Similar to those seeking religious

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

accommodations, the Plaintiffs seeking medical accommodations failed to allege any facts about their medical disabilities that purportedly preclude them from meeting the job requirement of being vaccinated against COVID-19. The Complaint also fails to allege facts supporting the third and fourth elements of their prima facie case. These omissions, too, are fatal to their claims.

### 3.   The WLAD disparate impact claim fails as a matter of law (Claim 9)

"To establish a prima facie case of disparate impact, the plaintiff must prove: (1) a facially neutral employment practice, (2) falls more harshly on a protected class." *Oliver v. Pac. Nw. Bell Tel. Co.*, 724 P.2d 1003, 1006 (Wash. 1986). Plaintiffs allege that, even though the Proclamation is facially neutral, "it falls more harshly upon those within a protected class"—but without elaborating as to what characteristics make up this supposed "protected class." Compl. ¶ 547. Plaintiffs' individual circumstances differ considerably from one another. They include (1) those who have been granted a religious exemption but were denied an accommodation, (2) those who have been granted a medical exemption but were denied accommodation, (3) those who were granted both medical and religious exemptions but were denied accommodation, (4) those who were not granted any exemption, and (5) those who did not even seek any exemption. *See* Compl. ¶¶ 7–66. As such, Plaintiffs have failed to plausibly allege that they fall into an identifiable "protected class" on which the Proclamation had a disparate impact. *See, e.g.*, *Dunbar v. Walt Disney Co.*, No. CV 22-1075-DMG (JCx), 2022 WL 18357775, at *2–3  (C.D. Cal. July 25, 2022) (dismissing disparate impact challenge to employee vaccination policy because plaintiff did not "allege specific facts from which a reasonable inference can be drawn that an employment practice broadly impacts a certain *group* in an adverse manner" and noting that "courts generally treat disparate impact claims as those affecting particular groups or faiths, including articulable sub-groups, but *not all those who share a single common belief*) (second emphasis added) (citing inter alia *Akiyama v. U.S. Judo Inc.*, 181 F. Supp. 2d 1179, 1186 (W.D. Wash. 2002)).

Plaintiffs have failed to allege facts establishing that all of them—or even a subset of them—fall into a discrete "protected class" that was disproportionately and adversely affected by the Proclamation. Instead, they have simply restated the elements of a disparate impact claim,

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

which is insufficient to sustain their claim. *Iqbal*, 556 U.S. at 678 ("[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient); *see also Rocha v. King Cnty.*, 435 P.3d 325, 329 (Wash. Ct. App. 2019), *aff'd*, 460 P.3d 624 (Wash. 2020) (no WLAD claim where plaintiffs failed to plead a protected class).

### 4.   The public policy tort claim fails as a matter of law (Claim 12)

The tort of "wrongful discharge in violation of public policy" is a "narrow exception to the at-will doctrine" of employment in Washington. *Becker v. Cmty. Health Sys., Inc.*, 359 P.3d 746, 749 (Wash. 2015). Because the Washington Supreme Court "construes this tort exception narrowly, wrongful discharge claims have generally been limited to four scenarios" only: when "employees are fired" (1) "for refusing to commit an illegal act"; (2) "for performing a public duty or obligation, such as serving jury duty"; (3) "for exercising a legal right or privilege"; and (4) "in retaliation for reporting employer misconduct, i.e., whistleblowing." *Id.* Where the alleged conduct falls within one of these categories, plaintiffs "establish[] a prima facie case of wrongful discharge in violation of public policy by showing that (1) [their] discharge may have been motivated by reasons that contravene a clear mandate of public policy; and (2) [their] public-policy-linked conduct was a significant factor in the decision to discharge [them]." *Bell v. Boeing Co.*, 599 F. Supp. 3d 1052, 1079 (W.D. Wash. 2022). Courts apply the same burden-shifting framework that governs statutory employment discrimination claims. *Id.* at 1080; *Mackey v. Home Depot USA, Inc.*, 459 P.3d 371, 386 (Wash. Ct. App. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)); *Martin v. Gonzaga Univ.*, 425 P.3d 837, 844–45 (Wash. 2018). That framework "places the initial burden on the employee to establish a prima faci[e] case of discrimination." *Bell*, 599 F. Supp. 3d at 1072. If met, the burden then "shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Id.* at 1072–73 (cleaned up). If the employer meets that burden, "the employee must produce sufficient evidence to show that the employer's purported nondiscriminatory reason for the adverse employment action was pretextual." *Id.* at 1073.

Here, Plaintiffs' wrongful discharge claim fails at both the prima facie stage and the pretext

DEFENDANTS' MOTION TO DISMISS - 27
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

stage. Plaintiffs allege that they were terminated "for practicing their religion, which is a legal right." Compl. ¶ 573. Thus, Plaintiffs have the burden of establishing a prima facie case of religious discrimination. *See Bell*, 599 F. Supp. 3d at 1072. For the reasons explained above in the context of Plaintiffs' WLAD failure-to-accommodate claim, they have failed to allege the most basic elements of their prima facie case—namely, that their opposition to the vaccination requirement was based on a sincerely held religious belief. *See supra* III.C.2. Further, WSDOT plainly had a legitimate nondiscriminatory reason for terminating Plaintiffs' employment: it is undisputed that Plaintiffs neither were vaccinated against COVID-19 nor had received an accommodation from the Proclamation, and were therefore legally ineligible to continue working in their jobs. *See, e.g.*, *Wise*, 2022 WL 1243662, at *8. Plaintiffs have alleged no facts suggesting that this legitimate, nondiscriminatory reason was a pretext for religious animus. To the contrary, the facts as alleged in the Complaint indicate that all Plaintiffs were separated from WSDOT for the simple reason that, pursuant to the Proclamation, they were not legally eligible to continue working for the agency. *See supra* III.D. As such, Plaintiffs' public policy tort claim fails as a matter of law.

### D.    Plaintiffs' State Constitutional Claims Should Be Dismissed (Claims 2–5, 7)

Plaintiffs bring five claims under the Washington Constitution: (i) deprivation of privacy (Claim 2); (ii) due process (Claim 3); (iii) equal protection (Claim 4); (iv) deprivation of religious freedom (Claim 5); and (v) impairment of contracts (Claim 7). As an initial matter, these claims must be dismissed because "there is not a private right of action, akin to a § 1983 claim for violations of federal constitutional rights, available under the Washington Constitution." *White v. Shaffer*, No. C13-5952 RBL, 2014 WL 1116735, at *2 (W.D. Wash. Mar. 20, 2014); *Blinka v. Wash. State Bar Ass'n*, 36 P.3d 1094, 1102 (Wash. Ct. App. 2001) ("Washington courts have consistently rejected invitations to establish a cause of action for damages based upon constitutional violations without the aid of augmentative legislation.") (cleaned up). This well-established principle defeats each of Plaintiffs' five state constitutional claims for damages at the threshold. Moreover, as explained below, even if state law afforded a remedy for these claims,

DEFENDANTS' MOTION TO DISMISS - 28
3:23-cv-05418-DGE

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

each would fail on the merits because Plaintiffs' have not plausibly alleged that Defendants' conduct violated any state constitutional right.

### 1.  The due process, equal protection, and contracts clause claims fail as a matter of law because they are coextensive with their federal counterparts (Claims 3, 4, 7)

Even if Plaintiffs could bring due process, equal protection, and contracts clause claims under the state constitution for money damages, Washington courts treat those provisions of the state constitution as coextensive with their federal constitutional counterparts. *See, e.g.*, *Amunrud v. Bd. of Appeals*, 143 P.3d 571, 574 n.2 (Wash. 2006), *abrogated on other grounds by Yim v. City of Seattle*, 451 P.3d 694 (2019) (due process); *State v. Manussier*, 921 P.2d 473, 482 (Wash. 1996) (equal protection); *Kellogg v. Nat'l R.R. Passenger Corp.*, 504 P.3d 796, 809 (Wash. 2022) (contracts clause). Thus, these state claims would fail for the same reasons that their corresponding federal claims fail. *See supra* subsections III.B.3–5.

### 2.  The Proclamation does not violate Plaintiffs' right to privacy (Claim 2)

Even if Plaintiffs could bring a right to privacy claim under article I, § 7 of the Washington Constitution, this claim would fail because "while Plaintiff[s] ha[ve] a fundamental right to privacy, [they do] not have a fundamental right to refuse a vaccine." *Jensen v. Biden*, No. 4:21-CV-5119-TOR, 2021 WL 10280395, at *8 (E.D. Wash. Nov. 19, 2021); *see also Griner v. Biden*, No. 2:22CV149 DAK-DBP, 2022 WL 7501065, at *7 (D. Utah Oct. 13, 2022) ("Under case law that has been in place for more than a hundred years . . . there is no fundamental right to refuse vaccination."). Here, the Proclamation "does not require individuals to get vaccinated; it simply creates employment requirements for certain state workers." *Jensen*, 2021 WL 10280395, at *8; *see Pilz*, 2022 WL 1719172, at *8 ("The Proclamation does not compel anyone to be vaccinated without their consent. Plaintiffs had a choice: get vaccinated and continue working for the state or remain unvaccinated and work elsewhere."). Nothing in the Proclamation or WSDOT's implementation of it deprived Plaintiffs of their right to make their own medical decisions.

### 3.  The religious freedom claim fails as a matter of law (Claim 5)

Likewise, Plaintiffs cannot bring a religious freedom claim for damages under article I,

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

section 11 of the Washington Constitution, and regardless such a claim would fail for largely the same reasons their federal free exercise claim fails. *See supra* subsection III.D.1; *see also Open Door Baptist Church v. Clark Cnty.*, 995 P.2d 33, 43 (Wash. 2000) ("[W]e can also look to the reasoning of opinions construing the Free Exercise Clause of the First Amendment for persuasive guidance."). Among other reasons, the Proclamation was facially neutral and generally applicable. *See Cox v. Glebe*, No. C13-5073 RBL-JRC, 2013 WL 1944524, at \*6 (W.D. Wash. Mar. 29, 2013), *report and recommendation adopted*, 2013 WL 1944581 (W.D. Wash. May 9, 2013) (dismissing article I, section 11 claim where the policy at issue had "a secular purpose").[13]

### E.    Plaintiffs' Other State Law Claims Should Be Dismissed

Finally, Plaintiffs also bring two other claims under state law—a statutory wage theft claim (Claim 6) and a claim alleging arbitrary and capricious agency action (Claim 11). These claims should be dismissed as well.

#### 1.   The wage theft claim fails as a matter of law (Claim 6)

Plaintiffs allege that WSDOT's nonpayment of wages *following Plaintiffs' separation from WSDOT* supports a statutory wage theft claim. *See* Compl. ¶¶ 514–22. But WSDOT had no obligation to pay Plaintiffs' salaries following their lawful separations from employment.

The Washington Wage Rebate Act states that an employer is liable when it "[w]illfully and

---

[13] There is some uncertainty as to the relationship between the federal Free Exercise Clause and article I, section 11 of the Washington Constitution. Surveying its past cases, the Washington Supreme Court recently observed that "neutral health and safety regulation[s]" have uniformly been upheld "[u]nder our long-standing precedent," even when applying "strict scrutiny"—"the test that we then assumed was required." *State v. Arlene's Flowers and Gifts, Inc.*, 441 P.3d 1203, 1234 (Wash. 2019). Again "assum[ing] without deciding that strict scrutiny applies" under Article I, Section 11, *Arlene's Flowers* held that the law before it (the WLAD) also "satisfies that standard." *Id.* at 531–32. Like the many other "neutral health and safety regulation[s]" upheld over the years, the Proclamation passes muster under article I, section 11, even if strict scrutiny applied. Under that standard, a law is constitutional if it "serves a compelling government interest" and "is the least restrictive means of achieving that interest." *Id.* As multiple courts have held, COVID-19 vaccination requirements meet both prongs. *See, e.g.*, *Mattila v. City of Seattle*, No. 22-2-14316-9 (King Cnty. Super. Ct. Oct. 12, 2022) (denying motion for preliminary injunction against vaccine mandate for municipal employees and concluding that plaintiffs were unlikely to prevail on article I, section 11 claim); *Cleary v. Inslee*, No. 21-2-01674-34 (Thurston Cnty. Super Ct. Dec. 10, 2021) (dismissing article I, section 11 claim in facial challenge to the Proclamation). The *Mattila* and *Cleary* orders are attached as Exhibits A and B, respectively, to the Declaration of Zachary J. Pekelis.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

with intent to deprive the employee of any part of his or her wages, shall pay any employee a lower wage than the wage such employer is *obligated to pay* such employee by any statute, ordinance, or contract." RCW 49.52.050(2) (emphasis added). Under the statute, the employer's "genuine belief that he is not obligated to pay certain wages precludes the withholding of wages from falling within the operation of RCW 49.52.050(2)." *McMinimee v. Yakima Sch. Dist. No. 7*, No. 1:18-CV-3073-TOR, 2019 WL 11680199, at *10 (E.D. Wash. Aug. 7, 2019) (cleaned up). "In other words, a willful withholding [is] . . . not the result of a bona fide dispute as to the obligation of payment." *Id.* (cleaned up).

Here, all Plaintiffs were separated from employment with WSDOT because they failed to comply with the Proclamation that required they be vaccinated or receive an accommodation. *See* Compl. ¶¶ 7–66. Following Plaintiffs' separation, WSDOT no longer had a legal obligation to pay them wages. Any other conclusion would be illogical. Because WSDOT had no obligation to pay Plaintiffs' wages following separation, Plaintiffs' wage theft claim for "wages . . . since the date of their respective terminations" must fail. *Id. ¶ 516; see Gunsul v. Boeing Co.*, No. C15-95RAJ, 2015 WL 11254742, at *4 (W.D. Wash. June 24, 2015) (dismissing wage theft claim based on "lost" wages after employee was terminated).

### 2. The "arbitrary and capricious" claim fails as a matter of law (Claim 11)

Plaintiffs allege that "the 'vaccinate or terminate' policy . . . is arbitrary and capricious" because the "latest guidance" supports that "vaccines do not prevent transmission." Compl. ¶ 567. An arbitrary and capricious action is a "willful and unreasoning action, without consideration and in disregard of facts and circumstances." *City of Everett v. Pub. Emp. Rels. Comm'n*, 451 P.3d 347, 358–59 (Wash. Ct. App. 2019) (cleaned up). "Where there is room for two opinions, an action taken after due consideration is not arbitrary and capricious even though a reviewing court may believe it to be erroneous." *Garcia v. Dep't of Soc. & Health Servs.*, 451 P.3d 1107, 1124 (Wash. Ct. App. 2019). The scope of review is "very narrow" and Plaintiffs seeking to show that agency action was arbitrary and capricious carry a "heavy burden." *Pierce Cnty. Sheriff v. Civ. Serv. Comm'n of Pierce Cnty.*, 658 P.2d 648, 651 (Wash. 1983). Plaintiffs fail to allege facts sufficient

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

to meet this heavy burden.

WSDOT adopted its policy requiring that Plaintiffs be vaccinated or receive an accommodation to comply with the Proclamation—an emergency public health order that has been repeatedly been upheld as lawful. *See supra* Section II.B. WSDOT's compliance with this statewide mandate can hardly be considered an arbitrary and capricious action. Further, as discussed above, the Proclamation was issued during a surge in COVID-19 cases due to the highly contagious Delta variant. *See id.* Data from the CDC indicated that, although the COVID-19 vaccines did not completely prevent transmission, vaccination was highly effective in preventing the spread of COVID-19 and instances of severe disease. *See id.* Therefore, the Proclamation was reasonably based on existing facts and circumstances and was in no way a "willful and unreasoning" action. *See Klimovich v. State, Dep't of Soc. & Health Servs.*, No. 69938-5-I, 2014 WL 3930455, at *8 (Wash. Ct. App. Aug. 11, 2014) (unpublished) (termination of contracts was not arbitrary and capricious and "neither the existence of contradictory evidence nor the possibility of deriving conflicting conclusions from the evidence renders an agency decision arbitrary and capricious"); *Alpha Kappa Lambda Fraternity v. Wash. State Univ.*, 216 P.3d 451, 462 (Wash. Ct. App. 2009) (sanction was not arbitrary and capricious where it was "based on substantial evidence"); *Lang v. Wash. State Dep't of Health*, 156 P.3d 919, 930 (Wash. Ct. App. 2007) (sanction was not arbitrary and capricious "[g]iven the serious risk to the public").

## IV.      CONCLUSION

For the reasons above, Defendants respectfully request that the Court dismiss the Complaint.

I certify that this memorandum contains 11, 970 words, in compliance with the Local Civil Rules and this Court's Order Granting Defendant's Motion to Exceed the Word Limits, Dkt. #15.

PACIFICA LAW GROUP LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750

DATED this 30th day of June, 2023.

PACIFICA LAW GROUP LLP

By:  */s/Zachary J. Pekelis*
Zachary J. Pekelis, WSBA # 44557
Kai A. Smith, WSBA #54749
Special Assistant Attorneys General
1191 Second Avenue, Suite 2000
Seattle, WA 98101
Zach.pekelis@pacificalawgroup.com
Kai.Smith@pacificalawgroup.com

*Counsel for Defendants*

DEFENDANTS' MOTION TO DISMISS - 33
3:23-cv-05418-DGE

PACIFICA LAW GROUP  LLP
1191 SECOND AVENUE
SUITE 2000
SEATTLE, WASHINGTON  98101-3404
TELEPHONE: (206) 245-1700
FACSIMILE: (206) 245-1750