**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

| | |
|---|---|
| GEOFFREY GRAY, *et al.*, | **CASE NO. 3:23-cv-05418-DGE** |
| Plaintiffs, | PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS |
| v. | |
| WASHINGTON STATE DEPARTMENT OF TRANSPORTATION, *et al.*, | NOTED ON MOTION CALENDAR: JULY 28, 2023 |
| Defendants. | *ORAL ARGUMENT REQUESTED* |

## I.    INTRODUCTION AND RELIEF REQUESTED

Defendants, the Washington State Department of Transportation (WSDOT) and certain of its officers, covertly created and carried out a blanket policy of denying all accommodations to supposedly public-facing employees who concededly qualified for, and were granted, exemptions from the State's employee vaccination mandate. Because no accommodations were offered, or even seriously considered, all 60 Plaintiffs were wrongfully terminated from WSDOT employment. The question before this Court is whether any of the Plaintiffs have made—or at

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

1

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA  98052
(206) 799-4221

least could make after amendment—a plausible claim for relief based on being denied accommodation and terminated under Defendants' blanket policy.

Contrary to Defendants' repeated mischaracterizations of Plaintiffs' claims as a facial challenge to the Governor's Proclamation itself,[1] Plaintiffs do not seek to invalidate the limited vaccination mandate created by the now-withdrawn Proclamation; rather, they each seek individualized relief—damages—for wrongful termination based on Defendants' misinterpretation and *misapplication* of that mandate. They do not seek to hold the Defendants liable for the State-wide mandate in and of itself, but rather for creating and carrying out WSDOT's covert blanket policy, contrary to the terms of the mandate and applicable law (including Title VII and the Washington Law Against Discrimination) and wrongfully terminating Plaintiffs.

Plaintiffs are each entitled to reinstatement and compensation for their wrongful termination. At minimum, they deserve the opportunity to develop and try their claims. The Court, respectfully, should deny the motion to dismiss and allow the case to proceed to trial.

## II.    EVIDENCE RELIED UPON

Because Defendants have moved under Rule 12(b)(6), Plaintiffs rely on the facts as alleged in the four corners of their Complaint, ECF No. 1.

## III.    STATEMENT OF FACTS

Defendants are WSDOT, the Washington Secretary of Transportation, WSDOT's Human Resources Director and Human Resources Deputy Director, and a WSDOT Staff

---

[1] Defendants use the word "facial" 16 times in their brief, and reference 17 times this Court's decision in *Pilz et al. v. Inslee et al.,* Case No. 3:21-cv-05735 (currently on appeal before the 9th Circuit, No. 22-3508), a decision which explicitly ruled only on a facial challenge to the Proclamation.

Engineer, one Mark Nitchman, who was particularly eager to terminate non-vaccinated subordinates. Complaint ¶¶ 2–6. This case arose from Defendants' wrongful application to each Plaintiff of the State's limited vaccine mandate promulgated in Governor Inslee's Proclamation #20-14, issued on August 9, 2021 (with amendments issued as #21-14.1 and #21-14.2, the "Proclamation"). Complaint ¶¶ 1, 159. The Complaint does not challenge the Proclamation. Instead, Plaintiffs presume the Proclamation is valid and allege discriminatory application, where Defendants "created their own mandate within a mandate, establishing their own criteria [for accommodations]…that did not comply with the Proclamation or federal and state law." *Id.* ¶ 235.

Plaintiffs are 60 former employees of WSDOT. Complaint ¶¶ 7–66. Each sought an exemption to the vaccine mandate on religious and/or medical grounds. *Id.* WSDOT approved each Plaintiffs' exemption request, thus conceding the reality and sincerity of each Plaintiffs' religious objection and/or medical disability. *Id.* ¶ 73. And simultaneously, Defendants denied each Plaintiff any accommodation, without conducting any interactive dialogue or even considering whether accommodation would impose a net undue hardship. *Id.* ¶¶ 7–66, 76–78, 174–96, 202–204. An agent for WSDOT admitted that when considering **any** possible accommodation for employees who were deemed exempt from the vaccine mandate, WSDOT failed to evaluate whether accommodation would impose undue hardship on the agency, let alone a net undue hardship. *Id.* ¶ 183.

Although Defendants characterize the Proclamation as a prohibition on State employees from working without vaccination, Defendants concede that the Proclamation expressly incorporates anti-discrimination statutes, requiring State agencies to "conduct[] an

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

3

ARNOLD & JACOBOWITZ PLLC
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

individualized assessment and determination of each individual's need and justification for an accommodation" for each employee who sought an exemption. ECF No. 16, Def. Mot. at 16:12–14 (quoting Proclamation 21-14.2 at 5–6).[2] Despite this, Defendants wrongfully applied the Proclamation by failing to provide the required individualized assessments and determinations. Defendants likewise rejected clear guidance of OFM regarding potential employment accommodations. Complaint ¶¶ 95–98, 144, 202, 217, 254–69, 282–86, 367–69, 540. For instance, OFM stated that "essential" job function must be truly essential, not "marginal," and must be a function, not merely a procedure. Instead, Defendants treated *any* task performed on the job as "essential functions." *Id.* ¶¶ 95–98.

Plaintiffs' as-applied claims are not unique. The arbitrators of grievances against other state agencies using the same faulty procedures as Defendants, issued four awards against those agencies for actions identical to Defendants' here. Complaint ¶¶ 434–51.[3]

WSDOT's EEOC-compliance officer wrongly told Plaintiffs that no interactive dialogue was even necessary "due to the size of the agency." Plaintiff Geoffrey Gray sent emails seeking correction of this defective procedure, but was ignored. Complaint ¶ 299. WSDOT admitted that in lieu of interactive dialogue, it relied on job descriptions. *Id.* ¶¶ 199, 333.

Admittedly, Defendants reviewed Plaintiffs' job descriptions for any hypothetical "public exposure," which when found, in their view, *per se* created an undue hardship and grounds for termination without any possible accommodation. Complaint ¶¶ 217, 250, 254, 279–

---

[2] Plaintiffs do not concede that the Proclamation went far enough in this regard, but facial challenges to the Proclamation are not before the Court in this action. Such challenges, brought by other former State employees, are now before the Court of Appeals in *Pilz v. Inslee*, 9th Cir. No. 22-35508.

[3] After this Complaint was filed, at least four more arbitration decisions reached similar findings and conclusions and awarded relief to additional wrongfully terminated Washington employees.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

4

ARNOLD & JACOBOWITZ PLLC
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

80, 309–10. Once Defendants determined potential public exposure existed, they rejected an accommodation dialogue because they had already predetermined the outcome, and the Plaintiff was terminated. *Id.* ¶¶ 216, 249, 253, 278-79, 308-309. Defendants claimed the exempt employee must "eliminate the risk" to avoid termination. *Id.* ¶ 230. The arbitrary and impossible standard of 100% risk elimination misapplies WLAD, Title VII, the ADA, and the Proclamation itself. *Id.* ¶¶ 230–31.

In short, instead of individually assessing possible accommodation in dialogue with each Plaintiff, Defendants reviewed job descriptions from distant HR offices, imagined hypothetical "public exposure" scenarios, and unilaterally withheld an accommodation process. Complaint ¶¶ 216, 249, 253, 278-79, 308–309, 326. Many of those job descriptions were s outdated and incorrect. *Id.* ¶¶ 210, 216, 306-13, 319-20, 323-26, 332. Defendants refused Plaintiffs' input on the "public exposure" determination, even though that determination stopped all further analysis and resulted in termination. Defendants thus created a process that bypassed employee participation. exemplified by WSDOT's arbitrary termination of teleworking employees (*e.g.*, Steve Turcott, *id.* ¶ 8) and those with natural immunity (*e.g.*, Andre Lyle, *id.* ¶ 11, and many others).

In reviewing inaccurate job descriptions, "Defendants did not have the knowledge or the experience of the jobs for which they were remotely and unilaterally determining whether an accommodation could be granted," exaggerating the potential risks associated with "public exposure." Complaint ¶¶ 320–32. Engaging in the required discussions would provide insight about Plaintiffs' job environments, real duties, task performance, and thus, reasonable accommodations. For example, ferry ventilation systems exchange air swiftly and completely

PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS
(Case No. 3:23-cv-05418)

5

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

to keep engines cool, which Defendants seemed unaware, and were unwilling to learn. *Id.* ¶ 326 n.17. Defendants' self-described "engine expert" had never worked as ferry crew. *Id.* ¶ 321. Plaintiff Chris Paneris "offered to perform a walk-through of his workspace in the engine room to educate those making the determination," but they refused. *Id.* ¶ 322. Thus, "all [ferry workers] were globally denied" accommodation, based on a misunderstanding of their work conditions. *Id.* ¶¶ 323–27.

OFM warns employers against hypothesizing hardships. Complaint ¶ 218. Defendants refused to consider that their imagined "public exposure" scenarios were "speculative, merely conceivable, or hypothetical." *Id.* ¶ 216 (quoting *Brown v. Polk County, Iowa,* 61 F.3d 650, 655 (8th Cir. 1995)). Defendants' arbitrary policy that "any public exposure" by a non-vaccinated employee however hypothetical, was grounds for termination, Complaint ¶¶ 217, 250, 254, 279–80, 309–10, has no basis in the Proclamation, WLAD, or Title VII. Their policy, in fact, is in direct conflict with those laws. *Id.* ¶¶ 231–32. Defendants thus effectively created their own "mandate within a mandate." *Id.* ¶ 235. This behind-the-scenes policy based on any hypothetical potential for public exposure, which Defendants divined without employee input or even accurate job descriptions, conflicted with the requirements of the Proclamation and, more relevantly, WLAD. *Id.* at ¶ 161.

Some medically-exempt employees were spared from the purge but hardly any religiously-exempt employees were. Complaint ¶¶ 166, 167, 172. Thus, when employees filled out WSDOT's forms to qualify for a religious exemption, they unwittingly identified themselves as members of a group to be terminated based on their religious belief. *Id.* ¶¶ 174–96. And

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

6

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Plaintiffs were, in fact, all terminated, purportedly for non-compliance with the Proclamation's vaccine mandate. *Id.* ¶¶ 7–66.

Each Plaintiff brings several claims based on their wrongful termination, for violation of their rights under the U.S. Constitution Equal Protection, Due Process, Takings, and Contracts clauses, for impairment of most Plaintiffs' Free Exercise of Religion Clause rights by way of 42 U.S.C. § 1983, and for violation of WLAD, Wash. Rev. Code § 49.60.180 (WLAD) by failure to accommodate and by way of disparate impact on a suspect class. Plaintiffs Bobby Dean, Shane Taylor, and Stephen Austin, all denied accommodation despite being granted exemptions based on medical issues, also claimed under WLAD for wrongful termination due to perceived physical disability. Complaint ¶¶ 14, 54, 59, 456–68.

## IV.    SUMMARY OF ARGUMENT

### WASHINGTON LAW AGAINST DISCRIMINATION AND TITLE VII[4]

Defendants created their own mandate within a mandate. They acted arbitrarily and capriciously when they ignored the requirements of the Proclamation, OFM and CDC guidance, and established a process and procedure designed to deny accommodations to all Plaintiffs.

Defendants readily concede they reviewed job descriptions in lieu of dialogue with Plaintiffs. HR representatives unfamiliar with job requirements and conditions, lacking subject matter expertise, superficially reviewed hundreds of job descriptions and decided arbitrarily whether a position would qualify for an accommodation. Their decision was final and *not* individualized, empirically based, or collaborative.

---

[4] WLAD provides broader protection than Title VII of the Civil Rights Act of 1964, but was generally patterned after Title VII, so interpretations of Title VII are instructive regarding WLAD. *Oliver v. Pac. Nw. Bell Tel. Co.,* 106 Wash. 2d 675, 678, 724 P.2d 1003, 1005 (1986).

In only one paragraph of their Motion do Defendants even mention "undue hardship," *see* Def. Mot. at 7:1-8, the lynchpin to denial of accommodation under WLAD, and they fail to explain or cite authority to show that accommodation would have imposed an "undue hardship." This omission is especially egregious in light of a significant opinion issued by the United States Supreme Court the day before Defendants filed their Motion, holding "undue hardship" means more than *de minimis*, and requires a showing that a burden is "substantial in the overall context of an employer's business," based on a "fact specific inquiry." *Groff v. DeJoy*, 600 U.S.---, 143 S. Ct. 2279, 2294 (June 29, 2023). Defendants got it exactly backwards when they asserted that they did not need individualized consideration to find "undue hardship."

Many of the job descriptions allegedly reviewed were outdated, mismatched, or simply inaccurate. Without the "exempt" employees' input, Defendants scoured these job descriptions for any terminology suggesting potential "public exposure." They fabricated a standard, "eliminate the risk," and concluded that any potential for public exposure would fail the standard and automatically trigger termination without accommodation. Potential risk was WSDOT's supposed "hardship." No requirement to "eliminat[e] risk" or eliminate "public exposure" is found in the Proclamation, ADA or WLAD, or in any OFM or CDC guidance; quite the reverse.

Without interactive dialogue, decisions were made which Plaintiffs had no opportunity to protest, dispute, or appeal. The process, by design, excluded them from participation. Plaintiffs applied for a religious exemption and waited for an accommodation process, only to receive a first-and-final notice that although their religious and/or medical exemption had been approved, they were summarily denied an accommodation without discussion or recourse. Defendants claimed Plaintiffs were a threat, but not one Plaintiff had any case of COVID-19

traced to them while using protective protocols during the prior 18 months.  Complaint ¶ 288.

Plaintiffs could not have "eliminated the risk" any more successfully. *Id.* ¶ 286.

Defendants' speculative, contrived hardship pretext also fails because the undue-hardship standard requires the defendant to show "that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff,* 143 S. Ct. at 2295 (citing *Trans World Airlines, Inc. v. Hardison,* 432 U.S. 63, 83, n.14, 97 S. Ct. 2264 (1977)).  The Complaint, however, alleges as to each Plaintiff that accommodation would not have imposed undue hardship and/or undue burdens.  Complaint ¶¶ 7–66.  That alone prevents dismissal.  Moreover, Defendants failed to balance the detriment to the health and safety of the citizens of the state from decreased services due to catastrophic staffing shortages. Complaint ¶¶ 373, 375, 379, 384.

Defendants' defective process violated WLAD and Title VII as alleged in the Complaint, which states a cause of action, preventing a Rule 12 dismissal.

## CONSTITUTIONAL ARGUMENTS

Contrary to Defendants' characterization, Plaintiffs are not bringing a facial challenge to the Proclamation but seek damages for Defendants' misapplication of the Proclamation. Because Defendants are singling out religious objectors to the vaccines for termination, the policy being challenged is not a neutral policy of general application and is subject to strict scrutiny.  The policy fails strict scrutiny, as it is not well-tailored to advance a legitimate state interest.

Moreover, Plaintiffs were deprived of their property interests in continued public employment without due process, where Defendants failed to give them any opportunity for a

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

9

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA  98052
(206) 799-4221

hearing to challenge Defendants' often-erroneous, dispositive determination that Plaintiffs' jobs were public-facing.

Defendants' qualified immunity defense fails, because the right to privacy, and specifically to bodily autonomy, is well established by cases such as *Union Pac. Ry. Co. v. Botsford,* 141 U.S. 250 (1891) and *Washington v. Harper,* 494 U.S. 210 (1990).

## V.    ARGUMENT

### A.    Standard of Decision

On a motion to dismiss under Rule 12(b)(6), the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Dismissal "will only be granted if the complaint fails to allege 'enough facts to state a claim to relief that is plausible on its face…. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011). Moreover, even if dismissal were to be granted, it must normally be without prejudice: the plaintiff is entitled under Fed. R. Civ. P. 15 to an opportunity to amend his complaint unless it appears "beyond doubt" that the plaintiff could not prove any claim. *U.S. ex rel. Saaf v. Lehman Bros.*, 123 F.3d 1307, 1308 (9th Cir. 1997).

PLAINTIFFS' RESPONSE TO DEFENDANTS'          10
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA  98052
(206) 799-4221

**B.      Plaintiffs State Claims under WLAD.**

**1.      Defendants Failed to Engage in Interactive Dialogue with any Plaintiff.**

Defendants had a plain duty under WLAD and Title VII to engage in a good faith analysis and enter interactive dialogue with each Plaintiff regarding a reasonable accommodation. *Ferguson v. Wal-Mart Stores, Inc.,* 114 F. Supp. 2d 1057 (E.D. Wash. 2000). Notably, a "sham" hearing, "totally devoid of a meaningful opportunity to be heard," does not meet Due Process requirements for a pre-termination hearing. *Washington v. Kirksey,* 811 F.2d 561, 564 (11th Cir. 1987); *Wagner v. City of Memphis,* 971 F. Supp. 308, 318–19 (W.D. Tenn. 1997); *Constantino v. S. Humboldt Unified Sch. Dist.*, 18-CV-02249-RMI, 2019 WL 201565, at *8 (N.D. Cal. Jan. 15, 2019), and, thus, certainly could not comply with the Proclamation, WLAD, and ADA. Defendants conducted **no** hearing and engaged in **no** dialogue. [5]

An exemption request was supposed to trigger a two-step process; Defendant Pelton articulated this clearly but failed to follow his own policy. Complaint ¶¶ 176–79. First, Defendants were to grant or deny the exemption request, and second, if granted, Defendants were to engage in the usual accommodation process to seek a way to keep the employee employed without imposing net undue hardship on the employer. *Id.* ¶ 177. This duty to engage in and initiate the accommodation process was Defendants', triggered when Defendants granted a religious or medical exemption to the vaccination. *See Ferguson,* 114 F. Supp. 2d at 1069 (holding medical accommodation process was triggered when Plaintiff presented medical exemption form signed by physician); *Martinez v. Costco Wholesale Corp.*, 481 F. Supp. 3d

---

[5] It should be noted that with 92 exhibits, Plaintiffs' Complaint goes beyond mere allegations of a sham process. Even before discovery, Defendants' violations of Plaintiffs' rights have been established by documentary proof from Defendants own records.

1076, 1099 (S.D. Cal. 2020) (the interactive process is mandatory and the obligation "is triggered either by the employee's request for accommodation or by the employer's recognition of the need for accommodation.") (quoting *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1112 (9th Cir. 2000), *rev'd on other grounds*, 535 U.S. 391, 122 S. Ct. 1516, 152 L. Ed. 2d 589 (2002).

Defendants' failure to conduct dialogue is fatal to their motion. "We hold that employers, who fail to engage in the interactive process in good faith, face liability for the remedies imposed by the statute if a reasonable accommodation would have been possible." *Barnett*, 228 F.3d at 1116.

"To demonstrate good faith engagement in the interactive process…employers can point to cooperative behavior which promotes the identification of an appropriate accommodation," and "both parties discover the precise limitations and the types of accommodations which would be most effective; the evaluation of proposed accommodations requires further dialogue and an assessment of the effectiveness of each accommodation, in terms of enabling the employee to successfully perform the job." *Barnett,* 228 F.3d at 1115. Defendants identified nothing "point[ing] to cooperative behavior which promote[d] the identification of an appropriate accommodation," nor, without the case moving to an evidentiary phase can Defendants identify *any* dialogue or assessment regarding "the effectiveness of each accommodation." *Id.* By design, Defendants created a process eliminating any Plaintiff input through a "public exposure" pre-determination before dialogue would even be permitted. Complaint ¶ 216, 249, 253, 278-79, 308. Conveniently for Defendants, public exposure was always found and dialogue never permitted. Each Plaintiff has multiple emails evidencing Defendants' flat refusal to engage in discussion.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

12

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Compliance with the Proclamation, ADA, Title VII, or WLAD did not happen. The problem here, to be clear, is not that Defendants merely failed to follow their own process, *cf.* Def. Mot. at 16, but that Defendants did not comply with the well-established law which requires dialogue after granting exemption to craft accommodation. *See Barnett*, 228 F.3d at 1115.

Defendants' *per se* rule prohibiting any dialogue after making their unilateral "public exposure" determination defied the law.[6] WSDOT blatantly confessed failure to dialogue, explaining that it relied on job descriptions in lieu of dialogue,[7] and "very old" job descriptions, to boot. Complaint ¶ 199. When told by WSDOT's EEOC officer that WSDOT did not need to provide interactive dialogue, Plaintiff Geoff Gray sent emails to multiple WSDOT agents to try to correct this disregard for civil rights but received no answer. *Id.* ¶¶ 181–85.

Defendants arbitrarily relied on inaccurate job descriptions—for example, a description last updated 17 years prior, and another which was not only obsolete, it was for a different employee altogether. Complaint ¶¶ 210–13. Defendants refused to update any job descriptions to reflect 100% telework for the prior 18 months., *id.* ¶¶ 198, 214, 333, ignoring OFM guidance that "specifically required strong consideration of telework, with emphasis on rotating job duties to other employees to allow continued telework, determining whether the specific job responsibility requiring a building presence was one that the public *must* perform in the building." *Id.* ¶ 202. Defendants also ignored OFM guidance suggesting many possible

---

[6] "I find that the Department failed to afford Grievant the individualized consideration of his religious accommodation request that is required by the law….In addition, at least as applied to Mr. Hone, the Department's *per se* rule against masking and distancing as part of an appropriate religious accommodation violated the law…." Complaint Exhibit CD at 16.

[7] The *Hone* arbitrator specifically rejected relying on a job description in lieu of dialogue. *Hone* Arbitration Award at 10-11. "[WDFW] failed to afford [Mr. Hone] the individualized consideration of his religious accommodation request that is required by law." Complaint Exhibit CD at 16.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

13

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

accommodations, Complaint ¶¶ 95-99, 145 n.8, 163, 202, 218, 255, 260, 268-69, 282-286, 290, 368-69, 446, 541 n.29.

Equally telling was the impossible speed at which Defendants processed Plaintiffs' requests. Plaintiffs received a grant of exemption and denial of accommodation **all in the same letter.** Complaint ¶¶ 188–97. Indeed, Plaintiff David Lawton applied for a religious exemption, and **only 31 minutes later**, received the email from Defendants nominally granting his religious exemption but denying accommodation. Id. ¶ 202. There was no opportunity for discussion between each Plaintiffs' initial exemption request and Defendants' denial of accommodation and termination notice. Defendants assert the form letter invited Plaintiffs to schedule a discussion, but that mischaracterizes Defendants' own document. Def. Mot. at 7:22, citing Complaint Ex. C at 3. On its face, the form letter merely invited Plaintiffs to "explore the possibility of a reassignment" by emailing another form. Complaint Ex. C at 3. Reassignment, per EEOC guidance, is "a last resort" after other accommodation possibilities are exhausted.[8] Skipping directly to the last resort is far from the good-faith individualized consideration which the law demands. If Defendants can bring forward evidence of an actual opportunity to discuss, they are of course welcome to do so—but not in a motion under Rule 12(b)(6). The Complaint, including Exhibit C, plainly and unequivocally alleges Defendants' failure to discuss accommodation, which states a claim.

Using all-in-one form notices to 'approve' exemptions but deny accommodation without discussion, did not rise even to the level of a sham hearing. Relying merely on job descriptions

---

[8] https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#D at 2, 3.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

14

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

as opposed to legitimate dialogue or meaningful analysis, let Defendants "look[] for *any* ability to interpret *any* job duty of Plaintiffs as one that *theoretically might* involve public exposure," without doing the tedious work of considering each Plaintiffs' actual circumstances. Complaint ¶ 215. "In essence Defendants created public exposure where none existed, and where none was required. This was for the purpose of terminating religious objectors." *Id.* at 278. Defendants are welcome to offer evidence at trial to prove alternative, legitimate explanations for having created a sham process which identified and terminated a class of religious objectors, but Plaintiffs have at least stated a claim.

Defendants had used staff to analyze outdated job descriptions for jobs they did not understand without considering remote work performed successfully for 18 months. Complaint ¶¶ 215, 332. Had Defendants at least used accurate, updated job descriptions, many if not all Plaintiffs could have been accommodated. Merely allowing Plaintiffs input into the job assessment would have solved much of the problem. Instead, there was a rush to judgment, bypassing standard processes and terminating employees with inconvenient, unfashionable religious beliefs.

Without Plaintiffs' input, Defendants were free to hypothesize pathways to public exposure. They "merely looked for key phrases in a job description to justify termination." Complaint ¶ 331. "Defendants contrived and imagined essential functions that were not essential, and also listed public facing job functions that were not the responsibility of the Plaintiff." *Id.* ¶ 93. Nearly every Plaintiff alleged this injustice. Snowplow operators who worked entirely outdoors were told that they "might encounter an accident while snow plowing," and therefore

could not perform the essential functions of snowplowing. *Id.* ¶¶ 241-42.[9] An Incident Response Team employee, who worked alone in his truck, was told he posed a risk and was terminated; Defendants ignored his requests to identify the risk. *Id.* ¶ 246. Outdoor maintenance workers were arbitrarily terminated in case an auto accident brought passers-by into contact with them. *Id.* ¶¶ 249. Obviously, being near an auto accident is not an essential job function. Plaintiffs were terminated who were fully capable of performing job essentials but incapable of meeting Defendants' contrived hypotheticals. Plaintiff Steven Walker, an engineer who worked either outdoors or on his computer remotely, was terminated on the theory that he would come into the office to pick up his gear, although he could easily have kept it at home—or he could have easily been accommodated by using a delivery service. *Id.* ¶ 252. Even less credibly, Plaintiff Joe DeGroat, a senior Traffic Engineer, was terminated because Defendants claimed he was responsible for traffic counts in the field, an automated task which he had never performed manually in 19 years on the job. *Id.* ¶ 317. Plaintiff Deborah Fletcher, a Secretary Senior, was told she could not be accommodated remotely because she was needed to cover for other, non-exempt secretaries who worked remotely—clearly, WSDOT did not have to choose her as the one secretary not allowed to work remotely. *Id.* ¶ 258. Even more blatantly pretextual, Plaintiff Michael Uribe was terminated and then quietly hired back as a temporary worker, unvaccinated. *Id.* ¶ 226.[10] Plaintiff Ron Vessey was terminated because Defendants claimed his job involved

---

[9] WSDOT did not believe this pretext: it replaced them with a contractor who may not have been vaccinated. *Id.*

[10] At trial, Plaintiffs expect to call other witnesses who were quietly brought in unvaccinated to fill positions from which a Plaintiff was terminated, clearly proving that termination was not about public health and safety.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

16

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

public exposure, which it did not, and then they offered him reassignment, at an extraordinary pay cut, to a job that expressly required in-person meetings with outsiders. *Id.* ¶¶ 308–09.

Defendants repeatedly fabricated job duties to create exposure; for example, Defendants claimed Plaintiff Lynn Nowels, a Fiscal Specialist, "had to be in the building to sell commercial vehicle and rest area permits," which actually are only sold online. *Id.* ¶ 311. Even when Defendant Pelton issued sensible guidance as to employees who worked alone, Defendants ignored it and terminated Plaintiffs who worked alone. *Id.* ¶¶ 265–77. On the other hand, Defendant Pelton wrongly directed that "[t]elework is not an option as an accommodation given the Governor's proclamation stating that even teleworking employees are required to be vaccinated,"[11] *id.* ¶ 279, and then terminated numerous Plaintiffs whose supervisors attested that they could perform their work remotely. *Id.* ¶¶ 302–07. Several Plaintiffs were terminated because their job allegedly required presence in the building, but then Defendant advertised the open position as full-time telework. *Id.* ¶¶ 305, 312.

As these examples show, WSDOT was not at threat of any "undue hardship" under the *Hardison* standard, as reaffirmed in the recent *Groff v. DeJoy* U.S. Supreme Court decision. Under *Hardison,* the employer must show "that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Groff* 143 S. Ct. at 2295. Here, the employer's business it to provide vital public services to the citizens of the state, so Defendants should have considered the negative impact of catastrophic staffing shortages on them. *See* Complaint Ex. AM (OFM guidance directing employer to consider

---

[11] The Proclamation required no such thing.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

17

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

whether termination "causes a lack of staffing.") WSDOT's ferry system, for instance, now suffers from a "severe staffing shortage…unprecedented in its 70-year history." Complaint ¶¶ 373, 375. This has adversely impacted WSDOT and the citizens it serves. *Id.* ¶¶ 367–85.

Defendants cannot possibly show undue hardship from accommodations which were never entertained.[12] "[I]f EEOC and CDC guidance is not followed, the reasons for not following the guidance must be supported with specific facts, not conclusory statements." Shirley Arbitration Award, Complaint Exhibit CC at 40. Moreover, the *Shirley* arbitrator held that even though the WDFW proved COVID-19

> is dangerous and deadly; that we needed, received, and continue to need a vaccine; that the vaccine is working; that it has a duty to protect the health and safety of employees….that it has a strong desire to minimize viral exposure to the greatest extent possible; and that we are all 'tired' and exhausted from living with COVID-19," nonetheless, **the agency 'has not proven that masks and social distancing…is an undue hardship on the Agency**."

*Id.* at 41. "[Decisionmakers] ignored the importance of the EEOC guidelines regarding masks, social distancing, or other possible accommodations such as testing." *Id.* at 42.

Defendants ignored EEOC and CDC guidance in the same way. "Rules and regulations promulgated by a state agency …*may not amend or change the enactments of the legislature."* *Allen v. Employment Sec. Dept.,* 83 Wash.2d 145, 516 P.2d 1032 (1973) (en banc) (emphasis added). This is exactly what Defendants did. By declaring a non-existent duty to "eliminate

---

[12] The *Shirley* Arbitrator observed that the Washington Department of Fisheries and Wildlife "did not give consideration to masks and social distancing although both were recommended as possible accommodations to the vaccine requirement. Failing **to consider** available accommodations is extremely concerning. It is difficult for the Agency to establish good faith when EEOC and/or CDC guidance is ignored and not considered." *Shirley* Arbitration Award, Complaint Exhibit CC at 36 (emphasis in original). The *Shirley* award was based on 16 factual findings, which the arbitrator held "standing alone, or collectively, support each of the Arbitrator's three conclusions against the agency, *id.* at 35.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

18

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

risk," Complaint ¶¶ 89, 190, 192, 229 n.12, 281, an "unattainable and absurd standard," *id.* at ¶ 230, "recited in every accommodation denial letter received by Plaintiffs," *id.* at ¶ 229 n.12, and claiming that anyone with any conceivable public exposure on the job had to be terminated without accommodation, Defendants effectively made material amendments to the law and the Proclamation. *Id.* at ¶¶ 229-231.

Defendants suffered no undue hardship from Plaintiffs' use of PPE for 18 months prior to termination, Complaint ¶¶ 81, 251, 275, 298, 345, with no COVID-19 infections traced to any of them. *Id.* at ¶ 287-88.[13] It could have accommodated them by simply continuing in that course. OFM provided considerable accommodation guidance to agencies, but Defendant defied that guidance.[14] OFM also had a very extensive and comprehensive published policy on the use of PPE, *id.* ¶¶ 281–86, which did not include a "no public exposure" or "eliminate the risk" standard. Defendant had options as suggested by OFM; the simply declined to consider them, fatal to their defense. *See* Complaint ¶¶ 434–51.

Defendants claimed Plaintiffs had to be terminated because they could not perform the "essential functions" of their job without imposing undue burden. Complaint ¶¶ 88, 93. But OFM guidance states that an essential function "does NOT include marginal functions of the position." *Id.* ¶ 96 (quoting Complaint Ex. G at 25) (emphasis in original). "An essential function must really be a function, not merely a way of performing a function." *Id.* at ¶ 97 (quoting Complaint Ex. G at 26). Defendants ignored this.

---

[13] [WDFW] "did not take this opportunity to explain with specificity" why masks and social distancing were no longer a reasonable accommodation. Shirley Arbitration Award, Complaint Exhibit CC at 39.

[14] "OFM also directed Defendants to consider the impact of 'lack of staffing,' the '[s]ize and operating costs of the business impact of the accommodation on the agency as a whole.'" Complaint ¶ 368–69.

PLAINTIFFS' RESPONSE TO DEFENDANTS'      19      **ARNOLD & JACOBOWITZ PLLC**
MOTION TO DISMISS      8201 164th Ave. NE, Suite 200
(Case No. 3:23-cv-05418)      Redmond, WA  98052
(206) 799-4221

By example, hypothetically encountering a random accident victim on the road is not an essential (or any) function of the job of snowplowing. Defendants created this scenario to claim the snowplowers could not do the job of snowplowing, and then terminated them as public exposure 'threats.' Complaint ¶ 241. Snowplow operator were perfectly capable of plowing snow, alone, on the open road, on a snowplow. It was not the job, and certainly not an essential or even a marginal function of the position, to respond to hypothetical accidents on the road. No public risk existed. A trier of fact, therefore, could find that Defendants' automobile accident hypothetical was a pretext to discriminate against, and wrongfully terminate, those Plaintiffs for their religious beliefs. Indeed, the many similarly absurd hypotheticals alleged in the Complaint, *see supra*, establish a pattern and practice of pretextual terminations for the primary purpose of discriminating against a category of religious beliefs.

Defendants took essential functions of snowplowers, Incident Response Team workers, engineers, outdoor maintenance workers, remote project managers, outdoor ferry workers, and other job descriptions, and hypothesized attenuated and unlikely circumstances to create the pretext of possible public exposure, and from there pretextually concluded that it could never accommodate Plaintiffs, shutting down all dialogue with the phrase "public exposure."

OFM guidance likewise advised that "[e]mployers should not deny a request for telework if a job *involves some contact with colleagues and coworkers* for coordination and contact since this work can be conducted virtually." Complaint ¶ 268. But "WSDOT denied all accommodations regardless of contact, even if contact could only be theorized." *Id.* at 269; *and see, e.g., id.* ¶¶ 249, 253, 271-78, 307-12 (discussed *supra*). Defendants' standard of "no public

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

20

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

exposure" directly contradicted OFM guidance, which required accommodation even if work "involves *some contact* with colleagues and coworkers," *id.* ¶ 268.

OFM guidance identified numerous teleworking responsibilities, many the exact duties of Plaintiffs, including, "accounting, analyzing data, auditing reports, programming, phone work, data entry, evaluations, graphics and design, work planning, preparing budgets, monitoring contracts, project management, research, software development, spreadsheet analysis, web training, and writing and editing." Complaint ¶ 254. Beyond Defendant Pelton's mischaracterization that the Proclamation required vaccination of even full-time teleworkers, *id.* ¶ 279 , telework was never considered as an accommodation for even these suggested categories.

For example, Plaintiff Steve Walker worked alone in his office; his job involved no close coordination with others, Complaint ¶ 274, working entirely remotely, as did all of his office mates. He was told he could not telework because his job demanded public exposure, a condition fabricated by Defendants. *Id.* ¶ 252. When Plaintiff Ron Vessey was forced to retire in lieu of termination, most of the staff at his nominal work site were still teleworking, and needed express leave to enter the building. *Id.* ¶ 275. The staff are still teleworking to this day. *Id.* Mr. Vessey's supervisor declared Plaintiff's job was 100% remote-capable, a decision supported by Assistant Secretary Marshall Elizer, both of whom were overruled by Defendants. *Id.* at ¶ 307. Plaintiff Larry Frostad worked alone in an open-air space. He requested a copy of the evaluation of his workstation allegedly conducted as part of Defendants' alleged process but his request was ignored. *Id.* ¶ 276.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

21

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

**C.     Plaintiffs State Claims for Violation of Federal Constitutional Rights.**

Defendants mischaracterize Plaintiffs' claims.     According to Defendants, Plaintiffs "challenge the *facial* validity of the vaccine proclamation itself."  ECF No. 16 at 1:24 (emphasis in original).   This is inaccurate.   Plaintiffs nowhere allege that the Proclamation is invalid. Indeed, they barely mention the Proclamation, but repeatedly highlight Defendants' failure to *comply* with the presumptively valid Proclamation, Complaint ¶¶ 156-67, 182-85, 230-32, 236, 280, 340, with the Wash. Rev. Code § 28A.210,090, *id.* ¶ 412, and with OFM guidance in carrying out their legal duties, *id.* ¶ 94, 144,  163, 202, 254, 268, 281-90, 367-68.  Plaintiffs' claims arise from the Defendants' misapplication of the Proclamation to terminate without a proper hearing.  Thus, in a sense, Plaintiffs raise a facial challenge, but not to the Proclamation; rather, they challenge WSDOT's unwritten, covert policy of denying accommodations, their "mandate within a mandate," *id.* at ¶ 235, is an incorrect application of the Proclamation and OFM guidance regarding the same.

It is unclear why Defendants emphasize "facial"; they do not explain what different standard might apply to a facial challenge, as opposed to an "as applied" challenge.   Be that as it may, Defendants err when they argue that the Court must construe Plaintiffs' claims as bringing only a facial challenge simply because the different Plaintiffs' circumstances differ. The differences among the Plaintiffs cited by Defendants—department, job position, location— have no bearing on any legal issues raised in Defendants' motion.  Contrary to Defendants' argument that this Court cannot possibly manage 60 different sets of claims in a single action, the Court is fully qualified to hear a mass tort case where each Plaintiff was injured by a single cause: Defendants' illegitimate policy of denying accommodations and terminating 'non-

compliant,' exempt employees. Three Plaintiffs are exempt from the vaccine mandate for medical reasons, the others only for religious reasons, *see* Complaint ¶¶ 7–66; apart from that, there is no difference among Plaintiffs relevant to this motion. Plaintiffs differ in the exact amount of damages each is owed, but that sort of difference is typical in mass tort cases.

Thus, the Court can and should consider the claims as Plaintiffs pled them—individual, similar claims brought by individual, similarly-harmed claimants. Defendants' reliance on *Pilz v. Inslee*, No. 3:21-CV-05735-BJR, 2022 WL 1719172 (W.D. Wash. May 27, 2022), *appeal docketed*, No. 22-35508 (9th Cir. June 30, 2022), *Wise v. Inslee*, No. 2:21-CV-0288-TOR, 2021 WL 4951571, at *1 (E.D. Wash. Oct. 25, 2021), and other cases only facially challenging vaccine mandates as such, is misplaced.[15] Defendants' oft-repeated arguments that this Court has already resolved (in *Pilz*) the question of whether the Proclamation, on its face, violates various Constitutional provisions, miss the point. The question before the Court is not whether a vaccine mandate can be constitutional, or even whether the Proclamation in particular is constitutional on its face, but rather, whether WSDOT's policy of refusing to consider accommodation for those who for constitutionally protected reasons obtained religious or medical exemptions and did not get vaccinated, and whose jobs could be construed as public-facing, is constitutional, as applied to each individual Plaintiff. It is not.

Government employees have a property interest in their continued employment under both state and federal law. *See Eagan v. Spellman*, 90 Wash.2d 248, 255, 581 P.2d 1038, 1042 (1978); *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 539, 105 S. Ct. 1487, 1491, 84 L. Ed. 2d 494 (1985).

---

[15] Moreover, to whatever extent the reasoning of *Pilz* might apply to Plaintiffs' claims, this Court is not bound by the opinion of another judge of this Court, and where an appeal from the *Pilz* decision is pending and has yet even to be argued on appeal, the Court should not double down on the challenged reasoning of *Pilz*.

The termination of that employment without a reasonable hearing, or contrary to law, is a denial of due process at the very least. *Id.*

### 1. Plaintiffs claim based on Free Exercise Clause

The U.S. Constitution protects citizens from governmental interference with free exercise of their religion. U.S. Const. amend. I. The 14th Amendment extends this principle to protect citizens from state governments. *Cantwell v. State of Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940).

When a government burdens religious exercise "through policies that do not meet the requirement of being neutral and generally applicable," as when it "proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature," the Court applies strict scrutiny to the challenged governmental action. *Fulton v. City of Philadelphia, Pennsylvania*, 141 S. Ct. 1868, 1877, 210 L. Ed. 2d 137 (2021) (quoting *Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 531–532, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993)).

Defendants argue that the government action at issue here is neutral and generally applicable, so the Court should apply rational basis review. But again, Defendants' heavy reliance on *Pilz* is misplaced—even if the **Proclamation** may be deemed a law of general applicability, *see* ECF No. 16 at 11 (citing *Pilz*), Defendants' covert policy of denying accommodations to self-identified religious objectors to COVID vaccination certainly is not. Where Defendants treat religious objectors much more harshly in this regard than they treat employees who are medically prevented from accepting vaccination, *see* Complaint ¶¶ 166, 167, 172, that policy cannot be called neutral.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

24

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Moreover, even if this case required the Court to consider the legitimacy of the Proclamation as a whole, *Pilz* should not be followed on this issue. A law is not deemed generally applicable for these purposes, and thus triggers strict scrutiny, if the statute creates a mechanism for "individualized exemptions." *Fulton*, 141 S. Ct. at 1877. In practical effect, as seen here, the system for permitting exemptions and accommodations under the Proclamation gives free rein to the implementing agencies' discretion, triggering strict scrutiny under *Fulton*.

It is the policies of WSDOT and its agents, not the Proclamation, which are at issue in this case. The Complaint alleges specific, detailed facts as to how WSDOT failed to follow the Proclamation, to comply with WLAD, Title VII and the ADA, and committed outright religious discrimination. The policies of the Defendants which exceed or transgress the Proclamation are subject to strict scrutiny.

"A government policy can survive strict scrutiny only if it advances 'interests of the highest order' and is narrowly tailored to achieve those interests. *Lukumi*, 508 U.S. at 546, (internal quotation marks omitted). Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so." *Fulton*, 141 S. Ct. at 1881. Here, Plaintiffs have alleged facts showing that Defendants' challenged policies do not advance the interest of preventing the spread of COVID-19. Defendants ask this Court to consider as the final and definitive word on the subject a report which was issued by the CDC **after** Plaintiffs were terminated, but Plaintiffs should have the opportunity to put any contested facts before the jury, and to prove, in particular, their allegations that:

> 99. These vaccines were developed quickly to protect those who were at highest risk of getting seriously ill from COVID-19, especially the elderly and those with multiple comorbidities.

100. Pfizer officials have admitted that its vaccine was not tested for efficacy at preventing transmission or infection, and the Food and Drug Administration likewise admitted that the vaccines were not license[d] or authorized for prevention of infection or transmission, nor were clinical trials designed for such.

\*\*\*

102. A statement from the CDC Director Rochelle P. Walensky, MD, MPH, was issued and publicly available on the CDC site on July 30, 2021, before Washington Governor Jay Inslee's Proclamation 21-14 *et seq.,* that stated, "…data were published in CDC's Morbidity and Mortality Weekly Report (MMWR) demonstrating that Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people. High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, **vaccinated people infected with Delta can transmit the virus."**

\*\*\*

104. Recorded "breakthrough" cases (fully vaccinated individuals contracting COVID-19) in Washington State from July 17, 2021, to July 9, 2022, alone totaled 636,766, with a majority of these breakthrough cases in the 20-49 years age group (74 percent). Exhibit H. These cases do not represent infection in the typical vulnerable population.

105. The Department of Health (DOH) also published notice of rising breakthrough cases as early as March 29, 2021, Exhibit I, nearly seven months prior to Plaintiffs' terminations.

\*\*\*

107. The DOH held a question-and-answer session on August 17, 2021, where it was acknowledged that the vaccine did not stop transmission.

\*\*\*

112. Many of the Plaintiffs have personal knowledge of co-workers who had been vaccinated who reinfected with COVID-19 prior to termination. Plaintiffs brought this to the attention of Defendants but were silenced.

\*\*\*

114. Shortly thereafter, Jeffrey Duchin, Chief Communicable Disease Epidemiology and Immunization Section, Public Health for Seattle and King County, and Professor of Medicine, Division of Infectious Diseases, University of Washington, admitted that 37% of new cases of COVID-19 were in vaccinated individuals. Exhibit L.

115. Dr. Duchin also acknowledged awareness of the well-publicized COVID-19 outbreak in Provincetown, Massachusetts, after a Fourth of July celebration, where according to Steve Katsurinis, Chair of the Provincetown Board of Health, 469 cases reported among

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

26

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Massachusetts residents alone, 74 percent were in people who were fully immunized. That number grew to 765 cases overall. Exhibit M.

116.    Indeed, just prior to terminating Plaintiffs, the CDC released a report on or about September 10, 2021, regarding a Norwegian Encore cruise ship returning to port in Seattle because of a large outbreak of COVID-19 with approximately 118 cases, despite its 100% vaccinated traveler status of both passengers and crew, as well as negative test prior to boarding. Health officials recognized, "This is crazy. 118 cases. All vaccinated and ALL tested negative prior to embarkation." Exhibit N.

Complaint at 28–31 (emphasis in original).

For purposes of this motion, those facts must be accepted as true.  The facts pleaded are sufficient to show that Defendants' policy did not advance interests of the highest order, and certainly was not narrowly tailored to do so, and were a sham and pretext for raw religious discrimination.  Further, Plaintiffs allege that instead of evaluating their jobs through interactive discussion, Defendants used outdated job descriptions and "looked for *any* ability to interpret *any* job duty of Plaintiffs as one that *theoretically might* involve public exposure."  *Id.* ¶ 215 (emphasis in original).  And several Plaintiffs alleged more particularly that they did and/or could perform all essential functions of their jobs without coming into direct contact with members of the public, meaning that they were not likely disease vectors.  Complaint ¶¶ 209, 220, 222, 224, 225.  Another Plaintiff was quietly rehired into the same position on a temporary basis, without his earned seniority and benefits, which shows that WSDOT did not truly believe his unvaccinated status posed any threat.  *Id.* ¶ 226. Plaintiffs' allegations, deemed true for this motion, show that Defendants' policies were not narrowly tailored to advance the purported purpose of protecting the public, and certainly did not avoid infringing on religious exercise.

The risk posed by an unvaccinated, exempt employee is the same regardless of the reason that the employee obtained the exemption.  In other words, an employee exempt from the Mandate for medical reasons

> presents the same risk of COVID-19 transmission in a high-risk role as does an employee exemption from the Mandate for religious reasons…Accordingly, giving priority consideration to employees in high-risk roles for secular exemptions over those with religious exemptions is likely to fail strict scrutiny.

*UnifySCC v. Cody*, 2022 WL 2357068 (N.D. Cal. June 30, 2022) (*quoted in* Complaint ¶ 196).

WSDOT argues that as a state agency, it has sovereign immunity to an action for damages under 42 U.S.C. § 1983 based on constitutional tort. Fair enough, but easily solved by amendment: a plaintiff, wrongfully terminated from state employment based on First Amendment protected conduct, may sue the state to seek reinstatement, despite sovereign immunity. *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 842 (9th Cir. 1997) ("reinstatement is a legitimate request for prospective injunctive relief.") Some Plaintiffs already expressly pray for reinstatement, see Complaint at 116; others can join in that prayer.

### 2. Plaintiffs claim based on the Due Process Clause.

#### a. Defendants provided neither notice nor opportunity to be heard.

Defendants claim that their failure to follow their own two-step process does not evidence a due process violation. Defs.' Mot. at 16:23-25. Plaintiffs agree: not following their own process does not, in-and-of-itself, violate due process. However, had Defendants not combined the two-step process into one step, they would not have skipped the requirement for an interactive dialogue required in the second step, and there would be one less basis for Plaintiffs' claims.

Instead, Defendants failed to provide the "constitutionally required floor – notice and opportunity to be heard," Defs.' Mot. 16, l.23-25, that was required of them. The failure to follow their own process led to combining two analytical steps into one, *supra,* thereby removing the ability for Plaintiffs to have any input whatsoever in the process, hearing or otherwise. Indeed, while "[s]tate actors may deviate from agency procedures without offending due process

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

28

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

1  so long as they still provide the constitutionally required floor – notice and opportunity to be

2  heard." *Id.* Defendants provided neither.

3      A citizen may not be deprived of life, liberty, or property without due process of law.

4  U.S. Const. amends. V, XIV, Wash. Const. art. I, § 3.  Public employees who may be dismissed

5  only for cause possess a property interest in their continued employment. *Loudermill*, 470 U.S.

6  at 532, 538–39.  The process due to those employees is, at minimum, notice and an opportunity

7

8  to be heard before termination.  *Id.* at 543.

9      Here, Plaintiffs were public employees, and under the Washington Civil Service Act, can

10  only be dismissed for certain enumerated reasons, which do not include non-vaccination. Wash.

11  Rev. Code § 41.08.080.  Because they are only dischargeable for cause, the Plaintiffs had a

12  property interest in continued employment and were entitled under the Fourteenth Amendment

13  to non-sham *Loudermill* hearings; independently, they were entitled to their vested pensions.[16]

14  Many of the Plaintiffs requested *Loudermill* hearings but were denied and told that a *Loudermill*

15  was only for disciplinary terminations. Complaint ¶ 432. One Plaintiff asked for a *Loudermill*

16

17  hearing on two separate occasions via emails to Defendant agents Joelle Davis and Cynthia Kent,

18  but never received even an answer to those requests. *Id.* Likewise, many Plaintiffs requested a

19  *Loudermill*, but Defendants did not respond to their requests either. One Plaintiff even submitted

20  an internal EEO complaint with WSF HR that went ignored and unanswered. *Id.*; *see, e.g.*,

21  Complaint ¶ 431-433.

22

23

24

25

---

26      [16] *Eagan,* 581 P.2d at 1042.

*Loudermill* hearings afford employees opportunity to present "[their] side of the story," *Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 534 (1985). They are not reserved exclusively for addressing wrongdoing allegations against employees, but also against the employer, a conclusion inherent in the purpose to allow employees to tell "[their] side of the story." *Id. "*Finally, in those situations where the employer perceives a significant hazard in keeping the employee on the job, it can avoid the problem by **suspending with pay."** *Loudermill,* 470 U.S. at 544-545 (emphasis added); Complaint ¶ 433.

Defendant's creation of "elimination of risk" and termination for any perceived "public exposure," without any discussion with Plaintiffs on accommodating that public exposure, removed the constitutional requirement of "notice and hearing" from the process. Defendants' policy defied the Proclamation itself, as well as OFM guidance, and eliminated meaningful notice and opportunity to be heard that the Due Process Clause and the law required.

> **b.** **This is an "as applied" challenge challenging Defendants' application of the Proclamation to Plaintiffs.**

Here again, Defendants, mischaracterize "Plaintiffs' due process theory" as "essentially a facial attack on the Proclamation that rehashes the same argument rejected by this Court and others…" Def. Mot. at 16:3–4. That is incorrect, as discussed *supra.* Plaintiffs challenge the covert process Defendants used to *apply* the Proclamation to Plaintiffs. Complaint ¶ 235.

Defendants admit that "[t]he Proclamation 'created a process by which employees could apply for exemptions and accommodations, and essentially 'present their side of the story' to avoid termination," *id.* at l.11-13, and then wrongfully concluded, "which is 'all that *Loudermill* requires.'" *Id.* Defendants then go on to recognize that the *Pilz* court agreed. Plaintiffs agree the *Pilz* court did that in connection with a purely facial challenge. That, however, is irrelevant to

this case, because any arguments regarding deficiencies in the Proclamation are not before this Court. As a facial challenge, the *Pilz* court had to address whether the Proclamation complied with *Loudermill* law; but this Court today must address the fully separate issue of whether Defendants complied with a presumed facially-valid Proclamation by providing the necessary notice and hearing the Proclamation required. They did not.

It is not a defense to failure to carry out the terms of the Proclamation by arguing that the Proclamation has already been determined to be facially valid, any more than it is relevant that COVID is bad. WSDOT, as a State actor, along with its senior employees, had the duty to provide Plaintiffs the requisite notice and opportunity to be heard to comply with the Proclamation and *Loudermill*, and parallel state authorities, and they did neither, *supra.*

### c. Any defects in pleading personal participation by Defendants can be cured through amendment.

Any allegation that the "Complaint does not allege that any Individual Defendant personally participated in a plausible due process violation," Def. Mot. at 16:18–19, can easily be resolved through an amended complaint. The 9th Circuit has "repeatedly held that 'a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not be cured by the allegation of other facts.'" *OSU Student All. v. Ray*, 699 F.3d 1053, 1079 (9th Cir. 2012) (quoting *Lopez v. Smith,* 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc)). It is a "longstanding rule that '[l]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (quoting *Breier v. Northern California Bowling Proprietors' Ass'n,* 316 F.2d 787, 790 (9th Cir. 1963)). "The standard for granting leave to amend is generous…. In *Scott v. Eversole Mortuary,* 522 F.2d 1110, 1116 (9th Cir. 1975), we reversed the district court's

dismissal of plaintiff's count insofar as it denied leave to amend because we could 'conceive of facts' that would render plaintiff's claim viable and could 'discern from the record no reason why leave to amend should be denied.'" *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 701 (9th Cir. 1988). "[L]eave to amend should be granted 'if it appears at all possible that the plaintiff can correct the defect.'" *Breier v. N. Calif. Bowling Proprietors' Ass'n,* 316 F.2d 787, 790 (9th Cir. 1963) (quoting 3 Moore, Federal Practice, § 15.10 at 838 (2d ed. 1948)). Courts ask whether the plaintiff "displayed undue delay, bad faith or dilatory motive, or . . . repeatedly failed to cure deficiencies by previous amendments, or [defendants] would suffer undue prejudice by proposed amendments." *Lay v. Treesource Industries, Inc.,* 143 Fed. Appx. 786, 787, 2005 WL 1901543 (9th Cir. 2005). No such negative facts appear here. Plaintiffs respectfully assert that the complaint is sufficiently detailed as to all Defendants, but if the court believes more is required, more can be supplied.

> ### d. Defendants do not have qualified immunity because they violated due process rights "clearly established" as a fundamental constitutional right.

Defendants allege that they have qualified immunity because Plaintiffs have not established how Defendants' personal conduct violated a due process right that was "clearly established." Def. Mot. 17:10–12. But Plaintiffs allege a violation of their rights to privacy, which clearly is a "clearly established" fundamental right.

"No right is held more sacred, or is more carefully guarded by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." *Union Pac. Ry. Co. v. Botsford,* 141 U.S. 250, 251 (1891); *see also Washington v. Harper,* 494 U.S. 210, 229 (1990) ("The forcible injection of medication into a nonconsenting person's body represents a

substantial interference with that person's liberty.")[17]  Art. 1, § 7 protects autonomous decision-making. *Wash. Pub. Emp. Ass'n v. Wash. State Ctr. for Childhood Deafness & Hearing Loss,* 194 Wash.2d 484, 504, 450 P.3d 601 (2019).

"It is well-established that [this Court] should avoid adjudication of federal constitutional claims when alternative state grounds are available.... even when the alternative ground is one of state constitutional law." *Potter v. City of Lacey*, 46 F.4th 787, 791 (9th Cir. 2022) (quoting *Cuviello v. City of Vallejo*, 944 F.3d 816, 826 (9th Cir. 2019)).  The Washington Constitution provides greater protection: "Our Supreme Court has held that article 1, section 7 'clearly recognizes an individual's right to privacy with no express limitations and places greater emphasis on privacy than does the Fourth Amendment." *Robinson v. City of Seattle,* 102 Wash. App. 795, 10 P.3d 452 (2000) (quoting *State v. Ladson,* 138 Wash.2d 343, 348, 979 P.2d 833 (2019)) (emphasis added). "Art. 1, §7 provides that 'no person shall be disturbed in his private affairs, or his home invaded, without authority of law' provides greater protection to individual privacy rights than the Fourth Amendment," as the Fourth Amendment prohibits unreasonable searches and seizures, but "our State Constitution prohibits any invasion of an individual's right to privacy . . . with no express limitations.'" *State v. Washington,* 9 Wash. App. 2d 464, 474, 452 P.3d 553 (2019) (quoting *State v. Betancourth*, 190 Wash.2d 357, 366, 413 P.3d 566 (2018)). "[W]e will not hesitate to intervene when constitutional protections are implicated." *York v. Wahkiakum Sch. Dist. No. 200,* 163 Wash.2d. 297, 302, 178 P.3d 995 (2008) (en banc)*.* "No matter the drawbacks or merits [of the alleged privacy invasion], we cannot let the policy stand

---

[17] *Dobbs v. Jackson Women's Health Organization,* __ U.S.__, 142 S. Ct. 2228 (2022) (did not impugn the general right to bodily autonomy).

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA  98052
(206) 799-4221

if it offends our constitution." *Id.* at 302–03. "[Federal constitutional cases] do not control how we interpret our state constitution. . . . Unlike the Fourth Amendment, Article 1, §7 is not based on a reasonableness standard." *Id.* at 302.

Washington's right to privacy "reflects a consistent protection of privacy of the body and bodily functions." *Robinson,* 102 Wash. App. at 810. This includes the right to refuse medical treatment. *In re Colyer,* 99 Wash.2d 114, 119–20, 660 P.2d 738 (1983); *State v. Farmer,* 116 Wash.2d 414, 805 P.2d 200 (1991). In *York,* for instance, a school's attempts to stop children's drug use, a laudable goal, requiring random drug tests, offended Art. 1, § 7. *York,* 167 Wash.2d at 307.

In support, Defendants cite numerous cases alleging that Plaintiffs were not entitled to "mini trials," *id.* at l. 18 (citing *Village of Orland Park v. Pritzker,* 475 F. Supp. 3d 866, 883 (N.D. Ill. 2020)), which Plaintiffs have never requested; they simply wanted to be involved in the process through a legitimate hearing to engage in an interactive dialogue on the determination that they had "any public exposure," *supra.* But, as *Loudermill* holds, the exchange is not legitimate if the outcome is predetermined. *Loudermill,* 470 U.S. at 546; *see also* discussion, *supra.*

Defendants also cite *Davis v. Scherer,* 468 U.S. 183, 194 n.12 (1984). Defs. MTD 17, l. 15. *Davis* is entirely irrelevant, as it involves allegations of violations of "statutory or administrative provisions" which clearly *do* not involve *"clearly established"* rights that Plaintiffs allege here, such as the fundamental Constitutional liberty interest to privacy and bodily autonomy and sovereign medical decision-making. Defendants' argument admits the

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

34

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

right infringed upon must be a "clearly established" right, then cites cases that do not address or discuss any fundamental constitutionally-protected right.

### 3. Plaintiffs state a claim based on Equal Protection.

Once again, Defendants make their primary argument that, "[f]irst, the Complaint appears to raise a facial equal protection challenge to the Proclamation itself – and one that earlier courts have readily rejected." Def. Mot. 17:22–24. As already discussed at length, *supra,* Plaintiffs' Complaint is challenging not the validity of the Proclamation itself, but the process Defendants used in ignoring and transgressing the terms of that Proclamation and the guidance provided in support thereof. Defendants created their own law and procedure, incorporated standards and terminology not found in the Proclamation and clearly at odds with it, refused to allow Plaintiffs any participation in Defendants' covert and unilateral conclusion, and used their own discretion to create a mandate that did not resemble Proclamation 21-14.

In redirection to the nature of the as applied challenge, Defendants recognized that strict scrutiny applies to Defendants' actions, *see* Def. Mot. 17:24–26, given that they have denied Plaintiffs a fundamental right, that is, the right to bodily autonomy and privacy, *supra.* "The interest in autonomy is recognized as a fundamental right and is thus accorded the utmost constitutional protection…. Government action which infringes on this right is given strict scrutiny." *Butler v. Kato,* 137 Wash. App. 515, 525, 154 P.3d 259 (2007) (citing *O'Hartigan v. State Dep't of Personnel,* 118 Wash.2d 111, 117 (1991)). "The interest in autonomy includes the right to refuse medical treatment." *Colyer,* 99 Wash.2d at 119-20 (1983). "Generally, due process requires the State to prove the basis for involuntary treatment by clear and convincing evidence." *Butler,* 137 Wash. App. at 525.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

35

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

Strict scrutiny "is not watered down; it really means what it says"; it is the most demanding test. *Tandon v. Newsom,* 141 S. Ct. 1294, 1298 (2021); *City of Boerne v. Flores,* 521 U.S. 507, 534 (1997); *and see Burson v. Freeman,* 504 U.S. 191, 200 (1992) ("a law rarely survives strict scrutiny."). Defendants cannot meet the burden of strict scrutiny in their denial of Plaintiffs' due process rights to notice and hearing, given the fundamental privacy and autonomous decision-making rights that were impacted.

Defendants also claim that "when the Proclamation was adopted, unvaccinated people were five times more likely to contract, ten times more likely to be hospitalized with, and 11 times more likely to die from COVID-19 than those who were fully vaccinated." Defs. MTD at 18, l.2-5. As such, Defendants are asking this court to consider extra evidence outside the pleadings, a fundamental prohibition in a motion to dismiss, Rule 12(b)(6), "[r]eview is limited to the Complaint." *Cervantes v. City of San Diego,* 5 F.3d 1273, 1274 (9th Cir. 1993). Notwithstanding, Defendants argument further fails. First, it's a strict scrutiny analysis because the liberty interests are fundamental rights, and because they are obviously discussing material facts in dispute, which defeats a motion to dismiss on its face.

Defendant is inserting factual matters in dispute, and while a trial court may take judicial notice of certain aspects of the COVID-19 pandemic, the disease caused by the virus, and the existence of certain government actions and publications concerning COVID-19, the court cannot take judicial notice of the truth of disputed factual matters contained therein. Given the catastrophic statistics of breakthrough cases Plaintiffs established in the Complaint through the government's own documentary evidence and their direct knowledge of that pervasive phenomena, Complaint ¶¶ 100-124, there was no evidence that COVID-19 vaccines made an

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

36

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

individual less likely to contract and transmit the novel virus to anyone.  Certainly, Defendants did not consider alternative measures that have a lesser impact on Plaintiffs' privacy rights, even though many measures existed and the mandate did not serve its stated purpose.

Judicial notice of Defendants allegations may not be taken of any mater unless authorized or required by law.  Evid. Code § 450.  Matters that are subject to judicial notice are listed in Evidence Rules 451 and 452.  A matter is ordinarily subject to judicial notice only if the matter is reasonably beyond dispute. *See Lee v. City of Los Angeles,* 250 F.3d 668, 688 (9th Cir. 2001) (reversal was warranted where district court, in dismissing plaintiffs' federal claims, relied on defendants' factual assertions, assumed existence of facts favoring defendants based on evidence outside pleadings, took judicial notice of disputed factual matters, and did not construe allegations in light most favorable to plaintiffs. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.). And as a general rule, a district court may not consider any material beyond the pleadings in ruling on a motion to dismiss for failure to state a claim.  *Lee,* 250 F.3d. at 688.

Defendants also claim Plaintiffs failed to allege personal participation, Defs. MTD 18, l. 13-14, which likewise can be cured through amendment. *See discussion, supra.*

Defendants also argue that Plaintiffs claim an Equal Protection claim based on disparate treatment through "retaining persons with vaccine immunity while separating only those with 'natural immunity.'" Defs. MTD 18, l. 19-21.  Defendants also state that "Count 14 does not squarely address equal protection at all." Defs. MTD 18, l. 17-18.

Plaintiffs nowhere made the argument that its Equal Protection claim was based on disparate treatment between those who had vaccine immunity versus those who had natural immunity.  It simply is nowhere to be found, but is, once again, another mischaracterization.

Instead, the refusal of Defendants to recognize natural immunity is an issue more rightly categorized as a violation of WLAD in failure to provide an accommodation to vaccination through recognition of natural immunity. Plaintiffs' Equal Protection claim surrounds the disparate treatment between religious objectors and medical/secular objectors, as "Defendants have treated different classes of people unequally, with religious objectors suffering a greater adverse impact by the actions of Defendants," Complaint ¶ 505. This is separate and distinct from the allegations that Defendants wrongfully refused to recognize natural immunity as an accommodation in violation of WLAD.

The disparate treatment between religious and medical objectors that afforded direct preference of secular objectors over religious exemptions is plead with great elaboration. *See* Complaint ¶¶ 167-175. 347, 352.

Defendants' qualified-immunity defense to this claim fails for essentially the same reasons discussed *supra* as to Due Process.

**4.      Plaintiffs state a claim based on Contracts Clause.**

Each of the Plaintiffs held pension rights independently of their interests in employment. As the Washington Supreme Court noted:

> we need to avoid confusing rights of tenure with pension rights, and when the latter are involved, as here, to make certain a public employee receives the rights guaranteed by this court.

*Eagan*, 581 P.2d at 1042. Employees' enforceable expectations are measured at the commencement of employment. *Id*. at 1040–41. "[A]ny change which results in a disadvantage to the employee must be accompanied by comparable new advantages." *Id.* at 1043. In *Eagan*, the City reduced mandatory retirement age from 70 to 65, thus reducing Ms. Eagan's pension rate upon retirement without compensation; this impaired her vested rights. *Id.* at 1039–40.

Defendants here, similarly, took Plaintiffs' pension expectations away and provided nothing in return. Pension values are reduced substantially by involuntary separation from employment. Like Ms. Eagan, Plaintiffs have stated a claim for breach of contract.

Once again, Defendants argue, first, that this is a facial challenge to the Proclamation itself and has already been defeated by the *Pilz* decision. Def. Mot. at 19:11–18. Notwithstanding the fact that *Pilz* is on appeal, this case involves factors not at issue in that matter. Plaintiffs concede *arguendo* for the purpose of this motion only that the Governor had the right to implement a new condition of employment as part of the effort to contain the spread of the virus. He exercised that authority through a procedure that expressly required compliance with, ADA, Title VII, and WLAD. Defendants chose to disregard that procedure and implemented their own one-step, no-accommodations 'process' that told each Plaintiff they were terminated before they could even discuss how they could be accommodated.

Second, Defendants argue Plaintiffs' Complaint must be dismissed because it did not allege "that the Individual Defendants personally participated in any Contracts Clause violation." Def. Mot. at 20:2–3. Defendants claim Plaintiffs needed to show that the Defendants "were responsible or involved in the Governor's *issuance* of the Proclamation." *Id.* at 20:7 (emphasis in original). This, again, misses the point. Plaintiffs do not need to show that Defendants had anything to do with the issuance of the Proclamation; Plaintiffs allege that Defendants acted wrongly, *independently of and in contradiction to* the Proclamation.

Third, Defendants argue that they have qualified immunity because Plaintiffs did not have "clearly established" rights under the Contracts Clause that were violated. The decision in *Eagan, supra,* is directly contrary to that argument.

PLAINTIFFS' RESPONSE TO DEFENDANTS'          39
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA  98052
(206) 799-4221

**5.    Plaintiffs state a Takings Clause claim.**

A property owner has an actionable Fifth Amendment takings claim when the government takes his property without paying for it, and may bring his claim in federal court under § 1983. *Knick v. Township of Scott, Penn.,* 139 S. Ct. 2162, 2167, 204 L. Ed. 2d 558 (2019).  The Takings Clause presupposes that the government has acted in pursuit of a valid public purpose, but if the taking was not for a public purpose (as Defendants now contend), that in itself can invalidate the taking. *Lingle v. Chevron U.S.A., Inc.,* 544 U.S. 528, 543, 125 S.Ct. 2074, 161 L.Ed.2d 876 (2005).

"Though takings claims most often involve physical invasions on real property or land use regulations, they are not limited to those forms of property. Intangible property rights, including valid contracts, are protected by the takings clause." *Washington Food Industry Ass'n v. City of Seattle,* 1 Wash.3d 1, 524 P.3d 181, 197 (Wash. 2023) (holding Instacart's contracts with food delivery network workers are property) (citing *Ruckelshaus v. Monsanto Co.,* 476 U.S. 986, 1003-04 (1984) (holding that trade secrets were property for purposes of takings analysis)); *see also Omnia Com. Co., Inc. v. United States,* 261 U.S. 502, 508 (1923) ("The contract in question was property within the meaning of the Fifth Amendment."); *Lynch v. United States,* 292 U.S. 571, 579 (1934); *see also Police Benevolent Ass'n of the City of New York on behalf of its members, Patrick J. Lynch v. City of New York, et al.,* Index No. 151531/2022, NYSCEF Doc. No. 88 (Sept. 23, 2022) (Supreme Court of New York strikes vaccine mandate on behalf of police officers "to the extent it has been used to impose a new condition of employment to current [union] members.") and *Eastern Enterprises v. Apfel,* 524 U.S. 498 (1998) holding that a retroactive act requiring former operator to fund health benefits for retired minors who had

worked for operator before it left coal industry was an unconstitutional taking); *see also Eagan*, 581 P.2d at 1042*, supra* (the pension rights of Washington State employees exist separately from their employment contracts, and if they are abridged or negatively altered by actions of the State, there is not only a breach of contract, but a violation of the Contract Clause).

In *Washington Food,* 1 Wash.3d 1, 524 P.3d 181 (2023), the Supreme Court of Washington held that a City of Seattle ordinance requiring food delivery network companies to pay gig workers as independent contractors a premium during the COVID-19 pandemic triggered an unconstitutional taking requiring compensation. The Court reaffirmed that an otherwise valid regulatory exercise of police power "may go 'too far' in its impact on a property owner as to constitute a taking, requiring compensation." *Washington Food*, 524 P.3d at 196 (quoting *Pa. Coal Co. v. Mahon*, 260 U.S. 393, 415, 43 S. Ct. 158, 67 L. Ed. 322 (1922)).

Similarly, Plaintiffs before this Court concede *arguendo*, for this Motion only, that the Proclamation may have been an otherwise valid exercise of the Governor's police power, but even if so, Defendants had no independent police power to change the terms of the Proclamation and implement WSDOT's own stricter mandate. Defendants' regulatory exercise did not merely "go too far"; WSDOT had no authority to regulate on health and safety outside the parameters of the Proclamation, far less to take Plaintiffs' property interests via such regulation.

## VI. CONCLUSION

For the reasons and upon the authorities above set forth, and upon the detailed allegations of the Complaint taken as true for the purposes of the Defendants Motion to Dismiss, it is respectfully requested that the Defendants' Motion to Dismiss be denied in its entirety.

DATED this 24th day of July 2023.

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

41

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221

**ARNOLD & JACOBOWITZ PLLC**


*s/ Nathan J. Arnold*
Nathan J. Arnold, WSBA No. 45356
8201 164th Avenue NE, Suite 200
Redmond, WA 98052
(206) 799-4221
Nathan@CAJLawyers.com
*Attorney for Plaintiffs*

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

42

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA  98052
(206) 799-4221

**CERTIFICATE OF SERVICE**

I hereby certify that on July 24, 2023, I electronically filed the foregoing document with the clerk of the court using the CM/ECF system which will send notification of such filing to those registered with CM/ECF.

DATED this 24th day of July 2023, at Puyallup, Washington.

_s/ Natalia Corduneanu_
Natalia Corduneanu
Paralegal

PLAINTIFFS' RESPONSE TO DEFENDANTS'
MOTION TO DISMISS
(Case No. 3:23-cv-05418)

43

**ARNOLD & JACOBOWITZ PLLC**
8201 164th Ave. NE, Suite 200
Redmond, WA 98052
(206) 799-4221